Christopher S. Marchese (SBN 170239), marchese@fr.com
FISH & RICHARDSON P.C.
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Tel:  (213) 533-4240, Fax:  (858) 678-5099

Frank Scherkenbach (SBN 142549), scherkenbach@fr.com
Kurt L. Glitzenstein (Admitted Pro Hac Vice), glitzenstein@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210-1878
Tel:  (617) 542-5070, Fax:  (617) 542-8906

Olga I. May (SBN 232012), omay@fr.com
Markus D. Weyde (SBN 285956), weyde@fr.com
K. Nicole Williams (SBN 291900), nwilliams@fr.com
Jared A. Smith (SBN 306576), jasmith@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Tel:  (858) 678-5070, Fax:  (858) 678-5099

*[Additional Counsel listed on last page.]*

Attorneys for Plaintiffs, CARL ZEISS AG and ASML NETHERLANDS B.V.

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CARL ZEISS AG and ASML NETHERLANDS B.V.,<br><br>Plaintiffs,<br><br>v.<br><br>NIKON CORPORATION and NIKON INC.,<br><br>Defendants. | Case No. 2:17-cv-03221-RGK (MRWx)<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO REQUIRE DISCLOSURE OF CLAIMS NIKON PLANS TO RAISE AT TRIAL**<br><br>Hearing Date:  July 23, 2018, 9:00 a.m.<br>Courtroom:  850<br>Judge: Hon. R. Gary Klausner |

## I. INTRODUCTION

Plaintiffs seek an order from this Court requiring Nikon to comply with the local rules of this Court and disclose the claims it actually plans to pursue at trial. As of the filing of this motion, Nikon continues to assert fifteen prior art references it might bring to trial. This Court has allotted 2–3 hours per side for infringement and invalidity. Even if Nikon were to use all of that time for invalidity, which as a practical matter it cannot, and assuming it were allotted three hours to do so, Nikon would have just 12 minutes per prior art reference. Competent counsel like Nikon's would never try a case in this way, nor does Nikon even contend it plans to do so. To the contrary, Nikon has stated during negotiations with Plaintiffs that Nikon will not proceed to trial on all of the references and combinations of prior art currently disclosed to Plaintiffs. Yet, even a week before trial, Nikon refuses to tell Plaintiffs which theories it will pursue at trial in transparent attempt to hide the ball and force Plaintiffs to waste time preparing for prior art references Nikon has no intention to raise.

Additionally, Nikon has refused to inform Plaintiffs why it will not stipulate to Plaintiffs' ownership of the asserted patents. During preparation of the jury instructions, Nikon stated that it will not contest Plaintiffs' ownership. Moreover, in an ITC action involving patents transferred in the same transaction, Nikon did not contest ownership; and before the PTO, Nikon affirmatively represented that Plaintiffs owned the patents by identifying them as "real parties in interest" to the IPR. Yet Nikon has refused to stipulate to Plaintiffs' ownership of the patents, and the only "argument" it has presented is that the patents have been passed around like a "hot potato" (which hardly qualifies as a legal argument).

Plaintiffs must be allowed a fair opportunity to prepare for trial. Plaintiffs must, for example, prepare demonstratives in advance of trial and prepare their expert witnesses. Plaintiffs cannot do so unless they have a reasonable understanding as to

the prior art references and combinations Nikon actually intends to try in this case. Nor can Plaintiffs adequately prepare to combat Nikon's contention about ownership if Plaintiffs do not know the basis for Nikon's challenge. Therefore, this Court should intervene and order Nikon to comply with the local rules of this Court and disclose to Plaintiffs which invalidity claims it actually intends to pursue at trial and what (if any) basis Nikon has for challenging the ownership of the patents.

## II.   BACKGROUND

Plaintiffs have attempted to engage in good-faith negotiations with Nikon to streamline this case for trial but unfortunately need the Court's assistance in two respects. A brief summary of the events leading up to this motion is provided below.

### A.   Though Plaintiffs have Made Significant Efforts To Distill Their Claims, Nikon Has Refused to Do the Same

At the expert report stage of this litigation, the parties' remaining claims were understandably broad. Plaintiffs alleged infringement of 21 claims of the '792 patent (claims 1–6, 8–12, 14–16, 19, 22–26, and 28) and 23 claims of the '167 patent (claims 1–2, 4–6, 8–16, 18–20, and 22–27). Defendants alleged invalidity of the asserted claims of the '792 patent over six primary references (Toyofuko, Suzuki, Cannon Powershot A5, Sony DSC-F1, Sony Mavica MVC-FD7, and EP993) in various combinations with six secondary references (Aramaki, Anderson, Uehara, HP PhotoSmart, EP995, and the Konica Q-EZ Digital Camera Manual); and alleged invalidity of the asserted claims of the '167 patent over nine primary references (Kerns, HP850, Ootsuka, Kubo, Halverson, Tokiwa, Kuumi, Araki, and Miyata) in various combinations with three secondary references (Niikawa, Frohlich, and Norcross).

