# EXHIBIT A

## DECLARATION OF FRANK SCHERKENBACH IN SUPPORT OF PLAINTIFFS' MOTION TO REQUIRE DISCLOSURE OF CLAIMS NIKON PLANS TO RAISE AT TRIAL

1        UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3      HONORABLE R. GARY KLAUSNER, U.S. DISTRICT JUDGE

4                   - - - -

5

6

     CARL ZEISS AG and ASML      )
7    NETHERLANDS, B.V.,          )
                                 )
8              PLAINTIFFS,        )
                                 )
9       vs.                      )    No. CV 17-03221-RGK
                                 )
10   NIKON CORPORATION, SENDAI NIKON )
     CORPORATION, and NIKON      )
11   CORPORATION, INC.,          )
                                 )
12             DEFENDANTS.       )
     _____)

13

14

15       REPORTER'S TRANSCRIPT OF PROCEEDINGS

16          MONDAY, JUNE 11, 2018

17              9:06 A.M.

18          LOS ANGELES, CALIFORNIA

19

20

21

22    _____

23      *SANDRA MacNEIL, CSR 9013, RPR, CRR, RMR*
        *Official Reporter, U.S. District Court*
24      *255 East Temple Street, Suite 1200*
        *Los Angeles, CA  90012*
25      *213.894.5949; macneilsandy@gmail.com*

```
 1                     APPEARANCES OF COUNSEL:

 2
      FOR PLAINTIFFS:
 3
            FISH & RICHARDSON, P.C.
 4          BY:  CHRIS MARCHESE, ATTORNEY AT LAW
                 OLGA I. MAY, ATTORNEY AT LAW
 5          12390 EL CAMINO REAL
            SAN DIEGO, CALIFORNIA  92130
 6          858.678.4314; 858.678.4745
            marchese@fr.com; omay@fr.com
 7
            FISH & RICHARDSON, P.C.
 8          BY:  FRANK SCHERKENBACH, ATTORNEY AT LAW
                 KURT L. GLITZENSTEIN, ATTORNEY AT LAW
 9          ONE MARINA PARK DRIVE
            BOSTON, MASSACHUSETTS  02210-1878
10          617.521.7883; 617.542.5070
            scherkenbach@fr.com; glitzenstein@fr.com
11
            FISH & RICHARDSON, P.C.
12          BY:  ANDREW R. KOPSIDAS, ATTORNEY AT LAW
            1000 MAINE AVENUE SW, SUITE 1000
13          WASHINGTON, DC  20024
            202.626.6407
14          kopsidas@fr.com

15

16    FOR DEFENDANTS:

17          MORRISON & FOERSTER, LLP
            BY:  VINCENT J. BELUSKO, ATTORNEY AT LAW
18               HECTOR G. GALLEGOS, ATTORNEY AT LAW
                 JONATHAN McNEAL SMITH, ATTORNEY AT LAW
19          707 WILSHIRE BOULEVARD
            LOS ANGELES, CALIFORNIA  90017-3543
20          213.892.5593; 213.892.5255; 213.892.5224
            vbelusko@mofo.com
21          hgallegos@mofo.com; jonathansmith@mofo.com

22          MORRISON & FOERSTER, LLP
            BY:  SHAELYN DAWSON, ATTORNEY AT LAW
23          425 MARKET STREET
            SAN FRANCISCO, CALIFORNIA  94105-2482
24          415.268.7259
            shaelyndawson@mofo.com

25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1              LOS ANGELES, CALIFORNIA; MONDAY, JUNE 11, 2018

 2                          9:06 A.M.

 3                          - - - -

 4

 5              THE CLERK:  Calling calendar item No. 4, case

 6   No. Civil 17-3221-RGK, Carl Zeiss, et al. versus Nikon

 7   Corporation, et al.

 8         Counsel, please come forward and state your appearances.

 9              MR. MARCHESE:  Good morning, Your Honor.

10   Christopher Marchese for the plaintiffs, Carl Zeiss and ASLM,

11   for Fish & Richardson.

12              THE COURT:  Okay.  You can have seats.  We'll be

13   here a little longer --

14              MR. SCHERKENBACH:  Good mor- --

15              THE COURT:  Go ahead.

16              MR. SCHERKENBACH:  Good morning, Your Honor.  Frank

17   Scherkenbach of Fish & Richardson for the plaintiffs.

18              MS. MAY:  Good morning, Your Honor.  Olga May for

19   the plaintiffs.

20              MR. KOPSIDAS:  Good morning, Your Honor.  Andrew

21   Kopsidas for the plaintiffs.

22              THE COURT:  Counsel.

23              MR. GLITZENSTEIN:  Good morning, Your Honor.  Kurt

24   Glitzenstein of Fish & Richardson, also for the plaintiffs.

25              MR. BELUSKO:  Good morning, Your Honor.  Vince
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1   Belusko for the defendants.

2           MR. GALLEGOS:  Good morning, Your Honor.  Hector

3   Gallegos, also for the defendants.

4           MS. DAWSON:  Good morning, Your Honor.  Shaelyn

5   Dawson, also for the defendants.

6           MR. SMITH:  Good morning, Your Honor.  Jonathan

7   Smith, also on behalf of the defendants.

8           THE COURT:  Okay.  Anybody else?  I think we've

9   covered most of the people that are authorized to practice law

10  in California here.

11      This is set for a pretrial hearing today.  The trial's

12  coming up on the 26th, I think it is.

13          MR. BELUSKO:  Yes, Your Honor.

14          THE COURT:  I want to go over with you a little bit

15  of what to expect when you come on in.  For those of you that

16  have not been in this court, you want to know that.

17      First of all, let me go over motions in limine.  I'm going

18  to give you the final rulings on motion in limine a little bit

19  later, but at this time I can give you some tentatives so you

20  can go ahead and prepare the case.  Most of them will be

21  denied.  Some of them will be granted.

22      For instance, on the plaintiffs' motions in limine, number

23  2 will be granted, with the understanding that you can get into

24  the area as to how it pertains to royalties if that's the

25  question as far as damages, but other than that, it would be

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1   granted.

2        And again, these are tentatives, and I'll give the finals

3   later.

4        Number 3 will be granted.

5        And number 10, it's kind of rules of evidence.  Number 10

6   is, if it's relevant, it's going to be public.  If it comes

7   into trial, it's going to be public.  If it doesn't come into

8   trial, then that confidentiality, confidential treatment will

9   be appropriate, but obviously, it's an open and public trial,

10  and anything that's introduced into evidence will be public.

11       All the others of those, the tentative would be denied.

12       I am going to go over these again in more detail, but I

13  want to give you that briefing on it so that you know where

14  you're going on it.

15       On the defendants' motions in limine, number 8 would be

16  granted.  Let me just skip down here.  Yeah, except that it may

17  go towards -- again, if it goes towards royalties on damages,

18  that part can come in, but total wealth would not come in, but

19  what they paid before, any other licenses, fees, things like

20  that would come in.

21       Number 9 obviously is going to be granted.

22       Number 7 will be granted.

23       Number 6, again, that may come in for -- part of that

24  could come in, representative products, as far as damages are

25  concerned.  So that's going to be denied at this time.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

EXHIBIT A
Page 7

