VINCENT J. BELUSKO (CA SBN 100282)
VBelusko@mofo.com
HECTOR G. GALLEGOS (CA SBN 175137)
HGallegos@mofo.com
JONATHAN M. SMITH (CA SBN 292285)
JonathanSmith@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California  90017-3543
Telephone: 213.892.5200
Facsimile: 213.892.5454

JACK W. LONDEN (CA SBN 85776)
JLonden@mofo.com
DIANA B. KRUZE (CA SBN 247605)
DKruze@mofo.com
SHAELYN DAWSON (CA SBN 288278)
Shaelyndawson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendants
NIKON CORPORATION and NIKON INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CARL ZEISS AG and ASML NETHERLANDS, B.V.,<br><br>Plaintiffs,<br><br>v.<br><br>NIKON CORPORATION, SENDAI NIKON CORPORATION, and NIKON INC.,<br><br>Defendants. | Case No. 2:17-cv-03221 RGK (MRWx)<br><br>**DEFENDANTS NIKON CORPORATION AND NIKON INC.'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO DEFENDANTS' DEPOSITION DESIGNATIONS**<br><br>Date:        July 12, 2018<br>Time:        9:00 a.m.<br>Courtroom:   850, 8th Floor<br><br>Hon. R. Gary Klausner |

Plaintiffs want to hide from the jury evidence that is directly relevant to Plaintiffs' claim for damages. Plaintiffs paid only $5.2 million for 12 patents and 2 patent applications. Now they are asking the jury for $30 million to compensate for alleged infringement of only 2 of them. The facts surrounding Plaintiffs' purchase of those patents and patent applications are highly relevant to the jury's determination of a reasonable royalty. Nevertheless, under the guise of Motions *in Limine*, Plaintiffs object to deposition designations that are *highly* relevant to reasonable royalty and damages—indisputably core issues in this trial. The Court *explicitly* carved out its rulings on the motions in limine to allow testimony related to reasonable royalty damages. The Court stated: "plaintiffs' motions in limine, number 2 will be granted, **with the understanding that you can get into the area as to how it pertains to royalties if that's the question as far as damages**, but other than that, it would be granted." (Pretrial Conf. Tr. at 4:22-5:1.)

On the first day of trial, the Court also stated that all of its Motion in *Limine* rulings were "tentative" and would need to be assessed on a case-by-case basis. (7/11 Trial Tr. at 4:23.)

Below, Nikon responds to Plaintiffs' objections specifically.[1]

**1.     Testimony from Messrs. Pressman and Singer that no company has licensed the '167 and '792 patents. (Pressman Tr. 82:2-11. 83:13-15; Singer Tr. 570:9-20.)**

This topic is facially relevant to *Georgia-Pacific* factor 1, "Royalties for the patent-in-suit." An example of the testimony that Plaintiffs seek to exclude is as follows:

> Q.  Can ASML identify any company that has ever paid any royalties in exchange for a license to the '167 patent.

---

[1] Nikon does not plan to play the follow deposition clips: Pressman Tr. 70:5-13, 84:14-85:4 and Singer Tr. 526:4-6, 526:11, 526:13-15, 526:20-527:1.

> A.   ASML can't identify any company that has paid royalties to the '167 patent for a license.

(Pressman Tr. 82:2-11.) Given this testimony is squarely relevant to *Georgia Pacific* Factor 1, it should not be excluded.

### 2. Testimony from Messrs. Pressman and Singer regarding Tarsium, the entity that bought the '167 and '792 patents. (Pressman Tr. 260:4-8, 11-12.)

Testimony related to Tarsium is directly related to damages and the hypothetical negotiation under Georgia Pacific factors 4, 5, and 15.  Factor 4 relates to the licensor's policies; factor 5 relates to the commercial relationship between the licensor and the licensee, such as whether they are competitors, or whether they are inventor and promoter; and factor 15 goes to the hypothetical negotiation.  The fact that Tarsium is the entity that acquired the patents, and is owned by ASML, is relevant to all three factors.

As this testimony is relevant, Plaintiffs have already elicited testimony regarding Tarsium, its acquisition of the patents, and subsequent sale to Plaintiffs. In his opening, Plaintiffs' counsel, Mr. Marchese stated, "You're also going to hear evidence that HP originally transferred the patents to a company called Tarsium and that Tarsium is a company owned by ASML, passed them along to ASML and Zeiss." (7/11 Trial Tr. 14:22-25).  Later, Dr. Singer testified about a document in which Tarsium "jointly" transferred the '792 and '167 patents to Plaintiffs. (7/11 Trial Tr. at 72:21-73:11.)

Most importantly, Dr. McDuff, Plaintiffs' damages expert, specifically testified that Tarsium was at the hypothetical negotiation table as an owner of the '167 and '792 patents.

> Q   You put Tarsium, ASML, and Zeiss at the negotiation table here. On one side you would have those individuals and HP and on the other side Nikon; correct?
>
> A   That's one scenario I considered, yes.
>
> Q   The hypothetical negotiation for these patent would be in 2008; correct?
>
> A   Yes.

