VINCENT J. BELUSKO (CA SBN 100282)
VBelusko@mofo.com
HECTOR G. GALLEGOS (CA SBN 175137)
HGallegos@mofo.com
JONATHAN M. SMITH (CA SBN 292285)
JonathanSmith@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California  90017-3543
Telephone: 213.892.5200
Facsimile: 213.892.5454

JACK W. LONDEN (CA SBN 85776)
JLonden@mofo.com
DIANA B. KRUZE (CA SBN 247605)
DKruze@mofo.com
SHAELYN DAWSON (CA SBN 288278)
Shaelyndawson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendants
NIKON CORPORATION and NIKON INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| CARL ZEISS AG and ASML NETHERLANDS, B.V., <br><br> Plaintiffs, <br><br> v. <br><br> NIKON CORPORATION, SENDAI NIKON CORPORATION, and NIKON INC., <br><br> Defendants. | Case No. 2:17-cv-03221 RGK (MRWx) <br><br> **DEFENDANTS NIKON CORPORATION AND NIKON INC.'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR JUDGMENT AS A MATTER OF LAW** <br><br> Date:       July 17, 2018 <br> Time:       9:00 a.m. <br> Courtroom:  850, 8th Floor <br><br> Hon. R. Gary Klausner |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

I.      INTRODUCTION ....................................................................................... 1

II.     THE STANDARD FOR GRANTING JUDGMENT AS A MATTER OF LAW UNDER RULE 50(A) ................................................................. 1

III.    PLAINTIFFS FAILED TO PROVE COMPLIANCE WITH THE MARKING STATUTE ............................................................................... 2

        A.      Applicable Law on Marking .......................................................... 2

        B.      Nikon Met Its Initial Burden of Production on Marking. .............. 3

        C.      Plaintiffs Failed to Present Any Evidence that the Identified HP Products Do Not Practice Any Claim of the '792 or '167 Patents. ......................................................................................... 4

IV.     PLAINTIFFS FAILED TO PROVE INFRINGEMENT FOR UNIDENTIFIED NIKON PRODUCTS ...................................................... 5

V.      PLAINTIFFS FAILED TO PROVE INFRINGEMENT BY REPRESENTATIVE PRODUCTS .............................................................. 6

VI.     PLAINTIFFS FAILED TO PROVE INFRINGEMENT OF METHOD CLAIM 14 OF THE '792 PATENT .......................................... 9

VII.    PLAINTIFFS FAILED TO PROVE INFRINGEMENT OF CLAIMS 15 AND 23 OF THE '167 PATENT ............................................ 10

VIII.   PLAINTIFFS FAILED TO PROVE DIRECT INFRINGEMENT BY NIKON CORPORATION ........................................................................ 11

IX.     PLAINTIFFS FAILED TO PROVE INDUCED INFRINGEMENT BY EITHER NIKON CORPORATION OR NIKON INC. ........................ 11

X.      PLAINTIFFS FAILED TO PROVE CONTRIBUTORY INFRINGEMENT BY EITHER NIKON CORPORATION OR NIKON INC. ........................................................................................... 13

XI.     CONCLUSION ......................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ACCO Brands, Inc. v. ABA Locks Mfr. Co.*,
  501 F.3d 1307 (Fed. Cir. 2007) ................................................................. 12

*Alloc, Inc. v. Pergo, L.L.C.*,
  No. 00-C-999, 2010 WL 3860382 (E.D. Wis. Sept. 30, 2010), *aff'd*,
  426 F. App'x 909 (Fed. Cir. 2011) ............................................................. 7

*Am. Med. Sys. Inc. v. Med. Eng'g Corp.*,
  6 F.3d 1523 (Fed. Cir. 1993) ...................................................................... 2

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
  24 F.3d 178 (Fed. Cir. 1994). Notice ......................................................... 2

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
  876 F.3d 1350 (Fed. Cir. 2017) ......................................................... 2, 3, 4, 5

*CCC Grp., Inc. v. Martin Eng'g Co.*,
  No. 05-cv-00086-RPM-MJW, 2008 WL 4277764
  (D. Colo. Sept. 17, 2008) ........................................................................... 6

*Creative Compounds, LLC v. Starmark Labs.*,
  651 F.3d 1303 (Fed. Cir. 2011) ................................................................ 11