Plaintiffs have since chosen a distilled set of three closely related claims from the '792 patent to bring to trial—claims 6, 14, and 28. Each claim the same basic process of error identification and correction in a digital camera. As to the '167 patent,

plaintiffs have similarly winnowed their case, choosing to only bring claims 15, 20, and 23 to trial—a single independent claim and two of its dependents. Plaintiffs did so in compliance with the local rules, and informed Nikon of their election prior to the pretrial conference a week ago, so that Nikon would have a chance to reasonably prepare its case.

Nikon, however, has done little to cull its potential claims for trial and in particular has not streamlined its invalidity case commensurate with Plaintiffs' narrowing of asserted claims. In its memorandum of contentions of law and fact (D.I. 262), Defendants dropped only a single reference (Anderson) for the '792 patent and none for the '167 patent. Following additional negotiations (and only after Plaintiffs declined to take claim 19 of the '792 patent to trial), Defendants additionally dropped three other secondary references (Aramaki, HP PhotoSmart, and the Konica Q-EZ Instruction Manual) for the '792 patent. And on the morning of the pre-trial conference, Nikon made its first reduction in the number of asserted prior art references for the '167 patent—dropping four primary references (Halverson, Kuumi, Ootsuka, and Tokiwa) and one secondary reference (Frohlich). However, the number of references still on the table remains significantly more than Nikon could ever possibly hope to try in this case—Nikon still asserts six primary and 2 secondary references for the '792 patent and five primary and two secondary references for the '167 patent. This works out to seventeen different invalidity theories Plaintiffs may have to contend with at trial—8 for the '792 patent and 9 for the '167 patent—a number far in excess of the number of claims asserted in this case.

Plaintiffs raised this issue at the pre-trial conference. The Court stated that "it's incumbent upon both sides to focus on, when you really look at it, what really is in issue and what's not," and encouraged the parties to work together in order to cull the number of prior art references. *See* Ex. A (PTC Transcript) at 20: 15–17. As the

Court noted, "it's going to hurt both sides if you don't know what that number is, and I would assume that both sides will get together and find out exactly what you're going to be handling and what you aren't." *Id.* at 5–8. In accordance with the Court's wishes, and common sense, Plaintiffs have engaged in further negotiations over the past week in order to narrow down the issues for trial, but Nikon has stated that it will not narrow the list of references any further even though at the same time it agrees that it will not try them all. *See, e.g.,* Ex. B (6/16/18 Email fr. May to Kruze). Notably, Nikon demand that Plaintiffs continue to update their disclosures as to which products it will assert infringe, while at the same time stone-walling as to any reduction in the number of prior art references. *See, e.g.,* Ex. C (6/18/18 email fr. Kruze to Marchese). Accordingly, Plaintiffs bring the present motion seeking the Court's intervention to require Nikon to divulge the specific invalidity issues it intends to actually present at trial.

**B.     Nikon States It Will Not Contest Plaintiffs' Ownership of the Asserted Patents, But Refuses to Stipulate to Ownership And Refuses to Disclose Any Basis for An Ownership Challenge**

Nothing in Nikon's memorandum of contentions of law and fact raised any issue concerning Plaintiffs' ownership of the '792 and '167 patents. (*See generally* D.I. 262.) This is consistent with Nikon's previous position with respect to Plaintiffs' patents—in an ITC action involving patents transferred in the same transaction, Nikon did not contest ownership; and before the PTO, Nikon affirmatively represented that Plaintiffs owned the patents by identifying Plaintiffs as "real parties in interest" to the IPR. (*See, e.g.,* D.I. 382, at 7.) During negotiations over jury instructions, Nikon explicitly stated that it was not "planning on contesting ownership" at the trial and requested that Plaintiffs remove jury instructions concerning ownership of the asserted patents. *See* Ex. D (6/6/18 Email fr. Dawson to May). In response, Plaintiffs said

4

PLAINTIFFS' MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO REQUIRE DISCLOSURE OF CLAIMS NIKON PLANS TO RAISE AT TRIAL
CASE 2:17-CV-03221-RGK (MRWx)

they could not remove those instructions unless Nikon stipulated to Plaintiffs' ownership of the asserted patents. However, despite repeated requests, Nikon has refused to stipulate even though it has not been able to articulate any basis for challenging Plaintiffs' ownership of the patents. The best Nikon could do was to say the patents were passed around like a "hot potato" and that the assignment agreements were executed nunc pro tunc—neither of which qualifies as a recognizable basis for an ownership challenge. *See* Ex. B (6/16/18 Email fr. May to Kruze). Therefore, Plaintiffs additionally seek intervention of the Court to uncover the basis for any ownership challenge Nikon might bring at trial.