```
1        And the rest would be denied.

2        Obviously, there are some that are moot.  For instance,

3  number 5, defendants' number 5 would be moot now because that

4  defendant is out of the action on it.

5        Anyway, that gives you a little bit of feeling for where

6  these motions are coming so you're not going to be blindsided

7  as far as trial is concerned.  We'll talk about them more right

8  before the trial, but that's basically where we're going to be

9  coming in, and I think those are pretty secure as far as what

10 the rulings of the Court will be.

11       What I'm going to need for the trial on the 26th -- and I

12 think I may already have it.  There's been so many documents

13 introduced in this case already, but I think I already have it,

14 but I need a joint statement of the case.  And if I have it,

15 don't worry about it.  That joint statement should be no more

16 than a paragraph, just something to explain to the jury what

17 the case is going to be about so I can voir dire the jury and

18 they'll know what type of case it is.

19       Also, every day, at the beginning of the day, I need a

20 list of the witnesses you intend to call that day.  This can be

21 done, as far as I'm concerned, on scratch paper.  Just, you

22 know, a list of the witnesses so the Court will know who's

23 coming up that day, and I get that from the parties at the

24 beginning of each day.

25       Voir dire.  The Court conducts the voir dire itself.  Both
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
1    sides have submitted voir dire proposed questions, and I will
2    incorporate those into my voir dire to the extent that I feel
3    it's appropriate.  If you haven't been in the court before,
4    it's kind of a six-pack.  We will bring in 14 jurors.  We'll be
5    picking a jury of eight.  So we'll bring in 14 jurors.  We'll
6    voir dire those.  As soon as we've excused seven of those 14,
7    we'll bring in another seven until we pick our jury.
8         Now, what I'll be doing, I'll be doing all the questioning
9    myself.  At the end of my questioning, I'll have you come over
10   here to the side bench, and we'll discuss who's going to be
11   excused and who's not.
12        Challenges for cause, any one of the 14.  Peremptory
13   challenges, only as to the first eight, because you don't want
14   to preempt somebody that's not part of the jury yet.  So just
15   as to the first eight.  And as we go through this, you'll know
16   who comes in and fills their position so you'll know who the
17   current eight are.
18        If you, on peremptory challenge, pass a peremptory
19   challenge, you keep that challenge, unless the other side
20   passes, and then you've got your jury.  But you can work that
21   any way you want.  Sometimes we've had cases where one side has
22   all -- and you'll get four peremptories rather than three,
23   because we're picking eight.  We'll get to the end where one
24   side has saved all the peremptory challenges, and then they've
25   got three straight peremptory challenges.  But, you know, you
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1   play that the way you feel is appropriate for you.  When we've

2   excused seven, I'll come back and I'll take the bench, I'll

3   call off the numbers of those seven jurors that have been

4   excused and have them stand up and they'll be excused en banc.

5   They will not know what side excused them.  They will not know

6   what the reasons are.  They'll just be excused.  And we'll

7   bring in seven new ones and we'll proceed until we pick a jury.

8        Any questions on voir dire?  I think it's fairly standard.

9             MR. MARCHESE:  No, Your Honor.

10            THE COURT:  Okay.  We'll talk about it later, but

11  interestingly enough, that will be the only time in this trial

12  that we ever have a bench conference.  I do not have bench

13  conferences during trial, and I will talk about that a little

14  later, but in the beginning we will for the picking of the

15  jury.

16       A couple of rules as far as procedural, because each court

17  has its own idiosyncrasies.  When you make an objection, please

18  stand when you make your objection.  I've run into problems in

19  the past where I'll hear a noise somewhere and I think it's an

20  objection, and I'll look down there and everybody's looking at

21  their papers; I have no idea who made the objection.  So at

22  least stand when you make your objection.