(7/12 Trial Tr. 88:7-13.)

Excluding this evidence would unfairly prejudice Nikon as it would not have an opportunity to rebut testimony that Plaintiffs have already entered into evidence.

**3.   ASML's investigation of the patents during transaction with Hewlett-Packard, the inventors and sellers of the '167 and '792 patents. (Pressman Tr. 68:19-69:5, 374:5-16, 349:20-350:1, 352:12-14, 352:18.)**

For example, Plaintiffs seek to exclude the following:

> Q.   When did ASML first come to believe that any Nikon cameras infringed the '792 patent?
>
> A.   as I believe I testified yesterday, ASML came to believe that Nikon products could infringe the '792 patent prior to the acquisition of those patents by Tarsium.

(Pressman 374:5-16.)

During trial, Plaintiffs' damages expert, Dr. McDuff, testified that the sale of the patents to Plaintiffs had nothing to do with Nikon and is not an accurate representation of what Nikon would pay. (7/12 Trial Tr. 93:4-5, 14-15 (admitting that in the HP sale contract, Nikon was designated specifically unlicensed company but stating that he did not know what Tarsium "knew or did not know.") Nikon is entitled to rebut this testimony, as it is highly relevant to the hypothetical

negotiation because both HP, Tarsium, and Plaintiffs *knew* about Nikon and specifically discussed Nikon's unlicensed status during the negotiations of the patent sale.  This goes directly to *Georgia Pacific* Factor 15, which describes the hypothetical negotiation.

The timing of when Plaintiffs came to believe Nikon infringed is also relevant to Plaintiffs' five-year delay, which is relevant to marking.  It is also relevant to the value (or lack thereof) of the '792 and '167 patents, the nature of the patented invention," and the "utility and advantages of patent property," which are *Georgia Pacific* factors 9 and 10.

**4. Testimony from Mr. Pressman regarding confidential and public transfers of the '167 and '792 patent.  (Pressman Tr. 494:3-15, 496:17-21, 530:10-16, 532:16-22, 566:15-19.)**

The testimony Plaintiffs seek to exclude is relevant to *Georgia Pacific* factors 1 and 5 (regarding the parties' competitive relationship), and also directly rebuts Plaintiffs' repeated argument that Nikon was "aware" of the alleged infringement and "knew of the patents."  To the contrary, Mr. Pressman testified that the Plaintiffs did not publicly record Plaintiffs' ownership of the patents-in-suit.  For example, Nikon seeks to use the following testimony:

> Q. So, ASML and Zeiss didn't record the assignment of rights to the '792 at any time before they commenced litigation against Nikon on that patent?
>
> A. That is what it appears from this document and there is obviously no obligation to do so.

(Pressman Tr. 532:16-22.)

Nikon is also entitled to play this testimony because it rebuts Plaintiffs' willful blindness claim. (ECF No. 33.)   Plaintiffs have repeatedly stated that Nikon knew of the patents in 2009 and 2012.  In Plaintiffs' opening, counsel stated:

Case No. Case No. 2:17-cv-03221-RGK (MRWx)
DEFS.' RESP. TO MOT. FOR RECONS.
sf-3920110

4

> The evidence will also show that Nikon has known of these patents for many years. They have known about the first of the patents since 2009 and the second patent since 2011, and despite the knowledge, they've continued to use the patented inventions continuously over the course of ten years and even expanded their use year after year.

(Trial Tr. at 7:10-15.)

What's more, *Plaintiffs* have *already* elicited testimony from Messrs. Pressman and Singer regarding the multiple transfers of the '167 and '792 patents, opening the door to this rebuttal. On direct examination, Plaintiffs elicited the following testimony:

> Q. Dr. Singer, do you recognize this document
> A. Yes, I recognize it.
> Q. And what is this?
> A. Yeah, that's the assignment of patent rights from company Tarsium to, jointly, ASML Netherlands and Carl Zeiss SMT GmbH.

(7/12 Trial Tr. 72:5-14). Plaintiffs also entered JTX115 into evidence, which is the Assignment of Rights document.

Excluding this evidence would unfairly prejudice Nikon as it would not have an opportunity to rebut testimony that Plaintiffs have already entered into evidence.

## **CONCLUSION**

In sum, Plaintiffs' objection to the designated testimony is a ruse to exclude damages evidence that is relevant, as a matter of black-letter law, to the appropriate reasonable royalties. Indeed, the Court has stated multiple times that evidence relevant to reasonable royalty damages would be admissible. Moreover, Plaintiffs have already introduced substantial evidence on all of these topics.

Excluding this evidence would substantially prejudice Nikon and would unfairly allow Plaintiffs to present trial testimony that Nikon has no opportunity to rebut. For these reasons, Nikon respectfully requests that the Court overrule Plaintiffs' objections.

Dated: July 13, 2018　　　　Respectfully submitted,

JACK LONDEN
VINCENT J. BELUSKO
MORRISON & FOERSTER LLP

By: /s/ *Vincent J. Belusko*

Attorneys for Defendants
NIKON CORPORATION AND
NIKON INC.