*DSU Med. Corp. v. JMS Co.*,
  471 F.3d 1293 (Fed. Cir. 2006) ..................................................... 11, 12, 13

*E-Pass Techs., Inc. v. 3Com Corp.*,
  473 F.3d 1213 (Fed. Cir. 2007) ........................................................... 9, 10

*Eugene Bratto, Textures, LLC v. Brushstrokes Fine Art, Inc.*,
  701 F. Supp. 2d 1068 (W.D. Wis. 2010) .................................................... 7

*Fujitsu Ltd. v. Netgear Inc.*,
  620 F.3d 1321 (Fed. Cir. 2010) ................................................................ 13

*Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc.*,
  589 F.3d 1179 (Fed. Cir. 2009) ................................................................ 11

*L & W, Inc. v. Shertech, Inc.*,
   471 F.3d 1311 (Fed. Cir. 2006) ...................................................................... 5

*Maxwell v. J. Baker, Inc.*,
   86 F.3d 1098 (Fed. Cir. 1996) .................................................................... 2, 3

*Medtronic Vascular, Inc. v. Boston Sci. Corp.*,
   No. 2:06-CV-78, 2008 WL 2744909 (E.D. Tex. July 11, 2008) .......................... 7

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*,
   571 U.S. 191 (2014) .................................................................................. 10

*Mobile Telecomms. Techs., LLC v. Samsung Telecomms. Am., LLC*,
   No. 2:13-cv-259, 2014 WL 7146971 (E.D. Tex. Dec. 12, 2014) ....................... 9

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
   702 F.3d 1351 (Fed. Cir. 2012) .................................................................... 5

*Reeves v. Sanderson Plumbing Prods., Inc.*,
   530 U.S. 133 (2000) ..................................................................................... 2

*TiVo, Inc. v. EchoStar Commc'ns Corp.*,
   516 F.3d 1290 (Fed. Cir. 2008) ................................................................. 6, 7

**Statutes**

35 U.S.C.
   § 271(a) ................................................................................................... 11
   § 287 ..................................................................................................... 1, 4
   § 287(a) ................................................................................................. 2, 3

**Other Authorities**

Fed. R. Civ. P. 50(a) ....................................................................................... 1

## I.  INTRODUCTION

Defendants Nikon Corporation and Nikon Inc. (collectively "Nikon") hereby move for an order granting judgment as a matter of law on eight issues: (1) Plaintiffs cannot recover damages pre-dating the filing of their complaint because they failed completely (i.e. offered *zero* evidence) to show compliance with the marking requirements of 35 U.S.C. § 287 in their case-in-chief; (2) Plaintiffs failed to prove infringement for unidentified Nikon products; (3) Plaintiffs failed to prove infringement by representative products; (4) Plaintiffs failed to prove infringement of method Claim 14 of U.S. Patent No. 7,972,792 ("'792 Patent"); (5) Plaintiffs failed to prove infringement of the "memory arrangement" limitation of Claims 15 and 23 of U.S. Patent No. 7,209,167 ("'167 Patent"); (6) Plaintiffs failed to prove any direct infringement of the '792 Patent or '167 Patent by Nikon Corporation within the United States; (7) Plaintiffs failed to prove any induced infringement of the '792 or '167 Patent by either Nikon Corporation or Nikon Inc.; and (8) Plaintiffs failed to prove any contributory infringement of the '792 or '167 Patents by either Nikon Corporation or Nikon Inc.  On each of these issues, Plaintiffs failed to present legally sufficient evidence to support their claims, and the Court should therefore enter judgment under Rule 50(a) of the Federal Rules of Civil Procedure.

## II.  THE STANDARD FOR GRANTING JUDGMENT AS A MATTER OF LAW UNDER RULE 50(A)

A motion for judgment as a matter of law ("JMOL") on a particular issue is proper where a reasonable jury could only find for the movant on that issue after the evidence has been fully presented.  *See* Fed. R. Civ. P. 50(a)(1).  A motion for JMOL may be made at any time before the case is submitted to the jury.  *See* Fed. R. Civ. P. 50(a)(2).