## III.   ARGUMENT

In 8 days, this Court will empanel a jury to hear this case. Shortly thereafter, Plaintiffs will begin with their opening statement, explaining their theory of the case—why it owns the patents, why Nikon infringes the patents, and the damages owed them for Nikon's infringement. At this point, though, Plaintiffs will not be able to tell the jury about why the patents are valid, because Nikon has refused to inform plaintiffs of the prior art references it actually plans to try, contending that Plaintiffs will have to wait until Nikon's opening statement to find out. Nor will Plaintiffs be able to adequately lay a foundation for its case combatting any potential challenge to ownership, as Plaintiffs do not know what Nikon's actual contentions are on this subject.

Local Rule 16-2.8 specifically requires that "[e]ach party shall disclose to every other party which of the party's pleaded claims and defenses the party plans to pursue, together with the party's contentions regarding the applicable facts and law." Local Rule 16-2.8. As this Court has explained, this explanation must be made with particularity—"conclusory contentions" are not enough. *Matrix Int'l Textile, Inc. v. Monopoly Textile, Inc.*, No. CV160084FMOAJWX, 2017 WL 2929379, at *2 (C.D.

5

PLAINTIFFS' MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO REQUIRE DISCLOSURE OF CLAIMS NIKON PLANS TO RAISE AT TRIAL
CASE 2:17-CV-03221-RGK (MRWx)

Cal. May 12, 2017). As Nikon has failed to disclose which of its invalidity theories it will pursue at trial, and has failed to provide any legal or factual basis for its ownership challenge, court intervention is required as to both of these issues.

### A. This Court Should Require Nikon To Disclose Which Invalidity References and Theories It Will Actually Try

Fifteen prior art references for just six asserted claims is far too many that can possibly be tried in any patent trial, much less in a trial where two to three hours will be devoted to both invalidity and infringement. Nikon knows that it will not be able to raise at trial all of the references which are still technically on the table, and further knows which references it will actually pursue. *See* Ex. B (6/16/18 Email fr. May to Kruze). But it contends that it need not tell Plaintiffs which references it will try because it should not be required to disclose its trial strategy in advance of trial. *See id.* Fairly disclosing contentions—as Plaintiffs did in narrowing the asserted claims from 44 to 6—is not an invasion of "trial strategy." It is complying with this Court's local rules, which specifically require that "[e]ach party shall disclose to every other party which of the party's pleaded claims and defenses the party plans to pursue, together with the party's contentions regarding the applicable facts and law." Local Rule 16-2.8. This rule recognizes parties can and must cull down the claims they will actually raise at trial, and ensures fairness by requiring that the party disclose those claims. Nikon should not be able to hide the ball until the last minute, only to surprise Plaintiffs—in opening, no less, after Plaintiffs have been forced to shoot in the dark in their own opening—as to what references it will actually try. Thus the Court should ensure compliance with the local rules and order Nikon to disclose the prior art references and theories it will rely on at trial.

Plaintiffs are plainly prejudiced by Nikon's failure to narrow the prior art and refusal to disclose the prior art it intends to rely on at trial. Plaintiffs cannot adequately

and reasonably prepare for trial unless they know what to prepare for. For example, both parties are preparing expert witnesses to testify. Whereas Nikon's experts already know what claims will be asserted at trial and can reasonably limit their preparation to only those claims, Plaintiffs must spend needless time preparing witnesses about many prior art references and combinations Nikon already knows will not be at issue in the case. The same goes for demonstratives and opening statements—whereas Nikon can reasonably prepare its arguments to make to the jury, absent Court intervention, Plaintiffs will have to again prepare for nearly twenty different possible invalidity theories, only to learn at the last minute which of those theories Nikon actually intends to pursue at trial.

Moreover, Nikon's failure to narrow the prior art or disclose the references it intends to rely on will waste this Court's time even beyond fielding this motion. For example, the parties have raised various objections to evidence, and unless the parties work out their differences on the subject, court intervention may be required. The parties and the Court may well find themselves fighting about a piece of evidence that Nikon already has no intention of presenting at trial.