23       When you object, you can say what the name of it is, like

24  objection, hearsay, or whatever it is.  Do not argue an

25  objection in front of the jury.  If you're the person

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    introducing the evidence and you want to say not offered for

2    the truth of the matter, that's okay, but don't argue it in

3    front of the jury.  Just state what your objection is and why

4    your objection is, and the Court will make its decision on it.

5    We will not have bench conferences over those objections.

6        We all make mistakes.  If we do make a mistake or if you

7    have something you want to put on the record, at the next break

8    in the case when the jury's not present, we'll take it up and

9    we'll correct anything that has to be corrected.  I'll tell

10   you, I been doing this for so many years, I feel very

11   comfortable in making rulings on evidentiary matters on it, and

12   I don't think you're going to have that many problems as far as

13   wanting to correct the record or anything else, but if you do,

14   keep in mind you always have that ability to correct the record

15   at the next break.

16       Evidence is always introduced through the clerk.  Again,

17   these are just kind of logistical things.  Always introduce

18   through the clerk.  Never approach a witness.  An attorney

19   should never approach a witness directly.  Always give the item

20   to the clerk, and the clerk will give it to the witness on it.

21       If you're referring to anybody -- and I don't think it

22   will be a problem in a case like this, but if you're referring

23   to anybody at all, always refer to them, give them the dignity

24   of being referred to by last name.  You know, we don't refer to

25   anybody here as Johnny or Mary or anything like that.  Everyone

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   in this courtroom is entitled to be referred to by their last

 2   name.

 3        Always speak from the lectern.  Unless you're making an

 4   objection, always speak from the lectern whether you're talking

 5   to the Court or talking to the jury, and not only from the

 6   lectern, but from the microphone from the lectern, so the

 7   reporter can take down what's being said.  So make sure we're

 8   always at the microphone at the lectern.

 9        I've gotta tell you, and I always do this at every trial,

10   and I would really be surprised if it happens in a trial like

11   this, because we've got very professional sides on both sides

12   here, but the one thing that can really get this Court going is

13   any lack of civility.  I want these jurors, when they leave the

14   courtroom, to think that both sides have the utmost respect for

15   the other side as being attorneys and officers of the court.

16   And I will reinforce at this time -- a lot of people, a lot of

17   attorneys forget this, even judges do -- an attorney's

18   responsibility, primary responsibility, is as an officer of the

19   court.  As an officer of the court, you represent your client.

20   And so that's a very dignified position that you're in as an

21   officer of the court, and the jury's going to understand that

22   respect that you have for each other as officers of the court.

23   Anything you want to do in the alleys behind court afterwards,

24   I don't care, but in court, keep that civility.

25        The other thing I wanted to mention to you is, normally
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

EXHIBIT A
Page 12

1   issues are decided much better if it's worked out between both

2   sides.  I don't mind making a call on it, but when I make a

3   call, it's kind of like -- I can remember one judge referring

4   to it like:  You know your case; you are the surgeons on your

5   case; the judge is kind of the meat cleaver.  It's really

6   better if you work it out yourself, because once we make the

7   decision, it's just made, and it just works out better.  And

8   along those lines, with the exception of timing and effect to

9   the jury, I will almost always go along with anything the two

10  sides want.  If you want a witness out of order or -- I almost

11  always will go along if both sides agree on something,

12  presentation of evidence in court, et cetera.  As long as it

13  doesn't affect the trial in front of the jury, I'll go along

14  with anything both sides want.

15      As far as timing goes, I want to talk to you a little bit

16  about that.  The first morning, on the 26th, we'll come in at

17  9:00 o'clock.  We'll see if there's anything that's hanging out

18  there that we have to clear up.  Jury will come down about

19  9:30, quarter of 10:00, and we'll start the voir dire at that

20  time.  The next day and every day thereafter, we will start

21  right at 8:30 in the morning.  And when I say 8:30, I don't

22  mean 8:35.  We'll start right at 8:30.  We'll go from 8:30

23  until 11:30, which is a three-hour block.  We'll give you a

24  15-minute break in there, but a three-hour block.  We'll break

25  for lunch from 11:30 till 1:00.  We'll come back right at 1:00

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1  and go until 4:00, another three-hour block with a 15-minute

2  break in there.

3      You can set your clock or your watch by those times.  If

4  you've been in here before, you know that.  If you haven't been

5  in here before, trust me.  At 4:00 o'clock if you're halfway

6  through a question or if you have a witness that has to get

7  back to New York, whatever it is, and you say can we go another

8  five minutes or another three minutes, I'm going to say no.

9  You know, 4:00 o'clock we break.  These jurors are entitled to

10 know that at 4:00 o'clock if they have rides waiting for them,

11 kids they have to pick up from school, they know that's their

12 time, and from 4:00 o'clock on, that's it.

13     Same thing is true in the morning.  I will be talking to

14 the jury.  I expect them to come in before 8:30 so right at

15 8:30 we can start.  I don't want to sit around and have

16 everybody sitting in court while one person walks in late.

17     So you really can set your watch by those time limits.

18 You'll get a good five hours, a little bit more than five

19 hours, because we have that break in the morning and in the

20 afternoon, every day for your trial, and for your trial, nobody

21 else.  Okay?

22     Let's see what else we have here.  Let me talk to you

23 about the area that is probably the hardest for all people to

24 take, and that's the timing on the case and how much time I'm

25 going to give you to try the case.  And everyone always is

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    convinced that it's too short, but really it's pretty -- what I

2    do is, I go through the witness list that you've already given

3    me.  I've asked for what is unique about that testimony and

4    then I look at what areas have to be discussed in front of the

5    jury.  Not how many witnesses you have.  I don't care how many

6    witnesses.  If there's a death at the Rose Bowl during the Rose

7    Bowl game, you could have a hundred thousand witnesses.  It

8    will take, what, a half hour to describe that death.  You can

9    call all hundred thousand if you can get them in in a half

10   hour, but it's the subject matter that controls on this, not

11   the number of witnesses.