In ruling on JMOL motions, courts apply the same standard as on summary judgment:  review the evidence of record, draw all reasonable inferences in favor of the nonmoving party, and determine whether the movant prevails as a matter of

1   law.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citing

2   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

3   ### III.   PLAINTIFFS FAILED TO PROVE COMPLIANCE WITH THE MARKING STATUTE

4

5   It is black letter law that the patentee always bears the burden of pleading and

6   ***proving*** compliance with marking.  *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111

7   (Fed. Cir. 1996) (explaining patentee bears burden of proving compliance with

8   marking statute); *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d

9   1350, 1366 (Fed. Cir. 2017) ("[t]he patentee bears the burden of pleading and

10  proving he complied with § 287(a)'s marking requirement").  Despite bearing the

11  burden of proof, Plaintiffs were silent on marking in their case-in-chief.[1]  Because

12  Plaintiffs submitted zero evidence to show that the identified HP products do not

13  practice the asserted patents, the Court should grant judgment as a matter of law

14  and exclude pre-filing damages.

15  ### A.   Applicable Law on Marking

16  A patentee may only recover damages as of the date they provide notice to

17  the alleged infringer.  35 U.S.C. § 287(a).  Notice may be actual, such as when a

18  plaintiff sends a letter to the alleged infringer accusing it of infringement or by

19  filing a complaint for patent infringement.  *Amsted Indus. Inc. v. Buckeye Steel*

20  *Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994).  Notice may also be constructive

21  through marking, which is when a patentee or its licensee distributes patent

22  practicing products marked with the appropriate patent number.  *Am. Med. Sys. Inc.*

23  *v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993).  Absent appropriate

24  _____

25  [1] Plaintiffs seek jury instructions stating that "[a]s the party that is challenging Zeiss's and ASML's claim for damages, it is Nikon's burden to

26  articulate the products they believe are unmarked patented articles."  (ECF No. 486-2 at 32.)  This is an incorrect statement of the law.  Controlling precedent makes

27  clear that "[t]he burden of proving compliance with marking is and at all times remains on the patentee."  *Arctic Cat*, 876 F.3d at 1367.

28

1   notice, Plaintiffs cannot recover pre-suit damages.  *Maxwell*, 86 F.3d at 1111.

2          An alleged infringer who challenges the patentee's compliance with marking

3   under 35 U.S.C. § 287(a) bears an initial burden of production—a low bar—

4   requiring identification of products it believes to be unmarked "patented articles."

5   *Arctic Cat*, 876 F.3d at 1368–69.  But the "burden of proving compliance with

6   marking is and at all times remains on the patentee."  *Id.* at 1367.  To meet this

7   burden, the patentee must prove the identified products do not practice the patents

8   in question during its affirmative case.  *Id.*

9          **B.     Nikon Met Its Initial Burden of Production on Marking.**

10         Nikon identified Hewlett-Packard's unmarked, licensed products both in

11   discovery and during opening statements at trial.  Consequently, there can be no

12   dispute that Nikon has already met the low bar under *Arctic Cat*.

13         In fact, in denying Plaintiffs' motion for summary judgment on marking, the

14   Court has already held that Nikon met its burden by identifying five specific HP

15   cameras as practicing the '792 Patent and three specific HP tablets as practicing the

16   '167 Patent in its discovery responses.  (ECF No. 249 at 18; *see also* ECF 161-15 at

17   4–5 (Plaintiffs' Statement of Uncontroverted Facts admitting that Nikon served

18   discovery responses before the close of fact discovery identifying several HP

19   products as practicing the '792 and '167 Patents).)  These are the HP d3500, p550,

20   p650, s510, and CA340 digital cameras for the '792 Patent, and the HP 7, 8, and 10

21   tablets for the '167 Patent.  (ECF No. 161-8 at 8 (identifying HP products).)  Nikon

22   also identified Plaintiffs' license with HP, which does not require HP to mark its

23   products.  (ECF No. 249 at 18; ECF 270-4 at 8 (identifying HP license).)

24         Nikon identified these same HP products during its opening statement at trial.

25   (July 11, 2018 P.M. Trial Tr. at 36:17–21 (identifying the HP Tablet 10 and HP 650

26   camera).)  Thus, there can be no dispute that Nikon has met its low burden of

27   production to "identify unmarked products."  *Arctic Cat*, 876 F.3d at 1369.

28

1

2

**C.      Plaintiffs Failed to Present Any Evidence that the Identified HP Products Do Not Practice Any Claim of the '792 or '167 Patents.**

3      Under *Arctic Cat*, Plaintiffs were required in their case-in-chief to establish

4  that the identified HP products "do not practice the asserted patents to recover

5  damages under the constructive notice provisions of § 287." *Id.* at 1369.  Plaintiffs

6  utterly failed to carry this burden at trial, and judgment as a matter of law is

7  therefore required.