### B. If Nikon Intends to Contest Ownership At Trial, It Should Be Required to State Why Now, Or Stipulate

As noted above, Nikon has stated that it does not intend to challenge ownership in this case, nor has Nikon challenged Plaintiffs ownership in other cases. Indeed, Nikon's Memorandum of Contentions of Fact and Law is devoid of an ownership defense. This is not surprising because Nikon has not been able to state a legally-viable reason as to the basis for any potential challenge. *See* Ex. B (6/16/18 Email fr. May to Kruze). Plaintiffs are plainly prejudiced by Nikon's failure to explain why it is maintaining a challenge to Plaintiffs' ownership (after it said it would not context ownership). Indeed, if an ownership challenge is to be maintained, Plaintiffs will have to bring a witness that would otherwise not have to attend—Mr. Robert Pressman—

1 and must spend time and resources to bring Mr. Pressman to trial and to prepare him
2 to testify. Plaintiffs deserve to know whether or not Nikon actually intends to
3 challenge ownership, and if so, the legal and factual basis for such a challenge.
4     As trial has approached, though, it has become increasingly clear that Nikon
5 does not actually have a viable challenge to Plaintiffs' ownership, but rather seeks to
6 use ownership as a vehicle to introduce evidence that this Court tentatively excluded
7 in tentatively granting Plaintiffs' Motion *in Limine* No. 2. *See* Ex. A (PTC Transcript)
8 at 4:22–5:1 ("For instance, on the plaintiffs' motions in limine, number 2 will be
9 granted, with the understanding that you can get into the area as to how it pertains to
10 royalties if that's the question as far as damages, but other than that, it would be
11 granted."). Namely, Nikon seemingly seeks to use ownership as a back-door to
12 introduce evidence concerning Plaintiffs' acquisition of the patents-in-suit that would
13 be both irrelevant and highly prejudicial to Plaintiffs, such as the mechanism used by
14 Plaintiffs to acquire the patents in suit and the reasons for doing so. As the Court has
15 already found, this evidence has no relevance to the core issues of this case—
16 infringement, validity, and damages—and thus should be excluded except for limited
17 use of some evidence for damages. Nikon should not be able to evade this ruling by
18 raising this very same evidence on cross-examination of Mr. Pressman in the guise of
19 "challenging" whether Plaintiffs own the patents-in-suit.
20     Plaintiffs are entitled to know prior to trial the basis for Nikon's contentions.
21 *See* Local Rule 16-2.8. If Nikon has a sound, good-faith basis for raising ownership
22 issues, it should be required to disclose what that basis is in accordance with the local
23 rules so that Plaintiffs have a reasonable basis to prepare to combat that challenge. If,
24 however, Nikon has no such basis, as appears to be the case given its admission that
25 it does not contest ownership, it should not be allowed to elicit otherwise irrelevant
26
27
28

1  and prejudicial testimony on the basis that it might be related to some unfounded and
2  undisclosed challenge to Plaintiffs' ownership of the patents.

## IV. CONCLUSION

For the reasons stated above, this Court should enter an order requiring Nikon to disclose which prior art references and invalidity theories it actually intends to try and the basis for any ownership challenge.

| | |
|---|---|
| Dated: June 22, 2018 | FISH & RICHARDSON P.C. |
| | By: */s/ Frank Scherkenbach* |
| | Christopher S. Marchese (SBN 170239) |
| | marchese@fr.com |
| | FISH & RICHARDSON P.C. |
| | 633 West Fifth Street, 26th Floor |
| | Los Angeles, CA 90071 |
| | Tel: (213) 533-4240, Fax: (858) 678-5099 |
| | |
| | Frank Scherkenbach (SBN 142549) |
| | scherkenbach@fr.com |
| | Kurt L. Glitzenstein (Admitted Pro Hac Vice) |
| | glitzenstein@fr.com |
| | FISH & RICHARDSON P.C. |
| | One Marina Park Drive |
| | Boston, MA 02210-1878 |
| | Tel: (617) 542-5070, Fax: (617) 542-8906 |
| | |
| | Olga I. May (SBN 232012) |
| | omay@fr.com |
| | Markus D. Weyde (SBN 285956) |
| | weyde@fr.com |
| | K. Nicole Williams (SBN 291900) |
| | nwilliams@fr.com |
| | Jared A. Smith (SBN 306576) |
| | jasmith@fr.com |
| | Oliver J. Richards (SBN 310972) |
| | orichards@fr.com |
| | FISH & RICHARDSON P.C. |
| | 12390 El Camino Real |
| | San Diego, CA 92130 |
| | Tel: (858) 678-5070, Fax: (858) 678-5099 |

|   |   |
|---|---|
| 1 | Andrew R. Kopsidas (Admitted Pro Hac Vice) |
| 2 | kopsidas@fr.com |
|   | FISH & RICHARDSON P.C. |
| 3 | 1000 Maine Avenue S.W., Ste. 1000 |
| 4 | Washington, DC 20024 |
|   | Tel: (202) 783-5070, Fax: (202) 783-2331 |
| 5 |   |
| 6 | Attorneys for Plaintiffs, CARL ZEISS AG and ASML NETHERLANDS B.V. |

11
PLAINTIFFS' MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO REQUIRE DISCLOSURE OF CLAIMS NIKON PLANS TO RAISE AT TRIAL
CASE 2:17-CV-03221-RGK (MRWx)

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 22, 2018, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

*/s/ Frank Scherkenbach*
Frank Scherkenbach
scherkenbach@fr.com