12        And by the way, I don't care how many witnesses you call.

13   It's your case.  Like I say, you're the surgeons.  I'm going to

14   give it over to you within the time frames that we have.

15        In this case, I'm looking at it and distilling it.  It

16   really doesn't seem to be that complicated as far as areas go.

17   It really comes down to three areas, and that is:  The holder

18   of the patent, if there is a valid patent out there; was there

19   infringement; and if there was infringement, what are the

20   damages.  You know, it's just pretty standard that way.

21        As far as how much time you need to get into the holder of

22   the patent, it really shouldn't take that long.  I mean, it's

23   not that big of an issue.  You know, you should be able to do

24   that within, you know, maybe -- you're going to bore anybody at

25   anything over an hour, so maybe an hour to do that.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1        Infringement, that's the big area.  Now, if I asked you
 2   how long would it take you to do a documentary on TV as to
 3   whether or not this patent was infringed, or if I asked you how
 4   much time do you need on a seminar to educate people as to this
 5   patent, you'd say we're going to need some time.  You're
 6   probably going to need at least two or three hours to do that.
 7   And I would think a three-hour documentary on whether or not
 8   this patent would be infringed would be more than enough, or a
 9   seminar on it would be more than enough.
10        Damages, one or two hours on damages should be more than
11   enough.
12        So that comes out to six hours to try this case.
13        Now, in a trial, it's a little different than
14   documentaries and all, so I'm not looking at six hours for the
15   entire case, but six hours per side on the entire case, maybe a
16   little bit more.  I'm going to be going over that, also, and
17   I'll tell you on day of trial exactly how much, but I want you
18   to be familiar with where the Court is on this as far as the
19   timing to be given to try the case.
20        I want to also talk to you a little bit about that.  When
21   I give you -- let's assume I give you six hours, which is,
22   what, 360 -- who's a mathematician?  360 minutes I think it is.
23   I keep those minutes here on the bench, and I'll tell you as we
24   go through how many minutes you have left anytime you want to
25   know how much time you have left on it.  I keep a running tab
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   on it here.
 2        Make sure you understand that that six hours doesn't go to
 3   opening statement.  Doesn't go to closing argument.  We'll talk
 4   about those later.  But as to any time you're asking questions
 5   or presenting your case here in court.  It goes towards your
 6   direct and also goes towards your cross-examination where your
 7   time would be running.  When you finish that time, if you -- as
 8   an example, 360 minutes if that's what it was.  If you hit 360
 9   minutes, that's it.  You don't ask any more questions.  If the
10   other side still has another hour left, they can keep asking
11   questions, and you're not going to be able to cross-examine.
12   Once you hit that time, you're through.
13        Now, I should put in one caveat here.  If the case has
14   been presented efficiently during the trial and effectively
15   during the trial, and the interest of justice calls for more
16   time, then I'll grant you more time.  I been on the federal
17   bench now for 16 years.  Once in that 16 years have I found
18   that, yeah, it was really efficiently and effectively
19   presented, but they needed more time, and I granted it.  So it
20   doesn't happen often, is what I'm going to tell you on it, so
21   don't count on that when you're presenting your case.  Count on
22   the fact that at the 360 or whatever it is, and I'll tell you
23   that on the day of trial, no more questions on it.
24        Now, another thing I should mention to you, have witnesses
25   available.  If you tell me, for instance, in the evening, it's
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    quarter of 4:00, and you say my next witness won't be in until

2    tomorrow morning, could we break a little early, quarter of

3    4:00, shouldn't hurt anybody, can we break early and bring my

4    witness in tomorrow morning, I'll say sure, no problem, but

5    your 15 minutes that you lost there count against your time.

6    So make sure you have witnesses available so that you don't

7    lose time on that.

8         One other thing I wanted to mention to you as far as

9    procedure goes.  If you have multiple documents that have a lot

10   of pages and -- let me put it in a different context.  For

11   instance, if you have a contract case and you've got this

12   agreement that is, you know, 52 pages long, and you talk about

13   three or four of those pages as far as the evidence you wish to

14   present, the entire document won't come in; just those pages

15   that you've talked about, just those pages that are in

16   evidence.  So if you have a multipage document where you're not

17   addressing everything in that document, only those pages that

18   you're addressing should come into evidence.

19        Okay.  I've bored you a lot here for the last 15 minutes.

20   I apologize for that, but I did want to give you a feeling for

21   what the court was going to be like when you come into court.

22        Any questions that you might have as far as procedure

23   goes?