8      Like the patentee in *Arctic Cat*, Plaintiffs licensed the '792 and '167 Patents

9  to a third party—HP here.[2]  (*Compare* July 11, 2018 P.M. Trial Tr. at 75:18–24

10 (admitting HP is licensed) *with Arctic Cat*, 876 F.3d at 1366 (licensing asserted

11 patents to third party Honda).)  Like the patentee in *Arctic Cat*, Plaintiffs made no

12 effort to ensure their licensee HP marked its products.  (*Compare* July 11, 2018

13 P.M. Trial Tr. 77:23–78:7 (no effort to police marking by HP) *with Arctic Cat*, 876

14 F.3d at 1366–67 (patentee made no effort to ensure marking by licensee).)  And like

15 the defendant in *Arctic Cat*, Nikon met its burden of production by identifying

16 unmarked, licensed products—the HP Tablet 10 and HP 650 here.  (*Compare* July

17 11, 2018 P.M. Trial Tr. at 36:17–21 (identifying the HP Tablet 10 and HP 650

18 camera) *with Arctic Cat*, 876 F.3d at 1368 (identifying fourteen unmarked

19 products).)  Thus, *Arctic Cat*'s conclusion applies here, which places the burden

20 squarely on Plaintiffs to come forward with proof that the HP Tablet 10 and HP 650

21 camera do not practice the '792 and '167 Patents, respectively.  876 F.3d at 1369.

22     But Plaintiffs completely ignored this burden in their case-in-chief.  They

23 presented ***no evidence*** to the jury on marking.  Plaintiffs' technical expert Dr. Kelly

24 made no effort to address whether the identified HP products practice the '792 and

25

26     [2] Plaintiffs purchased the '792 and '167 Patents from HP.  Thus, even before
   Nikon met its burden of identifying unmarked products, Plaintiffs were already on

27 notice of HP's license and its failure to mark years before this lawsuit was even
   filed.

28

4

1  '167 Patents.  Dr. Kelly made zero mentions of HP, cited zero HP documents, and

2  discussed zero HP products.  (*See* July 12, 2018 P.M. Trial Tr. at 68:17–July 13,

3  2018 A.M. Trial Tr. at 21:16.)  This complete absence of evidence makes it

4  impossible for any jury to conclude that Plaintiffs carried their burden on

5  marking—they cannot prove that the identified HP products do not practice any

6  claim of the asserted patents.  *See Arctic Cat*, 876 F.3d at 1369.  The Court should

7  therefore grant judgment as a matter of law of no pre-filing damages.

8    **IV.    PLAINTIFFS FAILED TO PROVE INFRINGEMENT FOR**
9    **UNIDENTIFIED NIKON PRODUCTS**

10      It is also black letter patent law that Plaintiffs bear the burden of proving

11  infringement.  *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d

12  1351, 1358 (Fed. Cir. 2012).  When a patentee seeks to prove infringement for

13  multiple devices, "it must make a prima facie showing of infringement as to each

14  accused device."  *L & W, Inc. v. Shertech, Inc.*, 471 F.3d 1311, 1318 (Fed. Cir.

15  2006).  In their rush to present their case-in-chief, Plaintiffs completely ignored this

16  basic requirement.  Their technical expert Dr. Kelly failed to even identify the

17  names of over 70 products he believes to be infringing, making it impossible for a

18  jury to conclude that those unidentified products infringe.

19      For example, Dr. Kelly opined that 57 Nikon cameras infringe the '792

20  Patent because they have Easy Panorama, but he only provided the names for 12:

21  B700, P300, P340, P510, P900, P7800, AW1, AW130, V3, D3300, KeyMission 80,

22  and L840.  (July 12, 2018 A.M. Trial Tr. at 80:7–24.)  The jury has no basis to

23  identify the remaining 45 products, much less conclude that those unidentified

24  products infringe the '792 Patent.  (*See id.* at 88:1–2 ("Claim 14 is infringed by the

25  Nikon cameras that *we identified*." (emphasis added).)

26      Dr. Kelly's opinions for the Motion Snapshot feature are similarly lacking.

27  There, he opined that 11 Nikon cameras infringe the '167 Patent but he only

28  provided the names for 8:  J1, J4, J5, S1, S2, AW1, V2, and V3.  (July 12, 2018

A.M. Trial Tr. at 99:14–23.)  Again, the jury has no basis to identify the remaining 3 products and no way to conclude that those unidentified products infringe the '167 Patent.