24             MR. MARCHESE:  Your Honor --

25             THE COURT:  Either he was waving or he wants a

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

17

```
1    question.  I don't know which one, but let me start with the

2    plaintiff first.

3              MR. MARCHESE:  Christopher Marchese for the

4    plaintiffs.

5              THE COURT:  Yes.

6              MR. MARCHESE:  One of the things we were wondering

7    about, just a housekeeping matter, would be, will the Court be

8    dark on Monday of the second week, assuming we get that far?

9              THE COURT:  Good question.  The answer is, normally

10   the answer is yes.  If we really need that time, the only time

11   I'd give you on Monday would be the afternoon on Monday if I

12   could move all my criminal into the morning, but you never get

13   more than just the afternoon on Monday, and normally we'd be

14   dark that Monday morning anyway.

15             MR. MARCHESE:  I ask because the July 4th holiday

16   falls in the middle of the week.

17             THE COURT:  I know.

18        And by the way, I should tell you, because we do have -- I

19   don't anticipate, but we do have one thing that may cause

20   problems scheduling wise, and I'll tell you right now, because

21   we may get bumped that day.  Criminal has precedence over

22   civil, et cetera, and there's a lot of problems that way.  If

23   we do get bumped, I looked at the calendar, the only other date

24   I could handle it other than the 26th would be the 17th of

25   July.  So if something comes up -- and I can let you know by
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1  next week.  If something comes up, I'll let you know as soon as
 2  possible, but I wanted you to know that, also.
 3            MR. MARCHESE:  The trial may actually get shifted
 4  back to --
 5            THE COURT:  It may get shifted back to the 17th of
 6  July.
 7            MR. MARCHESE:  Okay.
 8            THE COURT:  But don't count on that, because I
 9  really want to start it on the 26th, and I'm sure you do, too,
10  get it over with.
11            MR. MARCHESE:  Understood.  We're trying to figure
12  out, do you expect it'll be over before the July 4th holiday,
13  or will we be running over that?
14            THE COURT:  I would suspect that there's a good
15  chance it'd be over, only because I say -- you know, if we
16  do -- I don't have a calendar.  Let me just check here.  26th.
17  26th.  One, two, three -- it may not be -- it would be a close
18  call as to whether the 4th of July -- you're asking -- of
19  course we are not going to be here on the 4th of July.
20            MR. MARCHESE:  Right.  Wondering if we would wrap it
21  before the 4th of July, if we can expect to come back after the
22  4th to do closing and --
23            THE COURT:  Oh, no, no.  No, no.  In other words,
24  are we going to be meeting -- 4th of July is a Wednesday, I
25  think.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1              MR. MARCHESE:  I think that's right.
 2              THE COURT:  The question is, would we come back on
 3    Tuesday?  No, we'd be back on Tuesday, yeah.  So if there's
 4    argument or anything else, we'd be back on Tuesday.  And if the
 5    jury's deliberating, they'd be in on Tuesday.
 6              MR. MARCHESE:  Okay.  Understood.
 7         So one of the things that we've run into here, Your Honor,
 8    is the amount of prior art that the defendants are asserting in
 9    this case.
10              THE COURT:  Yes.
11              MR. MARCHESE:  There is -- currently we have, my
12    count, there was a -- there was a slight narrowing this morning
13    I got from defendants' counsel, but there's still, by my count,
14    about 10 or so, 11 prior art references that we're having to
15    contend with for two patents.  Can't try that many in six
16    hours, and so we would ask the Court for some assistance in
17    getting a further narrowing, and just -- we've also -- just so
18    you know, the plaintiffs have reduced the number of claims in
19    this case from about 45 or so.  We're down to seven claims now.
20              THE COURT:  I think you have four on the '92 one,
21    and I think you have three on the '167 one.
22              MR. MARCHESE:  Correct.  That's right.  But the
23    defense still has, you know, close to 15 references or so that
24    they're still asserting, and we are trying to get that down to,
25    you know, a trial set so we can know what they're actually
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

EXHIBIT A
Page 21

```
 1   going to try.
 2             THE COURT:  Well, I would think that it's
 3   incumbent -- and I'm going to fall back on what I said earlier
 4   about how important it is for communication between both sides,
 5   and it's going to hurt both sides if you don't know what that
 6   number is, and I would assume that both sides will get together
 7   and find out exactly what you're going to be handling and what
 8   you aren't.  That's one of the beauties of putting time limits
 9   on cases, because it forces the attorneys on both sides -- it
10   should -- to focus on really what you want.
11        You know, there's an old saying that I can remember a
12   minister once saying:  "During the first five minutes of my
13   homily, I save hundreds of lives.  During the last five
14   minutes, I lose them all."
15        Going too long, you lose the jury.  And it's incumbent
16   upon both sides to focus on, when you really look at it, what
17   really is in issue and what's not.  And so I guess I'm
18   preaching to the choir, but it really is incumbent upon both
19   sides to talk about it.  If you can't work it out between you,
20   make some type of motion to the Court, both sides, and I'll
21   decide it.  Okay?
22             MR. MARCHESE:  Okay.  Thank you, Your Honor.
23        There's another point I wanted to bring up about -- just
24   kind of another procedural, logistical matter for the trial.
25             THE COURT:  Sure.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1              MR. MARCHESE:  We've got currently a disagreement on
 2   authentication of party documents.  There's been hundreds of
 3   thousands of pages of documents produced on each side, and
 4   there will probably be quite a few coming into evidence in the
 5   case, and we have currently an agreement, as I understand it,
 6   that -- well, it's not a final agreement, but both sides have
 7   tentatively agreed that their own documents that they've
 8   produced, their own documents that they generate in the
 9   ordinary course of business, would be self-authenticating.  We
10   don't need a witness to stand up and authenticate the document.
11   However, there's a hangup concerning third-party documents, and
12   the defense wants us to stipulate that documents produced by
13   Hewlett Packard in this case would also be authenticated.  And
14   so what we are asking the Court to do, we would like to have an
15   agreement, a stipulation in place, or some -- you know, a
16   Court would adopt a proceeding whereby the parties' documents
17   that they produced that are their own are self-authenticating
18   and will come in, and we don't have to spend a bunch of time
19   with witnesses getting them authenticated for the experts.
20              THE COURT:  Well, again, you know where I'm going to
21   go, right back to what I said before.  That makes a lot of
22   sense, but that's something the two of you should work out, the
23   sides should work out.  And if you can't, bring it to the
24   Court.  But it works out much better, much smoother if the two
25   of you get together, have coffee, have your debate as to who
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    pays for the coffee, but see if you can get together on issues

2    in the case.  You want to simplify this and focus this case as

3    much as possible.  You don't want to waste a lot of time on

4    authentication if you don't have to.  So I'm going to ask you

5    to get together on it, and if you can't resolve it, just bring

6    a motion to the Court, and I'll decide it.  But I really do

7    encourage you to get together on it.