And finally, Dr. Kelly's opinions are equally deficient for the Movie Live View feature.  Dr. Kelly claimed 30 Nikon cameras infringe by virtue of the Movie Live View feature but he only identified 7 cameras:  D5, D610, D750, D810, D3300, D5500, and D7200.  (July 12, 2018 A.M. Trial Tr. at 114:18–115:3.)  The jury cannot conclude that the remaining 23 unidentified products infringe, as they do not even know what they are.  A blanket statement of "I looked at all of the manuals," without naming the corresponding products, is simply not enough to satisfy Plaintiffs' burden on infringement.  (*See, e.g.*, July 12, 2018 A.M. Trial Tr. at 115:2–3.)

Accordingly, judgment as a matter of law of non-infringement is appropriate for the unidentified Nikon products and Plaintiffs' infringement case should be narrowed to the following: (1) B700, P300, P340, P510, P900, P7800, AW1, AW130, V3, D3300, KeyMission 80, and L840 for the '792 Patent (Easy Panorama feature); (2) J1, J4, J5, S1, S2, AW1, V2, and V3 for the '167 Patent (Motion Snapshot feature); and (3) D5, D610, D750, D810, D3300, D5500, and D7200 for the '167 Patent (Movie Live View).  *See, e.g.*, *CCC Grp., Inc. v. Martin Eng'g Co.*, No. 05-cv-00086-RPM-MJW, 2008 WL 4277764, at *8 (D. Colo. Sept. 17, 2008) (granting JMOL of non-infringement because accused products were custom installations based on individual customers' needs and patentee's expert failed to testify that each claim limitation is present in each accused product).

## V.   PLAINTIFFS FAILED TO PROVE INFRINGEMENT BY REPRESENTATIVE PRODUCTS

A patentee may attempt to prove infringement by using representative products.  *See TiVo, Inc. v. EchoStar Commc'ns Corp.*, 516 F.3d 1290, 1308 (Fed. Cir. 2008).  However, representative product groupings do not relieve the patentee

1  of its burden to prove infringement with respect to each and every product accused

2  of infringement.  The patentee must still present evidence showing that each of the

3  other products actually functions in the same manner as the representative product,

4  and therefore also infringe.  *Id.*; *Eugene Bratto, Textures, LLC v. Brushstrokes Fine*

5  *Art, Inc.*, 701 F. Supp. 2d 1068, 1080-81 (W.D. Wis. 2010).  Indeed, it "is

6  plaintiff's burden to prove by a preponderance of the evidence that each accused

7  product practices all the elements of at least one claim of an asserted patent." *Id.* at

8  at 1080.

9       Here, Plaintiffs' expert Dr. Kelly relied on source code to prove infringement

10  for at least one limitation in each of the asserted claims.  But Dr. Kelly did not

11  examine the source code for the vast majority of the accused products.  Nor is there

12  any evidence addressing whether the examined source code is the same or

13  substantially similar to the unexamined source code.  As such, Dr. Kelly has no

14  basis to extend his infringement read to the products for which he did not examine

15  source code, which ultimately dooms the representative product theory. *See*

16  *Medtronic Vascular, Inc. v. Boston Sci. Corp.*, No. 2:06-CV-78, 2008 WL 2744909,

17  at *3 (E.D. Tex. July 11, 2008) (granting JMOL of non-infringement for accused

18  products that patentee's expert failed to test for infringement); *Alloc, Inc. v. Pergo,*

19  *L.L.C.*, No. 00-C-999, 2010 WL 3860382, at *10 (E.D. Wis. Sept. 30, 2010), *aff'd*,

20  426 F. App'x 909 (Fed. Cir. 2011) (granting summary judgment of non-

21  infringement for untested products because expert provided no basis to show the

22  untested products were the same as the tested products).