8              MR. MARCHESE:  Thank you, Your Honor.

9              THE COURT:  Okay?

10             MR. MARCHESE:  We will work on that.

11       Another thing that's come up has been, in this particular

12   case, Hewlett Packard has been front and center to some degree.

13   There was a motion that the defense filed to take Hewlett

14   Packard's deposition after the close of discovery, which was

15   denied.

16             THE COURT:  Mm-hmm.

17             MR. MARCHESE:  And what happened with that was

18   then -- there's another companion case, the 7083 case, which is

19   lagging behind by a few months, and they issued a subpoena in

20   that case to Hewlett Packard and took their deposition and

21   asked a lot of questions about this case, precisely about the

22   patents in this case, about the marking of Hewlett Packard

23   products with the patent numbers in this case, and then, at the

24   end of the deposition, served the Hewlett Packard -- it was a

25   lawyer who appeared for Hewlett Packard, with a trial subpoena

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
1    to come to appear in this case.  And so what's happened now is,
2    we have -- they want to call the lawyer live at trial to
3    testify and are going to ask him questions presumably that were
4    previewed and taken in the other case, where there's a
5    protective order that says anything -- any discovery obtained
6    in 7083 cannot be used in 3221.  So it's kind of this, you
7    know, the fruit of the poisonous tree.  Well, then, they'll
8    bring the HP witness in and ask him questions they already know
9    the answers to from the other case.
10              THE COURT:  Let me make a suggestion to you, because
11   it sounds to me, if that's something you can't work out between
12   each side, that would be a proper thing for a motion in limine.
13   I know the time's passed, but I'm going to give you until
14   Friday of this week if there's any additional motions
15   in limine, but you'll have to state for good cause why you
16   didn't bring it up earlier in the motion, and in your case you
17   may be able to do that.  But again, if you can work it out
18   between the two sides, that's fine; if not, that's really a
19   motion in limine, yeah.
20              MR. MARCHESE:  Thank you, Your Honor.
21              THE COURT:  Okay.
22              MR. MARCHESE:  And then one last -- well, maybe I
23   would have a couple more, but -- yeah, I have a couple things I
24   want to --
25              THE COURT:  No attorney should ever say "one last
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1  thing."

2          MR. MARCHESE:  I know, I know.  I apologize for that

3  mistake.

4      So we've got an agreement that we're working towards on

5  exchanging demonstratives prior to witnesses testifying and

6  prior to opening statements, and we're getting closer, but one

7  thing that we haven't gotten agreement on was the exchange of

8  exhibits in connection with those exchanges.

9      What we would propose, and I think would be the right

10  thing to do, would be to provide demonstratives and exhibits

11  expected to be used in openings and expected to be used with

12  witnesses together, in tandem, so that we can work out the

13  objections and then bring them to the Court if we can't resolve

14  them.

15          THE COURT:  Any objections, Counsel?  I mean, it

16  sounds reasonable.

17          MR. BELUSKO:  Well, Your Honor, I think the only

18  issue is on exhibits.  It's a question -- it's before they've

19  been admitted into evidence.  So I mean, I can't even speak

20  to --

21          THE COURT:  Well, he's not asking -- well, maybe I

22  got it wrong.  He's not asking if you have an objection to

23  that.  What he's asking is, is should that be presented to you

24  so you'll know what the exhibits are.

25          MR. BELUSKO:  Oh, to know what they are is fine, but

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
1    to say that they can be published to the jury during opening

2    is --

3              MR. MARCHESE:  That wasn't what I said.

4              THE COURT:  I didn't read that into the question,

5    and yeah, that would be a separate question, but as far as

6    sharing, you should share it beforehand.

7              MR. BELUSKO:  Oh, okay.

8              THE COURT:  Okay.

9              MR. BELUSKO:  Yeah.

10             THE COURT:  Okay.

11             MR. MARCHESE:  The other thing that has come up

12   which I think is a disagreement is that cross-examination

13   demonstratives and exhibits, the defense wants to share those.

14   Our position would be that cross-examination is fair game and

15   we don't need to actually exchange that ahead of the

16   cross-examination, and would like to get the Court's guidance

17   on that.

18             THE COURT:  Well, again, I'll say the more you

19   share, the better.  I know you don't want that answer, but the

20   more you share, the better, so that -- you know, it's not --

21   this is a trial as to the merits of the case.  It's not a

22   gotcha type thing.  And if there's some reason -- I mean,

23   you've got the trial that you have to put on the way you feel

24   to put on, but the Court would strongly encourage you to share

25   all that beforehand so everyone knows what's happening.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
1            MR. MARCHESE:  Okay.  Thank you, Your Honor.

2            THE COURT:  Okay?

3            MR. MARCHESE:  There is a video that we'd like to

4  play by the Federal Judiciary, the FJC video on patents.  It's

5  a -- the FJC created it to be an unbiased look at the patent

6  system.  It's about -- I think it's 18 minutes long.  I've used

7  it in trial both from plaintiff's and defense side.  It's very

8  helpful.  We play it before the -- you know, as part of the

9  instructions, and the jury gets to learn about patents from an

10 unbiased source as opposed to the two lawyers.