23       Starting first with the '792 Patent and the Easy Panorama feature, Dr. Kelly

24  only looked at the source code for the P300, P340, P510, P7800, AW1, V3, and

25  D3300.  (July 12, 2018 A.M. Trial Tr. at 80:13–17.)  Yet, Dr. Kelly's sole basis for

26  accusing Nikon cameras of infringing the "processing a user execution of an

27  erroneous operation" limitation of Claim 14 was based on his examination of

28  source code (JTX-1956)—source code he did not examine for 50 Nikon products

(most of which are not even identified, *see supra* section IV).  (July 12, 2018 A.M. Trial Tr. at 84:25–86:3 (discussing only source code evidence).)  A similar problem exists for Claim 28 of the '792 Patent.  For that claim, Dr. Kelly construed the "processing means" limitation to read on the algorithm described in figure 8 of the '792 Patent and he proceeded to map this algorithm to the same source code presented in JTX-1956.  (July 12, 2018 A.M. Trial Tr. at 89:23–90:17 (discussing only source code evidence).)  However, as explained earlier, Dr. Kelly did not examine the source code for the vast majority of Nikon products, even though his infringement read of the "processing means" requires source code.  (July 12, 2018 P.M. Trial Tr. at 6:3–5 (admitting he did not examine source code for 50 products).)  There is no evidence upon which the jury can reasonably extend Dr. Kelly's infringement read—which is based on source code—to products for which Dr. Kelly did not examine any source code.  Plaintiffs presented no evidence in their case-in-chief that the source code presented in JTX-1956 is the same or substantially the same as the unexamined source code found in the other Nikon products accused of infringing the '792 Patent.  (*See* July 12, 2018 P.M. Trial Tr. at 66:8–July 13, 2018 A.M. Trial Tr. at 21:16.)  Accordingly, judgment as a matter of law of non-infringement is appropriate for the unexamined products and Plaintiffs' infringement case should be narrowed to the P300, P340, P510, P7800, AW1, V3, and D3300 for the '792 Patent.

The same evidentiary shortcoming pervades the infringement proof for the '167 Patent as well.  There, Dr. Kelly only looked at the source code for the S1, AW1, J4, V2, and V3 for the Motion Snapshot feature and the D5, D750, D810, and D5500 for the Movie Live View feature.  Yet, he relied solely on source code to show the "trigger signal" limitation for both the Motion Snapshot and Movie Live View features.  (July 12, 2018 A.M. Trial Tr. at 104:11–105:7 (discussing only source code for Motion Snapshot) and 118:17–119:4 (discussing only source code for Movie Live View).)  Again, Plaintiffs failed to present evidence in their

Case No. 2:17-cv-03221 RGK (MRWx)
Defs.' Mot. For JMOL
la-1387498

8

case-in-chief that the examined source code is the same or substantially the same as the unexamined source code for cameras with Motion Snapshot or Movie Live View.  (*See* July 12, 2018 P.M. Trial Tr. at 66:8–July 13, 2018 A.M. Trial Tr. at 21:16.)  Accordingly, judgment as a matter of law of non-infringement is also appropriate for the unexamined products in connection with the '167 Patent, and Plaintiffs' infringement case for that patent should be narrowed to the S1, AW1, J4, V2, and V3 (for Motion Snapshot) and D5, D750, D810, and D5500 (for Movie Live View).  *Mobile Telecomms. Techs., LLC v. Samsung Telecomms. Am., LLC*, No. 2:13-cv-259, 2014 WL 7146971, at *2 (E.D. Tex. Dec. 12, 2014) ("It is without question that [the patentee] must prove infringement for each of the accused products by a preponderance of the evidence, and that [the patentee] bears the risk of using representative products.").

## VI.    PLAINTIFFS FAILED TO PROVE INFRINGEMENT OF METHOD CLAIM 14 OF THE '792 PATENT

To prove infringement of a method claim, a patentee must show at least one specific instance of use of the claimed method in the U.S.  *E-Pass Techs., Inc. v. 3Com Corp.*, 473 F.3d 1213, 1222 (Fed. Cir. 2007).  Plaintiffs failed to carry that burden at trial, as they introduced no evidence of customers using the claimed method.  Instead, Dr. Kelly's infringement testimony focused solely on the structures within the Nikon cameras, as highlighted by the summary he provided: "Claim 14 is infringed *by the Nikon cameras* that we identified."  (July 12, 2018 A.M. Trial Tr. at 88:1–2 (emphasis added).)  He never opined that a *customer* in the U.S. has practiced the method of Claim 14, or that one of the Nikon defendants has practiced the claimed method in the U.S.  (*See* July 12, 2018 P.M. Trial Tr. at 66:8– July 13, 2018 A.M. Trial Tr. at 21:16.)