11           THE COURT:  I'm sorry, you lost me.  This would be

12 presented as part of the jury instructions?

13           MR. MARCHESE:  Right.  We would play it prior to

14 the -- not at the end, but the beginning, as the preliminary

15 instructions.  We would play this video, and the video --

16           THE COURT:  So it would be part of your opening

17 statement?

18           MR. MARCHESE:  Prior to the opening statements,

19 correct.

20           THE COURT:  Why not make it part of the opening

21 statement?

22           MR. MARCHESE:  We could do that.  That's fine.  We

23 just would like to play it because we think it's helpful.  It

24 tells the jury about what a patent is, how it's examined.

25           THE COURT:  Well, and, you know, you've put that
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
1    forward.  They know it.  If there's some objection, make it
2    beforehand, okay?  Otherwise, I have no problem with it, if
3    that's what your question is.  I have no problem with that
4    video, but I'd want it as part of opening statement.
5            MR. MARCHESE:  Okay.  They have objected to it as
6    being biased in favor of the plaintiffs, which it's not
7    intended to be.  Should we bring that to the Court via motion?
8            THE COURT:  Oh, yeah.  Yeah, if you can't work it
9    out, bring it to the Court, both sides on it, but just make
10   sure I have an opportunity to see both sides on it so I can
11   rule on it.  I don't like to decide any more than I have to
12   from the seat of my pants here.  I'd like to hear and give both
13   sides an opportunity to be heard.
14           MR. MARCHESE:  Understood.  Understood.  Thank you.
15           THE COURT:  Okay.
16           MR. MARCHESE:  The IPRs.  The Court's aware that
17   there were IPRs that were filed.  There was a motion to stay,
18   which was denied.  They've both been -- the institution of both
19   of them has now been denied, and it's our position that they
20   are now -- the denials of the institution are relevant, and we
21   would like to have them introduced as substantive evidence and
22   also to have them available for cross-examination of the
23   experts.
24           THE COURT:  And if they object, I'm assuming they'll
25   make their motion in limine before Friday to object to that.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

 1            MR. MARCHESE:  Okay.  Thank you, Your Honor.

 2       And last -- I do have my last one on the list, I promise

 3  you.  Transition statements.  We would like to have a very

 4  brief, two- to three-sentence transition statement for the

 5  witnesses that get brought in.  I think it's helpful for the

 6  jury.  They get just a quick overview of who this person is and

 7  what they're going to talk about.  Defendants have objected to

 8  that, and wanted to get the Court's view on transmission

 9  statements.

10            THE COURT:  Well, I'm not too sure what you mean by

11  transition statements.  If you're talking about, you know,

12  where did you go to school, et cetera, they're not experts,

13  just where did you go to school, where do you live, if the

14  other side objects to it, it's rules of evidence.  If it's

15  relevant, it comes in; if it's not relevant, it would be

16  sustained.  A lot of times they don't care if it comes in; a

17  lot of times they do care if it comes in.  That's part of your

18  trial preparation.

19            MR. MARCHESE:  Well, we were thinking about just as

20  the witness is brought up to the stand, the lawyer explains to

21  the jury, this is Mr. Smith and --

22            THE COURT:  Oh, no.  It has to be done through

23  question and answer.

24            MR. MARCHESE:  Okay.  Thank you.

25       Okay.  That's all I have, Your Honor.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

 1          THE COURT:  She just gave you a note.  Are you sure

 2   you don't have another one?

 3          MR. MARCHESE:  You know, if I need to get back to

 4   that one, I will.  I appreciate that.

 5          THE COURT:  Okay.

 6          MR. MARCHESE:  Thank you.

 7          THE COURT:  Counsel, your turn.

 8          MR. BELUSKO:  Thank you, Your Honor.

 9      Let me start by asking you just a procedural issue.

10          THE COURT:  Sure.

11          MR. BELUSKO:  With respect to these motions

12   in limine that you've given us tentative rulings on today --

13          THE COURT:  Yes.

14          MR. BELUSKO:  -- under the Court's schedule, there

15   were reply briefs due this Thursday or Friday.

16      Do you anticipate that we should not file those now?

17          THE COURT:  No, you can go ahead and file those,

18   Counsel.  As I said, these are all tentatives.

19          MR. BELUSKO:  Okay.  Okay.

20      And in a couple respects, let me just point out to the

21   Court that this issue with HP, our whole issue with HP is just,

22   we just want to get the documents in that they provided.

23   That's all we're trying to do.  And they're trying to exclude

24   anything from HP coming in, but of course the patents that they

25   acquired here which they've asserted came from HP.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
1                   THE COURT:  Mm-hmm.

2                   MR. BELUSKO:  So there are issues that are relevant

3      to HP.  So that's all we're trying to do.

4                   THE COURT:  Okay.  No problem.  And as I said, if

5      you can't work it out, bring it to me, and if it's relevant, it

6      comes in.

7                   MR. BELUSKO:  Okay.  And I should note that they did

8      bring a motion already to keep out those documents, which was

9      their, I believe, motion in limine number 5, which you

10     tentatively denied today.  So we think that's appropriate

11     and --

12                  THE COURT:  Okay.

13                  MR. BELUSKO:  -- we're there.

14         As the IPR issue, Your Honor, I should note that you

15     tentatively, I think, granted their motion to exclude IPR stuff

16     today.  Now they want IPR stuff in.  So if it all comes in,

17     including, you know, anything that's part of that, well, I

18     guess I'll call it file history of the IPRs, so be it.  But

19     it's not just the decisions, it's everything that went into the

20     that, the petitions, et cetera.