In fact, the evidence for method Claim 14 is even shallower than that presented in the *E-Pass* case, which found the reliance on instruction manuals to be too speculative "to conclude that any customer actually performed the claimed

method." *E-Pass*, 473 F.3d at 1222.  Here, Plaintiffs' infringement expert Dr.
Kelly admitted that the Nikon products are unlikely to be used in an infringing
manner, as correct operation of Easy Panorama cannot infringe: "If there's no
erroneous operation [of Easy Panorama] by the user, there won't be an error
message . . . That actual use of Claim 14 would not infringe."  (July 12, 2018 P.M.
Trial Tr. at 11:7–14.)

Accordingly, judgment as a matter of law of no infringement of method
Claim 14 is appropriate because Plaintiffs failed to introduce any evidence of use of
the claimed method, which forecloses both direct and indirect infringement of
Claim 14.  *E-Pass*, 473 F.3d at 1222.

## VII.  PLAINTIFFS FAILED TO PROVE INFRINGEMENT OF CLAIMS 15 AND 23 OF THE '167 PATENT

Basic tenets of patent law require Plaintiffs to introduce evidence of
infringement for each and every limitation of each asserted claim during their case-
in-chief.  *See, e.g.*, *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S.
191, 198–9 (2014) (summarizing cases explaining patentee's burden to prove
infringement).  Plaintiffs failed to carry this burden for the "memory arrangement"
and "sensory data capture circuit arrangement" limitations of independent Claim 15
of the '167 Patent.  Instead of identifying the structure in Nikon's products that
purportedly meet these limitations, Plaintiffs' technical expert Dr. Kelly skipped
over them.  For the "memory arrangement," he merely answered "No" to whether
the term is in dispute.  (July 12, 2018 A.M. Trial Tr. at 120:21–24.)  Dr. Kelly
never identified the structure in the Nikon products that allegedly meets this
limitation.  (*See* July 12, 2018 P.M. Trial Tr. at 66:8–July 13, 2018 A.M. Trial Tr.
at 21:16.).  He provided a similar answer for the "sensory capture circuit
arrangement" limitation, and again failed to identify any structure in the Nikon
products that allegedly meets this limitation.  (July 12, 2018 A.M. Trial Tr. at
121:13–16.)

Because Plaintiffs failed to carry their burden of proving infringement of each and every limitation of Claim 15 for the Nikon products, judgment as a matter of law of non-infringement is appropriate for independent Claim 15 as well as Claim 23, which depends on Claim 15. *See, e.g.*, *Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1187 (Fed. Cir. 2009) (granting summary judgment of non-infringement because patentee failed to "specifically identify[] the allegedly infringing structure in the accused device").

## VIII. PLAINTIFFS FAILED TO PROVE DIRECT INFRINGEMENT BY NIKON CORPORATION

Plaintiffs bear the burden of proving patent infringement. *Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1314 (Fed. Cir. 2011). Direct infringement requires proof that Nikon "makes, uses, offers to sell, or sells [the accused products] within the United States or imports into the United States . . ." 35 U.S.C. § 271(a).

Here, Plaintiffs introduced no evidence during their case-in-chief that Nikon Corporation, a Japanese entity, performs any act of direct infringement in the U.S. The record is devoid of any evidence suggesting that Nikon Corporation makes, uses, offers to sell, or sells any products in the U.S. or imports products into the U.S. (*See generally* July 11, 2018 P.M. Trial Tr., July 12, 2018 Trial Tr., and July 13, 2018 A.M. Trial Tr.) Faced with this lack of evidence, a reasonable jury must necessarily conclude Nikon Corporation does not infringe any asserted claim of the '792 or '167 Patents, and thus, judgment as a matter of law of no direct infringement as to Nikon Corporation is appropriate.

## IX. PLAINTIFFS FAILED TO PROVE INDUCED INFRINGEMENT BY EITHER NIKON CORPORATION OR NIKON INC.

In order to present a *prima facie* case of induced infringement, the patentee must show that "the alleged infringer knew or should have known his actions would induce actual infringement." *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293,

1304 (Fed. Cir. 2006) (*en banc* in relevant part).  This includes proof that the accused infringer knew of the patent.  *Id.*  Induced infringement also requires proof of a specific intent to induce—i.e., something more than "just intent to cause the acts that produce direct infringement . . ."  *Id.* at 1306.

At trial, Plaintiffs failed to prove either requirement of induced infringement for both Nikon Corporation and Nikon Inc.  During Plaintiffs' case-in-chief, they presented no evidence that Nikon Inc. knew about the patents prior to the start of this lawsuit, much less before Nikon Corporation designed the products and Nikon Inc. sold them.  In fact, the record evidence is empty on inducement.  The only aspect of infringement addressed by Plaintiffs' case-in-chief are (1) whether certain limitations of the asserted claims are infringed by the Nikon products (*See* July 12, 2018 P.M. Trial Tr. at 66:8–July 13, 2018 A.M. Trial Tr. at 21:16 (testimony by Plaintiffs' technical expert) and (2) whether Nikon Corporation designed the Easy Panorama, Motion Snapshot, and Movie Live View features.  (*See* July 12, 2018 A.M. Trial Tr. at 6:20–18:11; 21:9–28:11; 41:21–54:18.)  But these pieces of evidence are legally insufficient to create a triable issue on induced infringement.  There is no evidence that Nikon Inc. knew about the '792 or '167 Patents before an act of direct infringement.  Nor is there any evidence that a Nikon defendant actively encouraged its customers to infringe the '792 or '167 Patents after learning of the patents.  User manuals describing the camera features accused of infringement, standing alone, do not create a triable issue of induced infringement.  *ACCO Brands, Inc. v. ABA Locks Mfr. Co., Ltd.*, 501 F.3d 1307, 1313–14 (Fed. Cir. 2007).

Accordingly, judgment as a matter of law of no induced infringement for both Nikon Corporation and Nikon Inc. is appropriate.

## X. PLAINTIFFS FAILED TO PROVE CONTRIBUTORY INFRINGEMENT BY EITHER NIKON CORPORATION OR NIKON INC.

To prove contributory infringement, the patentee must prove (1) there is direct infringement; (2) the accused infringer had knowledge of the patent; (3) the component has no substantial non-infringing uses; and (4) the component is a material part of the invention. *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010). Moreover, "Section 271(c) has a territorial limitation requiring contributory acts to occur in the United States." *DSU Med.*, 471 F.3d at 1304. Plaintiffs failed to carry their burden on all prongs of contributory infringement, and accordingly, judgment as a matter of law of no contributory infringement is appropriate.

First, Plaintiffs never introduced any evidence of direct infringement that could be tied to contributory infringement. Second, Plaintiffs introduced zero evidence in their case-in-chief regarding Nikon Inc.'s knowledge of the '792 and '167 Patents. Third, the evidence shows that there are substantial non-infringing uses for the Nikon cameras; for example, Plaintiffs' technical expert Dr. Kelly admitted that correctly taking a panorama photograph using Easy Panorama does not infringe. (July 12, 2018 P.M. Trial Tr. at 11:7–11.) Fourth, the accused Nikon products are not components—they are complete cameras. And fifth, as described above in section VIII, Plaintiffs introduced no evidence during their case-in-chief that Nikon Corporation, a Japanese entity, performs any act of infringement in the U.S.

Because no reasonable jury can conclude the Nikon defendants contributed to infringement, judgment as a matter of law of no contributory infringement for both Nikon Corporation and Nikon Inc. is appropriate.

## XI.    CONCLUSION

For the foregoing reasons, Nikon respectfully requests that the Court grant judgment as a matter of law on the following six issues: (1) no damages pre-dating the complaint because of a failure to comply with the marking statute; (2) no infringement as to unidentified products; (3) no infringement by representative products; (4) no infringement of method Claim 14 of the '792 Patent; (5) no infringement of Claims 15 and 23 of the '167 Patent; (6) no direct infringement by Nikon Corporation; (7) no induced infringement by Nikon Corporation and Nikon Inc.; and (8) no contributory infringement by Nikon Corporation and Nikon Inc.

Dated:         July 17, 2018          Respectfully submitted,

JACK LONDEN
VINCENT J. BELUSKO
MORRISON & FOERSTER LLP


By:  */s/ Vincent J. Belusko*
Vincent J. Belusko

Attorneys for Defendants
NIKON CORPORATION;
AND NIKON INC.