21                  THE COURT:  And I think you all have a feeling for

22     where the Court's going to be coming down on this, but I

23     haven't foreclosed you from -- or foreclosed the Court from

24     reconsidering any of these.  And particularly any new motions

25     in limine that could not have been made before have to be in,
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   and I should change this, to Thursday at 4:00 o'clock, and any

 2   response by Friday at 4:00 o'clock.

 3               MR. BELUSKO:  Okay.  As to this possibility of a

 4   17th of July conflict, Your Honor, I have a conflict if we

 5   would be going at that time.  I have another trial in Delaware

 6   beginning on the 23rd of July, and I have to be prepping my

 7   people that week before, which is the 17th.

 8               THE COURT:  Yeah, there is -- it would really be a

 9   stretch, but if I had to, I could start it on the 10th rather

10   than the 17th.

11               MR. BELUSKO:  Yeah, we'd have -- I would ask for

12   that if --

13               THE COURT:  For the 10th?

14               MR. BELUSKO:  -- if it came to that, Your Honor.

15               THE COURT:  Well, let me take a look at it, and if I

16   can do that, I'll do it for the 10th rather than the 17th.

17               MR. BELUSKO:  Okay.  With respect to --

18               THE COURT:  And hopefully that's not going to be an

19   issue.  Hopefully we start the 26th and go.  But go ahead.

20               MR. BELUSKO:  Well, I prefer that we go on the 26th,

21   Your Honor.

22               THE COURT:  Okay.

23               MR. BELUSKO:  If at all possible.

24               THE COURT:  Okay.

25               MR. BELUSKO:  As to this issue of the timing and
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    everything, I know you've indicated how you got to your time.

2    I didn't see -- didn't understand, but perhaps I missed it,

3    that, you know, we do have a validity case.  Are you giving us

4    time for a validity case?

5            THE COURT:  Well, that's part of the -- whether or

6    not the patent is valid or invalid or infringement or not, it's

7    all part of the infringement area.

8            MR. BELUSKO:  Okay.  I understand.

9            THE COURT:  Yeah, I figured that in there.

10           MR. BELUSKO:  Okay.  And with respect to validity,

11   there is an order of proof at trial issue.  We believe that on

12   the issue of validity we should go and first and last, with

13   rebuttal if there is any, because we bear the burden of proof

14   on that issue.  Similarly, even in closing, we go last on the

15   issue of validity.  It's often done in trials I've been

16   involved in because of that burden of proof issue.  And there

17   was an objection in their jury instructions to our doing it

18   that way, but I don't know if you still are standing on that,

19   but I don't see how you go first and last on an issue that you

20   don't bear the burden of proof.

21           THE COURT:  Well, I appreciate that, bringing to our

22   attention and counsel's attention.  See what you can work out

23   on it.

24           MR. BELUSKO:  Okay.

25           THE COURT:  I'm going to force both sides to start

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    cooperating in agreement whether you want to or not.

2             MR. BELUSKO:  Okay.  I guess the last issue that I

3    wanted to bring up for the Court is the issue of some remaining

4    claim construction issues.  There are some remaining claim

5    construction issues.

6             THE COURT:  Let me help you out, Counsel, because,

7    you know, in patent cases, courts do it differently.  Most

8    patent courts allow *Markman* hearings.  I don't do that here.

9             MR. BELUSKO:  Yes.

10            THE COURT:  To me it's like construction of a

11   contract.  You can do that in a summary judgment.  If it's not

12   done in a summary judgment, it's done in jury instructions,

13   because it's a matter of law.

14            MR. BELUSKO:  Okay.  And I guess my question for you

15   on that, Your Honor, is, there are alternatives, then, that

16   would need to be presented as part of the case in chief.  So is

17   there any way -- I mean, because they would say the term meant

18   this, we would say it meant that, and so that would mean we'd

19   be putting on alternatives in front of the jury.

20            THE COURT:  Okay.

21            MR. BELUSKO:  Is there any way that, with respect

22   to, I think we're down to four terms, that those could be

23   decided in advance of the jury trial?

24            THE COURT:  That should have been done as part of

25   the summary judgment.  And if it's not done as part of the

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1    summary judgment, it goes to trial.  And if it's a matter of
 2    law, it goes towards the jury instructions.
 3               MR. BELUSKO:  Okay.  So you'll just make your
 4    decision at that time, then.
 5               THE COURT:  Yeah.
 6               MR. BELUSKO:  Okay.
 7               THE COURT:  Okay.  Anything else we can help you
 8    with?
 9               MR. MARCHESE:  No, Your Honor.
10               THE COURT:  Thank you both for being here, and I can
11    tell you that I look forward to it, because I think it's going
12    to be a very professional trial, and I look forward to that,
13    but we'll see you back in on the 26th at 9:00 a.m.  Okay?
14               MR. MARCHESE:  Thank you, Your Honor.
15               MR. BELUSKO:  Thank you, Your Honor.
16
17               (Proceedings concluded at 9:45 a.m.)
18
19                         --oOo--
20
21
22
23
24
25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1                          CERTIFICATE

 2

 3       I hereby certify that pursuant to Section 753,

 4  Title 28, United States Code, the foregoing is a true and

 5  correct transcript of the stenographically reported proceedings

 6  held in the above-entitled matter and that the transcript page

 7  format is in conformance with the regulations of the

 8  Judicial Conference of the United States.

 9

10  Date:  June 11, 2018

11

12

13

14                    /S/ SANDRA MACNEIL

15              Sandra MacNeil, CSR No. 9013

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA