Christopher S. Marchese (SBN 170239), marchese@fr.com
FISH & RICHARDSON P.C.
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Tel:  (213) 533-4240, Fax:  (858) 678-5099

Frank Scherkenbach (SBN 142549), scherkenbach@fr.com
Kurt L. Glitzenstein (Admitted Pro Hac Vice), glitzenstein@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210-1878
Tel:  (617) 542-5070, Fax:  (617) 542-8906

Olga I. May (SBN 232012), omay@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Tel:  (858) 678-5070, Fax:  (858) 678-5099

*[Additional Counsel listed on last page.]*

Attorneys for Plaintiffs, CARL ZEISS AG and ASML NETHERLANDS B.V.

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CARL ZEISS AG and ASML NETHERLANDS B.V., <br><br> Plaintiffs, <br> v. <br><br> NIKON CORPORATION and NIKON INC., <br> Defendants. | Case No. 2:17-cv-03221-RGK (MRWx) <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW** <br><br> Hearing Date:  August 20, 2018 <br> Hearing Time:  9:00 a.m. <br> Courtroom: 850, 8th Floor <br><br> Judge: Hon. R. Gary Klausner |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................... 1

II.   LEGAL STANDARD .............................................................................. 2

III.  ARGUMENT............................................................................................ 2

    A.   Plaintiffs Are Entitled to JMOL That Claims 14 and 28 of the '792 Patent Are Not Invalid ................................................................. 2

        1.   Plaintiffs Are Entitled to JMOL of No Invalidity Under Written Description For Both Claims 14 and 28 ........................................ 2

        2.   Plaintiffs Are Entitled to JMOL of No Invalidity of Claim 28 for Either Anticipation or Obviousness Over Either Toyofuku or Sony DSC-F1, Alone or in Combination...................................... 6

        3.   Plaintiffs Are Entitled to JMOL of No Invalidity Based on Nikon's Assertions of Obviousness over Sony DSC-F1 for Both Claim 14 and 28 ........................................................................... 7

    B.   Plaintiffs Are Entitled to JMOL of Infringement of Claims 14 and 28 of the '792 Patent, and Claims 15 and 23 of the '167 Patent for Nikon Cameras that Include the Motion Snapshot Feature .............................. 9

        1.   Plaintiffs Are Entitled to JMOL of Infringement of Claims 14 and 28 of the '792 Patent For Easy Panorama Cameras............. 10

        2.   Plaintiffs Are Entitled to JMOL That the Cameras With Motion Snapshot Infringe Claims 15 and 23 of the '167 Patent............. 14

IV.   CONCLUSION ..................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acacia Media Techs. Corp.*,
   2008 WL 413747 (N.D. Cal. Feb. 13, 2008) ...................................... 18

*Carella v. Starlight Archery*,
   804 F.2d 135 (Fed. Cir. 1986) ............................................................ 7

*Cook Biotech Inc. v. Acell, Inc.*,
   460 F.3d 1365 (Fed. Cir. 2006) .......................................................... 5

*Creative Internet Advert. Corp. v. Yahoo, Inc.*,
   476 F. App'x 724 (Fed. Cir. 2011) .................................................... 10

*Crown Packaging Tech. v. Ball Metal Beverage*,
   635 F. 3d 1373 (Fed. Cir. 2011) .............................................. 3, 4, 5

*CytoLogix Corp. v. Ventana Med. Sys., Inc.*,
   424 F.3d 1168 (Fed. Cir. 2005) ........................................................ 13

*DataQuill Ltd. v. Kyocera Wireless Corp.*,
   2005 WL 6225198 (S.D. Cal. Oct. 25, 2005) ................................... 19

*E-Watch Inc. v. Apple, Inc.*,
   2015 WL 1387947 (E.D. Tex. Mar. 25, 2015) .................................. 16

*Eon Corp. IP Holdings v. Silver Spring Networks*,
   815 F.3d 1314 (Fed. Cir. 2016) .......................................................... 9

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009) ........................................................ 18

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
   582 F.3d 1288 (Fed. Cir. 2009) ...................................................... 6, 7

*Fujifilm Corp. v. Motorola Mobility*,
   2013 WL 6185254 (N.D. Cal. Nov. 18, 2013) ................................. 16

*Gart v. Logitech, Inc.*,
   254 F.3d 1334 (Fed. Cir. 2001) ..................................................... 5, 12

*Hydrodynamic Indus. Co. v. Green Max Distributors, Inc.*,
   21 F. Supp. 3d 1074 (C.D. Cal. 2014) .................................................... 2

*Insite Vision. v. Sandoz, Inc.*,
   783 F.3d 853 (Fed. Cir. 2015) ............................................................... 8

*Intel Corp. v. Broadcom Corp.*,
   172 F. Supp. 2d 515 (D. Del. 2001) ..................................................... 19

*Ivera Med. Corp. v. Hospira, Inc.*,
   801 F.3d 1336 (Fed. Cir. 2015) ............................................................. 7

*King Pharm., Inc. v. Eon Labs, Inc.*,
   616 F.3d 1267 (Fed. Cir. 2010) ............................................................. 7

*Lucent Techs., Inc. v. Gateway, Inc.*,
   2005 WL 6225148 (S.D. Cal. Oct. 14, 2005) ....................................... 19

*MBO Laboratories, Inc. v. Becton, Dickinson & Co.*,
   474 F.3d 1323 (Fed. Cir. 2007) ........................................................... 12

*Mformation Techs., Inc. v. Research in Motion Ltd.*,
   764 F.3d 1392 (Fed. Cir. 2014) ............................................................. 9

*Millennium Pharm., Inc. v. Sandoz Inc.*,
   862 F.3d 1356 (Fed. Cir. 2017) ............................................................. 8

*Network Appliance Inc. v. Sun Microsystems Inc.*,
   2008 WL 4193049 (N.D. Cal. Sept. 10, 2008) ..................................... 19

*NobelBiz, Inc. v. Glob. Connect*,
   701 F. App'x 994 (Fed. Cir. 2017) ....................................................... 13

*In re Nuvasive, Inc.*,
   842 F.3d 1376 (Fed. Cir. 2016) ............................................................. 8

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ......................................... 12

*Ransomes, Inc. v. Great Dane Power Equip., Inc.*,
   232 F.3d 911 (Fed. Cir. 2000) ............................................................... 9

*Reed v. Lieurance*,
   863 F.3d 1196 (9th Cir. 2017) ............................................................... 2

iii

*SimpleAir, Inc. v. Sony Ericsson Mobile Commc'ns AB*,
   820 F.3d 419 (Fed. Cir. 2016) ............................................................... 9

*Skedco, Inc. v. Strategic Operations, Inc.*,
   685 Fed. Appx. 956 (Fed. Cir. 2017)..................................................... 12

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
   247 F.3d 1316 (Fed. Cir. 2001) .............................................................. 7

*WBIP, LLC v. Kohler Co.*,
   829 F.3d 1317 (Fed. Cir. 2016) .............................................................. 5

**Statutes**

35 U.S.C. § 132(a) .................................................................................... 4

**Other Authorities**

Fed. R. Civ. P. 50(a)(1) ........................................................................... 2

Local Rule 5.4 ........................................................................................ 24

PTO website at
   https://www.uspto.gov/web/offices/pac/mpep/s2163.html ..................... 4

U.S. Patent No. 5,734,427 (at issue in *Fujifilm*, with a priority date of
   1994) ..................................................................................................... 16

U.S. Patent No. 7,163,168 (at issue in *E-Watch*, with a priority date of
   2003) ..................................................................................................... 16

1

## TABLE OF EXHIBITS

| Exhibit No. | Trial Exhibit No. | Description |
|---|---|---|
| Exhibit A | n/a | Excerpts from Pretrial Conference Transcript |
| Exhibit B | n/a | Combined Trial Transcripts, Days 1 - 6 |
| Exhibit C | n/a | Excerpts from Combined Trial Transcripts, Days 1 - 6 |
| Exhibit D | JTX-0001 | Certified U.S. Patent No. 6,972,792 |
| Exhibit E | JTX-0002 | Excerpts from Certified U.S. Patent No. 6,972,792 File History |
| Exhibit F | JTX-0171 | Excerpts from 1V3 Reference Manual |
| Exhibit G | JTX-0003 | Certified U.S. Patent No. 7,209,167 |
| Exhibit H | JTX-0163 | Excerpts from English Translation and Certificate of 1 AW1 Product Specifications |

# I.  INTRODUCTION

Judgment as a matter of law ("JMOL") is warranted on numerous validity and infringement issues.  As to invalidity of the '792 patent, Nikon failed to meet its burden, by clear and convincing evidence, to show that claim 28 is invalid.  The same is true for two of the three invalidity theories that Nikon advanced for claim 14.  Given that it is impossible to determine from the general verdict why the jury found as it did, a new trial is warranted, as explained in Plaintiffs' concurrently-filed motion on that issue.

As to noninfringement, Nikon's arguments were predicated on claim constructions that sought to narrow the plain and ordinary meaning of the terms in dispute.  Nikon could have and should have presented its proposed narrowing constructions to the Court on summary judgment, or at the latest in its proposed jury instructions.[1]  Instead, Nikon argued claim construction to the jury, repeatedly inviting them to limit the claims to the patent specifications, on the basis of how words were used in Nikon's own documents, or on other irrelevant bases.  Despite the Court's clear instruction to the jury that "[o]nly the claims of the patent can be infringed," and "[n]either the specification … nor the drawings of the patent can be infringed" (Tr. (jury instructions) at 946:10-14), the only way to understand the verdict is that the jury must have accepted Nikon's invitation to base its decision on an impermissible basis. The record at trial demonstrated that the relevant facts concerning the structure and operation of the features accused of infringing the '792 and '167 patents are undisputed.  Applying the plain and ordinary meaning of the terms in dispute, no reasonable jury could have found noninfringement.

Accordingly, with respect to the '792 patent, JMOL should be granted regarding

---

[1] For example, Nikon initially proposed to narrow the term "viewfinder display" in its initial proposed jury instructions—thus acknowledging that its construction was different than the plain and ordinary meaning—and then abandoned this request in subsequent proposed instructions.  (D.I. 359 at 33.)  Ultimately, Nikon only proposed two terms for construction in its final proposed jury instructions.  (D.I. 487-1 at 10.)  As the Court noted during both the final Pretrial Conference and during trial, since Nikon had failed to present constructions on summary judgment, it was incumbent on it to do in the jury instructions. 6/11/2018 PTC Tr. at 33:11-13 ("If it's not done in a summary judgment, it's done in jury instructions, because it's a matter of law.").

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR JMOL
Case No. 2:17-cv-03221-RGK (MRWx)

validity of claims 14 and 28 on the ground of written description, validity of claim 28 on the ground of anticipation, validity of claims 14 and 28 on the ground of obviousness, and infringement of claims 14 and 28.  With respect to the '167 patent, JMOL should be granted regarding infringement of claims 15 and 23 for Motion Snapshot.

## II.   LEGAL STANDARD

JMOL is warranted where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1).  The standard for JMOL mirrors the summary judgment standard.  *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017).  Courts, therefore, must view the trial evidence in the light most favorable to the non-moving party.  *Id.*  "To prevail on a motion for JMOL, a party must show that the jury's … presumed findings are unsupported by substantial evidence or based on incorrect legal standards." *Hydrodynamic Indus. Co. v. Green Max Distributors, Inc.*, 21 F. Supp. 3d 1074, 1077 (C.D. Cal. 2014).

## III.   ARGUMENT

### A.   Plaintiffs Are Entitled to JMOL That Claims 14 and 28 of the '792 Patent Are Not Invalid

At trial, Nikon presented three theories of invalidity for each of asserted claims 14 and 28 of the '792 patent: (1) written description; (2) anticipation by Toyofuku; and (3) obviousness over the Sony DSC-F1.  Nikon bore the burden of proving each of these theories by clear and convincing evidence.  However, as explained below, on the issue of written description for both claims, anticipation of claim 28, and obviousness of both claims, Nikon failed not only to carry its burden by clear and convincing evidence, but to provide ***any*** evidence as to required elements of its invalidity theories.  Thus, the Court should grant JMOL on these theories.  A new trial is warranted on claim 14 because it is impossible to ascertain from the general verdict why the jury found that claim to be invalid.

### 1.   Plaintiffs Are Entitled to JMOL of No Invalidity Under Written Description For Both Claims 14 and 28

Plaintiffs are entitled to JMOL of no invalidity as to Nikon's allegation that claims 14 and 28 of the '792 patent, which recite a "digital camera," are invalid for lack of written description because the original application did not contain those words *ipsissimis verbis*. In order to prevail on its claim of lack of written description, Nikon must prove by clear and convincing evidence that the specification does not "reasonably convey[] to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Crown Packaging Tech. v. Ball Metal Beverage*, 635 F. 3d 1373, 1380 (Fed. Cir. 2011).

Here, Dr. Essa admitted that the '792 specification discloses a digital camera. (Tr. (Essa) at 585:17-19.)[2] Given this, it was incumbent upon Dr. Essa and Nikon to explain, by clear and convincing evidence, why this disclosure must be ignored. They never did so, and instead erroneously and repeatedly suggested that because the words "digital camera" were added during prosecution, without submission of revised inventor declarations, they should be ignored. (Tr. (Kelly) at 824:12-825:6.) Operating from this legally erroneous premise, Dr. Essa simply disregarded this aspect of the disclosure—among many others—and testified that because the figures in the patent show a portable scanner rather than a digital camera, the written description of the '792 patent is insufficient to show that the inventors had in their possession the application of the invention to a digital camera. (Tr. (Essa) at 583:14-588:23.) By failing to consider the entirety of the disclosure, including the material incorporated by reference in Column 1 of the patent (discussed below), Dr. Essa's testimony fails to provide any basis from which a reasonable jury could conclude that the claims are invalid for lack of written description, let alone by clear and convincing evidence.

It bears noting that the Court has already considered and rejected the substance of Nikon's written description argument, as a matter of law. In its order denying Nikon's summary judgment motion of indefiniteness, where Nikon made the same argument that

---

[2] Plaintiffs have combined all days of the trial transcript into a single document and consecutively numbered the pages. The combined transcript is attached as Exhibit B to the Declaration of Marchese. The page cites in this brief correspond to Exhibit C.

1   the "digital camera" disclosure should be disregarded because it was added by amendment,

2   the Court explained that "Defendants also argue that the '792 Patent does not disclose a

3   digital camera, but rather only a scanner." (D.I. 249, at 3 n.1.) The Court rejected this

4   argument: "Upon review of the patent claims, specification, and prosecution history,

5   however, the Court concludes that the '792 Patent is directed to a range of image capturing

6   devices, one of which could be a digital camera." *Id.* Nikon's only argument is thus

7   contrary to a finding the Court has already made, and it should be rejected again.

8        The Court's earlier finding is correct. The specification of the '792 patent recites

9   "[a] capturing and viewing appliance" that is used for "capturing … images." *see* JTX-0001

10  at Abstract; *id.* at 5:2-4 (stating that the invention is "not limited to apparatuses which

11  include or do not include image capturing capabilities through a photo element array or

12  scanning"). The record is undisputed that a digital camera is an appliance used for

13  capturing images. (Tr. (Kelly) at 797:22-799:5; Tr. (Kelly) at 827:6-20; *see also* Tr. (Essa) at

14  584:23-586:22) Indeed, the specification explicitly states that the "image capturing

15  appliance" may be, "as a non-limiting example … a digital camera." JTX-0001 at 3:5-6.

16       This language in the specification was added during prosecution without rejection

17  by the PTO, meaning the PTO concluded that listing a digital camera as an example of

18  one such "image capturing appliance" did not enlarge the scope of the disclosure of the

19  '792 patent. *See* JTX-0002 at 6–7; *cf.* 35 U.S.C. § 132(a) ("No amendment shall introduce

20  new matter into the disclosure of the invention."); Manual of Patent Examination &

21  Procedure[3] § 2163.06 (instructing patent examiners to "object to the introduction of new

22  matter" "[i]f new subject matter is added to the disclosure"). Nor did Nikon ever argue

23  that the "image capturing appliance" language in the original specification as filed was not

24  broad enough to include a digital camera. As the patent applicant explained to the

25  examiner, a digital camera was previously disclosed both in the application as filed and

26

27       [3] The PTO's Manual of Patent Examination & Procedure is intended for examiners to
28  follow during the prosecution of patents, and is available from the PTO website at
    https://www.uspto.gov/web/offices/pac/mpep/s2163.html.

4

through the incorporation of several sister applications which explicitly recited and described a "digital camera" as an example of an "image capturing appliance." *See* JTX-0002 at 6–7, 95-97; *see also* JTX-0001 at 1:8-46; *Cook Biotech Inc. v. Acell, Inc.*, 460 F.3d 1365, 1376 (Fed. Cir. 2006) (noting that incorporation by reference "provides a method for integrating material from various documents into a host document"). Moreover, the claims expressly recite a "digital camera"—again without complaint from the PTO. As to PTO procedure, the only testimony that the jury heard was from Nikon's Dr. Essa, who acknowledged the PTO enforced the written description requirement in a "pretty thorough process" and acknowledged that the PTO did not raise written description at all, even when HP amended the specification. (Tr. (Essa) at 587:10–14; *id.* at 588:3–23.)

It was Nikon's burden to confront this evidence and, in effect, explain why the PTO got it wrong. Yet Dr. Essa's testimony does not address any of this. Critically, Dr. Essa did not even acknowledge, let alone address, any of the material that was incorporated by reference, which discloses a digital camera as an example of an "image capturing appliance." Nor did Dr. Essa contend that the reference to an image capturing appliance in the specification as originally filed could not have included a digital camera. Instead, the crux of Dr. Essa's contention was that because in his opinion the patent figures only show a portable scanner, the specification of the patent does not disclose a digital camera. As a matter of law, Dr. Essa is wrong. *Crown Packaging*, 635 F.3d at 1383 (finding no invalidity for written description as a matter of law where the basis for the written description defense was the patent figures). "[D]rawings are not meant to represent 'the' invention or to limit the scope of coverage defined by the words used in the claims themselves," particularly where, as here, the specification states that the drawings illustrate "exemplary embodiments." Dr. Essa acknowledged that the specification says it is not limited to a handheld scanner. (Tr. (Essa) at 584:23–585:16.). *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1342 (Fed. Cir. 2001); JTX-0001 at 3:58-5:4.

Dr. Essa's contradictory and conclusory testimony is not sufficient evidence for a reasonable jury. *See WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1339 (Fed. Cir. 2016)

("[u]nder our precedent, general and conclusory testimony ... does not suffice as substantial evidence of invalidity"). Thus, Plaintiffs are entitled to JMOL on written description.

### 2. Plaintiffs Are Entitled to JMOL of No Invalidity of Claim 28 for Either Anticipation or Obviousness Over Either Toyofuku or Sony DSC-F1, Alone or in Combination

Because Nikon failed to present any evidence that any prior art disclosed the **_structure_** of the means-plus-function elements of claim 28 of the '792 patent, Nikon has failed to meet its burden of demonstrating by clear and convincing evidence that that claim is invalid over either Toyofuku or Sony DSC-F1. "It is firmly established … that a structural analysis is required when means-plus-function limitations are at issue." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1299 (Fed. Cir. 2009). When addressing means-plus-function elements, the evidence must demonstrate that the prior art discloses both the function and the structure for performing that function. *See id.*

Claim 28 recites "processing means for processing a user execution of an erroneous operation of the digital camera." See JTX-0001 at 12:52–58; *see also* Tr. (Kelly) at 257:15–21 ("processing means"); *id.* (Essa) at 502:12–18 ("processing means"). In the jury instructions, the Court construed the structure for the "processing means" to be "processor 62 configured to operate error utility software 98 to run the software described in the flowchart in Fig. 8, or equivalents." (Instr. No. 6.)

Unlike Dr. Kelly, who carefully analyzed the function and structure for "processing means" for infringement (Tr. (Kelly) at 263:15-264:6), Dr. Essa failed to conduct a means-plus-function analysis comparing claim 28 to the prior art. Dr. Essa simply lumped the elements of claim 28 together with the method steps of claim 14. (Tr. (Essa) at 511:23–512:14.) Dr. Essa completely omitted the required means-plus-function analysis.

Nikon has presented no other evidence of invalidity over Toyofuku. Because Dr. Essa failed to provide any evidence to show that the prior art discloses the structure of the "processing means," Nikon has failed in its burden of showing that this element is met by Toyofuku. *Fresenius*, 582 F.3d at 1299 (affirming grant of JMOL of no invalidity because

6

1    alleged infringer neither identified the structure nor compared it to the structures present

2    in the prior art).  That alone warrants granting JMOL as to Toyofuku.  *King Pharm., Inc. v.*

3    *Eon Labs, Inc.*, 616 F.3d 1267, 1274 (Fed. Cir. 2010) (holding "a claim is anticipated if each

4    and every limitation is found either expressly or inherently in a single prior art reference.").

5        As to the Sony DSC-F1, Dr. Essa failed to show where, or how, this camera

6    discloses either the structure or the function, and only cursorily addressed how this

7    reference allegedly maps to the claims. (Tr. at 523:7-524:6.)  Dr. Essa's opinion fails to

8    qualify as evidence sufficient to support a verdict of invalidity.  *Telemac Cellular Corp. v. Topp*

9    *Telecom, Inc.*, 247 F.3d 1316, 1329 (Fed. Cir. 2001) (conclusory statements offered by

10   experts are not evidence).  Thus, on this ground, Plaintiffs are entitled to JMOL of no

11   invalidity of claim 28 over the Sony DSC-F1.  *Fresenius*, 582 F.3d at 1300 ("the evidentiary

12   burden of proof cannot be carried without clearly identifying the corresponding structure

13   in the prior art").  In addition, Nikon's only evidence on the date of the Sony DSC-F1 was

14   a copyright date in a manual and the date on a magazine article that contained a review of

15   the Sony DSC-F1.  *Cf. Carella v. Starlight Archery*, 804 F.2d 135 (Fed. Cir. 1986) (requiring

16   proof of the date of receipt of a mailer by addressees).

17       **3.     Plaintiffs Are Entitled to JMOL of No Invalidity Based on**
18              **Nikon's Assertions of Obviousness over Sony DSC-F1 for Both**
                **Claim 14 and 28**

19       As to obviousness, it is not enough to simply show that each element of the claimed

20   invention was disclosed in the prior art.  Rather, Nikon "must demonstrate by clear and

21   convincing evidence that a skilled artisan would have been motivated to combine the

22   teachings of the prior art references to achieve the claimed invention, and that the skilled

23   artisan would have had a reasonable expectation of success in doing so." *Ivera Med. Corp.*

24   *v. Hospira, Inc.*, 801 F.3d 1336, 1344 (Fed. Cir. 2015) (quoting *InTouch Techs., Inc. v. VGO*

25   *Commc'ns, Inc.*, 751 F.3d 1327, 1347 (Fed. Cir. 2014)).

26       Nikon did not meet this burden for the Sony DSC-F1.  Dr. Essa never explained

27   why a skilled artisan would have modified the DSC-F1 as he proposed: taking an error

28

1  correction message disclosed in the user manual and modifying the camera so the message

2  is displayed when the error occurs.  (Tr. (Essa) at 521:16-21.)

3        Moreover, his testimony that the alleged modification would have occurred "*if* the

4  person would be motivated to provide this functionality of ease of use" is a hindsight

5  opinion, in that it assumes the solution to the problem.  "'The inventor's own path itself

6  never leads to a conclusion of obviousness; that is hindsight. What matters is the path that

7  the person of ordinary skill in the art would have followed, as evidenced by the pertinent

8  prior art.'" *Millennium Pharm., Inc. v. Sandoz Inc.*, 862 F.3d 1356, 1367 (Fed. Cir. 2017); *see*

9  *also Insite Vision. v. Sandoz, Inc.*, 783 F.3d 853, 859 (Fed. Cir. 2015).  Dr. Essa did not offer

10 any opinion that a person of skill in the art would have had such a motivation—he merely

11 offered his opinion as to how "easy" it would be to implement if the solution has first

12 been provided.  His testimony that the alleged modification would have been "easy" is

13 irrelevant, as "easy" is not the standard for obviousness.  Indeed, Dr. Essa never even

14 attempted to explain why, if it were in fact such an "easy" modification, cameras such as

15 the Sony DSC-F1 persisted with the practice of directing users to manuals that he admits

16 are rarely read to decode the on-camera message.  (Tr. (Essa) at 522:15-523:6.)  That is

17 because the explanations in the manuals were detailed and lengthy, and thus not  suitable

18 for adding to the textual dialog.  (Tr. (Kelly) at 795:5-797:11; Tr. (Kelly) at 806:24-807:16.)

19       The only other time Dr. Essa mentioned obviousness for the Sony DSC-F1 is

20 equally unclear and insufficient:

21       I know most people don't read manuals.  But if you did read the
22       manual, the manual says the obvious way to get rid of that error is to
         cancel the protection on that file so you can delete it.

23       A designer, again, would take that into consideration. That's why
24       taking the first element, parts of the other, combining it would make an
         obvious extension for a person to be able to recreate this invention.

25 (Tr. (Essa) at 522:24-523:6.)

26       Conclusory testimony that fails to explain why a modification would be made, or

27 why a skilled artisan would have a reasonable expectation of success, is insufficient to

28 support a conclusion of obviousness.  *See, e.g., In re Nuvasive, Inc.*, 842 F.3d 1376, 1381–82

8

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR JMOL
Case No. 2:17-cv-03221-RGK (MRWx)

1   (Fed. Cir. 2016); *Ransomes, Inc. v. Great Dane Power Equip., Inc.*, 232 F.3d 911 (Fed. Cir. 2000).

2   Because Nikon failed to meet its burden of proof, JMOL should be granted.

> **B.   Plaintiffs Are Entitled to JMOL of Infringement of Claims 14 and 28 of the '792 Patent, and Claims 15 and 23 of the '167 Patent for Nikon Cameras that Include the Motion Snapshot Feature**

As noted, the jury was clearly and unambiguously instructed that "[o]nly the claims of the patent can be infringed. … Neither [the] specification, which is the written description of the invention, nor the drawings of the patent can be infringed." (Tr. (jury instructions) at 946:10-14.)   The jury was instructed to apply the plain and ordinary meaning of any claim term not construed, and only the two means-plus-function terms in claim 28 of the '792 patent were construed. (Tr. (jury instructions) at 947:1-3; 948:7-949:2.)

It is evident from the verdict of noninfringement that the jury accepted Nikon's repeated urging to compare the accused features to the figures and specifications of the asserted patents, or to limit claim terms to how Nikon chose to describe features in its product manuals.   These instances are discussed below, but Plaintiffs note that the jury did not have to resolve any factual disputes regarding the structure and operation of the accused Nikon cameras with respect to either patent.   That evidence was uncontested.

Because there is no dispute as to how the accused products function, only a dispute as to the scope of certain claim limitations, this Court may properly resolve infringement on JMOL.   *See Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1323 (Fed. Cir. 2016) (resolving infringement questions as a matter of law based on the Court's determination of claim scope).   The Court need not construe any claim terms to do so, i.e., it need not define the precise metes and bounds of any term.   Rather, as the Federal Circuit has routinely done, the Court need only determine whether on the uncontested facts the plain and ordinary meaning of the disputed claim terms covers the undisputed functionality of the accused products.   *See SimpleAir, Inc. v. Sony Ericsson Mobile Commc'ns AB*, 820 F.3d 419, 432 (Fed. Cir. 2016) (reversing claim construction and jury verdict of infringement without articulating precise wording of correct construction); *Mformation Techs., Inc. v. Research in Motion Ltd.*, 764 F.3d 1392, 1399-400 (Fed. Cir. 2014) (same);

9

1   *Creative Internet Advert. Corp. v. Yahoo, Inc.*, 476 F. App'x 724, 728–29 (Fed. Cir. 2011) (same).

2   The only disputes relate to claim scope, and the Court should find as a matter of law that

3   the scope covers what is undisputedly present in the accused products.   Accordingly,

4   JMOL of infringement should be granted for the '792 patent for all Easy Panorama

5   cameras, and for the '167 patent for the cameras with Motion Snapshot.

### 1.   Plaintiffs Are Entitled to JMOL of Infringement of Claims 14 and 28 of the '792 Patent For Easy Panorama Cameras

8   For the '792 patent, there was only a single limitation that Nikon contended was

9   not present in Easy Panorama:   a "textual dialog" that contains "operational error

10   information and a method of correct information."[4]   Nikon did not dispute Dr. Kelly's

11   testimony of how the error messages are displayed on the camera, or that the camera

12   receives input from the user through the user's erroneous and corrective actions while

13   using Easy Panorama—indeed, both sides' experts acknowledged that this was how the

14   cameras work.  (Tr. (Kawai) at 185:11-186:14; Tr. (Kelly) at 250:14-251:5; Tr. (Kelly) at

15   253:10-255:3; Tr. (Kelly) at 260:15-23.)   Nor did Nikon dispute that a text message

16   appeared during erroneous operation, or that the displayed text contained "operational

17   error information" and a "method of correct information."  (Tr. (Goodin) at 642:7–11; *see*

18   *also id.* at 639:18–23 (describing the error messages displayed in Easy Panorama).)   Nor

19   did Nikon dispute testimony from Plaintiffs' expert Dr. Kelly that there was a "dialog"

20   between the user and the camera.  As Dr. Kelly explained, the text displayed by the Nikon

21   cameras is a "textual dialog" because the user "[c]an take an action, press a button, move

22   the camera more quickly, for example" in response to the message.  (*See, e.g.*, Tr. (Kelly) at

23   255:14–21.)  Indeed, although Mr. Goodin did not address Dr. Kelly's testimony regarding

24   _____

25   [4] Concerning the "processing means" structure in claim 28, Mr. Goodin claimed that Dr. Kelly in his infringement analysis had combined two of the algorithm steps from

26   Figure 8. (Tr. (Goodin) at 644:16–646:15.) Aside from Mr. Goodin's claim being factually incorrect, as Dr. Kelly analyzed all steps in Figure 8 (Tr. (Kelly) at 261:2–264:2), at no

27   point did Mr. Goodin challenge Dr. Kelly's testimony that the "processing means" structure is equivalent to the structure implementing the operation of Easy Panorama. (Tr.

28   (Goodin) at 638:22–648:10.)

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR JMOL
Case No. 2:17-cv-03221-RGK (MRWx)

1    the user moving the camera more quickly, Mr. Goodin did acknowledge that the user

2    could interact with the error message by pushing a button on the back of the camera and

3    thereby cancel the message.  (Tr. (Goodin) at 643:23–644:12.)  Thus, it is undisputed that

4    the accused cameras display text indicating an error and a way to correct that error, and

5    the user can take actions in response to that text.  Accordingly, the evidence established

6    that Easy Panorama has a "textual dialog" as claimed.

7            As is evident from the jury's verdict, it failed to apply the plain and ordinary

8    meaning of "textual dialog," but instead disregarded the Court's instruction and compared

9    the accused feature to the figures and specification of the '792 patent.  This followed from

10   Nikon's noninfringement argument, which rested on Mr. Goodin's improper argument

11   that the "textual dialog" is limited to what is shown and described in Figure 4 of the patent,

12   i.e., that the user must be able to press a dedicated physical button on the camera in

13   response to the error message to either cancel the message or get more information:

14              Now if you could bring up the '167 [sic; '792] patent, and in particular, **go to
             Figure 4A**. So this we've seen before. **This is the textual dialogue in the '792
15           patent, and as I said, it has two areas.** "While capturing an appliance" is the text
             area, and then there are two buttons on the bottom. One gives you the option for
16           cancel; the other one gives you the option for "more." Now, these buttons are
             programmable as part of it being a textual dialogue box, so should the programmer
17           decide to do it, that cancel button could just as easily be a try again button or a
             bypass button or anything else that the programmer would like to use there. So it
18           isn't tied particularly to canceling the dialogue. **Now, what you'll notice here is
             that the error message I just showed you from Dr. Kelly doesn't include
19           either of these buttons. It's my opinion that's why it doesn't meet a textual
             dialogue.**

20   (Tr. (Goodin) at 697:1-17; emphasis added.)[5]

23           Rather than apply the plain and ordinary meaning of "textual dialog" as instructed,

24   it is manifest from the verdict that the jury must have accepted Mr. Goodin's position that

26   _____

27           [5] Mr. Goodin's prior testimony on what this term means, including the alleged
     requirement of dedicated physical buttons that can be pressed to cancel an error message
28   or get further information, was likewise based exclusively on Figure 4 of the specification.
     (Tr. (Goodin) at 642:12 – 643:2.)

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR JMOL
Case No. 2:17-cv-03221-RGK (MRWx)

1    the term is limited to one specific type of dialog—pressing a dedicated physical button on

2    the device—the embodiment shown in Figure 4A—and does not extend to any other

3    "dialog" that may occur, such as correcting the error in response to an error message by

4    moving the camera at the right speed and thereby canceling the error message.

5        This departure from the plain and ordinary meaning of the terms is wrong as a

6    matter of law, for multiple reasons.  First, limiting "textual dialog" to the embodiment in

7    Fig. 4A flies in the face of the claim language, which recites only a "textual dialog."  It says

8    nothing of buttons on the display or the camera, or pressing buttons in response to the

9    error message. The "textual" part of that term refers to text; Easy Panorama undisputedly

10   displays text error messages. "Dialog" implies interaction between the user and the

11   camera: as Dr. Goodin acknowledged, "it's critical that the user interact with the dialogue,

12   or then it would just become a textual monologue." (Tr. (at 643:1–2.) The claim does not

13   require any particular **type** of interaction. It is undisputed that there is an interactive dialog

14   between the accused cameras and the user in response to the error messages.

15       Second, Mr. Goodin clearly and expressly based his noninfringement argument on

16   figures from the '792 patent.  (Tr. (Goodin) at 642:18–21 (referring to figures from the

17   patent); *id.* at 643:10–17.)   This is both contrary to the jury instructions and legally

18   erroneous.  "[A] claim is not limited to inventions looking like those in the drawings."

19   *Skedco, Inc. v. Strategic Operations, Inc.*, 685 Fed. Appx. 956, 960 (Fed. Cir. 2017); *MBO*

20   *Laboratories, Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007) ("patent

21   coverage is not necessarily limited to inventions that look like the ones in the figures").

22   That is because generally the "drawings are not meant to represent 'the' invention or to

23   limit the scope of coverage defined by the words used in the claims themselves." *Gart*,

24   254 F.3d at 1342.  To limit an invention to what is drawn in a single example figure as Mr.

25   Goodin urged "would be to import limitations onto the claim from the specification,

26   which is fraught with 'danger.'" *MBO*, 474 F.3d at 1333; *Phillips v. AWH Corp.*, 415 F.3d

27   1303, 1320 (Fed. Cir. 2005) (*en banc*) (describing "reading a limitation from the written

28   description into the claims" as "one of the cardinal sins of patent law").

Accordingly, it was wrong as a matter of law for Nikon to argue that the claims are limited to the embodiment in the specification, and then argue that this improper limitation avoids infringement. As the jury was instructed, the claims are what controls for infringement. For Nikon to press this theory at trial, it was incumbent upon Nikon to seek a narrow construction of "textual dialog" on summary judgment (or at latest in the jury instructions), and argue on that basis that the claims are not infringed. Having failed to do so, Nikon cannot seek a verdict of non-infringement on this basis.

Third, Mr. Goodin's claim construction testimony was improper. *See CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005) (expert testimony concerning the construction of claims was "improper, and the district court should have refused to allow such testimony despite the agreement of the parties" to allow such testimony); *see also NobelBiz, Inc. v. Glob. Connect*, 701 F. App'x 994, 997 (Fed. Cir. 2017) ("Allowing the experts to make arguments to the jury about claim scope was erroneous.").

Fourth, Mr. Goodin could not even agree with Nikon's invalidity expert, Dr. Essa, on this issue of claim construction of "textual dialog." According to Dr. Essa, "in general terms, any error message that pops up on a camera qualifies as a dialogue because it is telling you something about the state of the camera that you need to address." (Tr. (Essa) at 581:12–18 ("A. Yes. It's information that is given to a user to help you perform the task.").) Despite following Mr. Essa on every other issue of construction, it is telling that Mr. Goodin selectively disagreed with him on this one. (*See* Tr. at 721:18–722:20 ("If Dr. Essa testified that any message that pops up on a camera is a textual dialogue, then, yes, I disagree with Dr. Essa's testimony.").)

Fifth, even applying Mr. Goodin's erroneous construction, the undisputed record shows that Nikon infringes. As stated above, Dr. Kelly testified that the user may press a button on the camera to cancel error messages (*see, e.g.,* Tr. (Kelly) at 255:14-21), and Mr. Goodin conceded this is true, for at least some of the cameras (Tr. (Goodin) at 644:6-12: "I think if you press random buttons on the camera, for some of the cameras, things will happen that take this user interface message down, or the error message down.").)

13

In summary, the jury should have disregarded Nikon's invitation to compare the accused products to the embodiments in the figures of the '792 patent. They failed to do so, and substituted a construction that is wrong as a matter of law for the plain and ordinary meaning of the term. Under the plain and ordinary meaning of "textual dialog," the undisputed evidence proves infringement, and thus Plaintiffs are entitled to JMOL.

### 2.   Plaintiffs Are Entitled to JMOL That the Cameras With Motion Snapshot Infringe Claims 15 and 23 of the '167 Patent

As with the '792 patent, the relevant functionality of the accused cameras is undisputed. The disputes center on the scope of the claim terms. For Motion Snapshot, the following limitations were disputed: (1) "viewfinder display" and (2) "generate the trigger signal in response to detection of a focus adjustment" / "capture of sensory data responsive to the trigger signal"; and (3) "select a subset of the sensory data." As discussed below, the verdict demonstrates that the jury must have disregarded the instruction to apply the plain and ordinary meanings of terms (1) and (2), and instead embraced Nikon's narrowing constructions at trial. For term (3), Nikon failed to dispute the evidence. JMOL of infringement should be entered for Motion Snapshot.

### a.   The Undisputed Evidence Shows That All Accused Nikon Cameras Contain an LCD Display That Meets the Claimed "Viewfinder Display"

It is undisputed that all accused Nikon cameras have an LCD panel on the back. (*See, e.g.,* Tr. (Goodin) at 719:4-6.) It is further undisputed that this LCD screen allows a user to see the view through the lens and to frame a photo. As Mr. Vannatter admitted at trial, this LCD screen "displays the view through the lens," and, in instances where the optical viewfinder is not present or is disabled, the only way for a user to take a picture or to capture video is by "looking through that LCD display because they are seeing the view through the lens on that display." (Tr. (Vanatter) at 461:5-7, 461:24-462:5.) Mr. Goodin agreed, testifying that the LCD screen on the back of the camera allows the user to "view the subject that you want to take a picture of" and that, like an optical viewfinder, a user can "use the LCD screen to frame the picture that you want to take." (Tr. (Goodin) at

718:11-17, 718:23-25.)   In fact, Mr. Goodin admitted that for some of the accused products, this was the only way a user could frame a picture because several of Nikon's mirrorless cameras (including those that include the accused Motion Snapshot function) do not have an optical viewfinder. (Tr. (Goodin) at 719:7-11.)   Yet Nikon denies infringement because it contends that the digital LCD screen on the back of the camera is not a "viewfinder display."   Here too, Nikon chose not to argue on summary judgment that this claim term should be narrowed with respect to its plain and ordinary meaning. Indeed, as noted above in n.1, Nikon originally asked to have this term construed as part of jury instructions, but abandoned that position, choosing instead to improperly and repeatedly argue claim construction to the jury.

Notably, Mr. Goodin conceded, as he must, that an LCD screen can be a viewfinder.   Specifically, Mr. Goodin admitted that an "electronic viewfinder," optional on some Nikon cameras, includes an LCD screen that displays an image captured by the image sensor.   (Tr. (Goodin) at 678:2-8; JTX-0171 at 58 (excerpted to the right).) Dr. Essa further asserted that a small LCD screen in the Niikawa prior art taught the claimed "viewfinder display."



(Tr. (Essa) at 570:24-571:8.)   There is no sound basis on which a reasonable jury could have drawn any meaningful difference—rooted in the words "viewfinder display" in the claim—between a larger LCD panel on the back of the camera (which allows the user to see through the lens and frame a picture) and the smaller LCD screen in an electronic viewfinder (which likewise allows the user to see through the lens and frame a picture).

Beyond being illogical, any supposed such distinction violates the jury instruction and is wrong as a matter of law.   First, the claims recite a "viewfinder display," not an "viewfinder close to the eye" or "viewfinder device on top of the camera," as Nikon argued.   As to the words of the term, "display" is satisfied, as neither party disputes that the cameras have an LCD display, and the D in LCD stands for "display."   The word

1  "viewfinder" has a clear and unambiguous plain meaning—it is something that allows you

2  to "find" the "view," i.e., to frame a picture, which Mr. Goodin in the above-quoted

3  passages conceded is also possible with the LCD display.  *See also E-Watch Inc. v. Apple,*

4  *Inc.*, 2015 WL 1387947, at *30 (E.D. Tex. Mar. 25, 2015) (the plain and ordinary meaning

5  of "viewfinder" encompassed "an electronic device associated with a camera for depicting

6  a view of the area of the subject to be included in the picture"); *Fujifilm Corp. v. Motorola*

7  *Mobility*, 2013 WL 6185254, at *4 (N.D. Cal. Nov. 18, 2013) (interpreting "viewfinder" to

8  encompass an LCD monitor on the back of a camera).  In both of these cases, the patents

9  at issue had priority dates similar to, or before, the '167 patent.  *Compare* JTX-0003 (priority

10 date of 2003) *with* U.S. Patent No. 7,163,168 (at issue in *E-Watch*, with a priority date of

11 2003) *and* U.S. Patent No. 5,734,427 (at issue in *Fujifilm*, with a priority date of 1994).

12         Nothing in the plain language "viewfinder display" warrants limiting the term to a

13 display designed to be positioned close to the user's eye.  (Tr. (Vannatter) at 419:11-16,

14 422:19-423:15, 479:12-22; Tr. (Essa) at 591:11-17; Tr. (Goodin) at 678:12-17.)  Second,

15 Mr. Goodin urged the jury to apply the words that ***Nikon*** uses in its instruction manuals,

16 rather than the words of the claim, repeatedly observing that the manuals use the term

17 "optical viewfinder" for one component, and "monitor" for the LCD display, with the

18 clear suggestion that the latter therefore cannot be a "viewfinder display" as that term is

19 used in the claims.  Here too, the jury was invited to perform the wrong comparison, and

20 evidently did so.  How an accused infringer uses terms is immaterial—the only thing that

21 matters is what the terms mean in the context of the patent.  *Trs. of Columbia*, 811 F.3d at

22 1363.  It is not the case that an accused infringer can avoid infringement simply by using

23 different terms in describing its own products, but that is exactly what Mr. Goodin urged

24 the jury to do, which is fundamentally flawed and legally erroneous.

25         Moreover, the construction that Nikon argued to the jury cannot be reconciled with

26 the specification of the '167 patent, which twice identifies an "LCD display" as one

27 embodiment of a "display" that can be active, as an example of a "viewfinder display."

28 JTX-0003 at 3:55-64; 5:31-41.  Indeed, the specification explicitly teaches that an LCD

1  display "enable[s] the user to view images in . . . a live view mode."  JTX-0003 at 3:40–

2  44.  It was thus legal error for the jury to apply the claim term in such a manner as to

3  exclude this disclosed alternative.

4  Finally, here too, Mr. Goodin's testimony is in conflict with Dr. Essa's.  Dr. Essa

5  was impeached at trial with his earlier admission that the purpose of the LCD screen was

6  to allow a user to compose an image and that an "LCD display, which is basically

7  connected to the optics, … let's you see what the view is for the camera."  (Tr. (Essa) at

8  568:17–22, 569:21–570:1; 570:9–16 (admitting that "if the LCD display is connected in a

9  way that it shows the view that the viewfinder is seeing, then you can use the viewfinder

10  for composing a picture like you would a viewfinder").  In short, on the plain and ordinary

11  meaning of "viewfinder display," all of Nikon's accused cameras meet this limitation.

12
**b.**      **Motion Snapshot Meets the Plain Meaning of "Generate the Trigger Signal in Response to Detection of a Focus Adjustment" and "Initiate Capture of Sensory Data Responsive to the Trigger Signal"**
13
14

15  The operation of Motion Snapshot is undisputed.  When the user presses the

16  shutter-release button halfway, the camera focuses and then, once focused starts buffering

17  (capturing) data.  The buffering will continue until the user presses the button all the way,

18  at which point the camera will take a photograph and permanently record 1.6s of the data.

19  (*See, e.g.,* JTX-0163 at 9; (Tr. (Kelly) at 278:3-279:23, 269:19-7.)

20  Claim 15 recites a detection circuit configured to "generate the trigger signal ***in***

21  ***response to*** detection of a focus adjustment" and a processing unit configured to "initiate

22  capture of sensory data ***responsive to*** the trigger signal."  (JTX-0003 at Cl. 15.)  At trial,

23  Nikon treated these two limitations together.  (Tr. (Goodin) at 666:6-20.)

24  Nikon argues that the capture of sensory data is not "responsive to" the trigger

25  signal generated in response to the focus adjustment, but rather to the initial half-press of

26  the button that starts Motion Snapshot.  (Tr. (Goodin) at 680:6-681:4)

27  There is no dispute that, in Motion Snapshot, a trigger signal is generated when

28  autofocus adjusts and locks, and that signal initiates capture of the sensory data (the

movie).  Therefore a focus adjustment must occur before sensory data can be captured, and conversely no image data will be collected if autofocus is not done:

- Nikon engineer Mr. Kawai testified that if autofocusing is not achieved, Motion Snapshot cannot proceed (Tr. (Kawai) at 178:11-17, 176:11-15), and that Motion Snapshot checks "whether the autofocus is, in fact, in focus" (*id.* at 619:20-620:7). If the camera fails this check, "the camera does not begin the process of buffering the image data." (*Id.* at 619:4-7, 621:6-17.)
- Nikon engineer Mr. Kubota testified that the ability to take a Motion Snapshot movie is tied to the focusing function: "unless it is focused, you cannot take a Motion Snapshot." (Tr. (Kubota) at 192:10-193:2.)
- Plaintiffs' infringement expert Dr. Kelly testified that all accused cameras sense focus adjustments and referred to the testimony of Messrs. Kawai and Kubota that without autofocusing, Motion Snapshot cannot proceed.  (Tr. (Kelly) at 274:8-275:16, 809:22-810:8.)  Dr. Kelly presented his source code analysis showing that after the shutter button is pressed halfway, autofocus adjusts and locks and then a trigger signal is generated that initiates capture of the sensory data.  (*Id.* at 273:6-274:7, 277:5-278:2.)

Thus, the evidence shows that the autofocus trigger signal that results in capturing sensory data in Motion Snapshot is the proximate cause of sensory data capture.  It is irrelevant whether this whole process was earlier initiated by the half-press of the shutter button, or whether there are other conditions precedent to sensory data capture.  Yet the jury apparently accepted Nikon's invitation to rewrite the claim language to require that the autofocus trigger signal be the ***only*** thing that initiates data capture.

The claim language is both clear and open-ended.  It does not exclude other actions in the causal chain that lead to the capture of sensory data.  Indeed, claim 15 recites "a digital camera, ***comprising***…," and "comprising" is "well understood in patent law to mean 'including but not limited to.'"  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1319 (Fed. Cir. 2009).  This term also "permits additional components which are not required by the claim."  *In re Acacia Media Techs. Corp.*, 2008 WL 413747, at *2 (N.D. Cal. Feb. 13, 2008) (citing *Power Mosfet Tech., L.L.C v. Siements AG*, 378 F.3d 1396, 1409 (Fed. Cir. 2004)).  Thus, claim 15 does not exclude systems where the initial step in the process may have been caused in part by another event, such as half-depressing a shutter button.

1    Moreover, the plain and ordinary meaning of "in response to" and "responsive to" are

2    simply "responding to" or "reacting to." *See, e.g., Network Appliance Inc. v. Sun Microsystems*

3    *Inc.*, 2008 WL 4193049, at *11 (N.D. Cal. Sept. 10, 2008) (construing "responsive to writing

4    a data record…" as "after and in reaction to the writing of a data record…").[6]  Under the

5    proper meaning of "responsive to," because autofocus must occur first, the capture of

6    sensory data in the Motion Snapshot feature is responding or reacting to a focus

7    adjustment.  Accordingly, JMOL is warranted on this issue.

8                    c.        **"Select a Subset of the Sensory Data" Is Met**

9            While Nikon in its closing argument showed the jury a marked-up copy of claim 15

10   with a line and a red X through the requirement that the claimed processing unit must be

11   configured to "temporarily store the sensory data [and] select a subset of the sensory data,"

12   suggesting that that feature is also absent, its expert Mr. Goodin neither disputed Dr.

13   Kelly's testimony on this feature nor presented a cogent explanation of why it is absent

14   from Motion Snapshot.  As stated above, it is undisputed that when the user presses the

15   shutter-release button halfway, the camera focuses and starts buffering data, i.e., putting it

16   into temporary storage.  Once the user presses the button all the way, the camera will take

17   a photograph and record a 1.6s subset of that data.  (*See, e.g.,* JTX-0163 at 9; (Tr. (Kelly) at

18   278:3-279:23, 269:19-7.)

19

20

21

22

23

24

25          [6] *See also DataQuill Ltd. v. Kyocera Wireless Corp.*, 2005 WL 6225198, at *1 (S.D. Cal. Oct.
        25, 2005) (construing "responsive to" as "giving response or reaction"); *Lucent Techs., Inc.*
26      *v. Gateway, Inc.*, 2005 WL 6225148, at *1 (S.D. Cal. Oct. 14, 2005) (construing "responsive
        to" as "responding or reacting to"); *Intel Corp. v. Broadcom Corp.*, 172 F. Supp. 2d 515, 533
27      (D. Del. 2001) ("It should be noted that the claim language also requires that the statistical
        decoding means be coupled (i.e. electrically connected directly or indirectly) to the input
28      means, and be responsive (i.e. respond or react) to a control signal.").

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR JMOL

Case No. 2:17-cv-03221-RGK (MRWx)

Dr. Kelly further testified that once the user half-presses the shutter button, the cameras will autofocus and start to buffer data in temporary storage. (Tr. (Kelly) at 278:3-279:23, 269:19-7.) He illustrated this with a figure in Nikon's own product specification (JTX-0163 at 9), which shows that data going through temporary storage starts at the half-press and ends at the full-press (when it is stored). (Tr. (Kelly) at 279:7-20.) Once the user fully presses the button, the camera will take a still image and select and permanently record a subset of 1.6 seconds of the buffered sensory data. (Tr. (Kelly) at 279:14-23.)



Fig. 3. 3.9-1. Manipulations/operations in movie shooting

Mr. Goodin's sole disagreement with Dr. Kelly on this feature was that "Dr. Kelly argues that this limitation is met because there is an option on the camera that allows you to place the still image either in the center of the images that you're collecting or place the still image at the end. However, this option is selected well before you select any sensory data, so it certainly can't be selecting a subset of sensory data that's stored in temporary memory." (Tr. (Goodin) at 681:10-21.) This is a distinction without a difference. There is nothing in the claim that imposes any constraint on when the still image is captured with respect to the sensory data. When the undisputed claim construction is applied to the undisputed operation of Motion Snapshot, no reasonable jury could conclude that this element is not present, thus warranting JMOL on this issue as well.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter JMOL on these issues: (1) no invalidity of claims 14 and 28 of the '792 patent for lack of written description; (2) no invalidity of claim 28 of the '792 patent for anticipation; (3) no invalidity of claims 14 and 28 of the '792 patent for obviousness; (4) infringement of claims 14 and 28 the '792 patent; and (5) infringement by Nikon accused cameras having Motion Snapshot of claims 15 and 23 of the '167 patent.

1   Dated:  July 23, 2018            FISH & RICHARDSON P.C.

2
                                    By:   /s/ Christopher S. Marchese
3                                        _____

4                                        Christopher S. Marchese (SBN 170239)
                                         marchese@fr.com
5                                        FISH & RICHARDSON P.C.
6                                        633 West Fifth Street, 26th Floor
                                         Los Angeles, CA 90071
7                                        Tel:  (213) 533-4240, Fax: (858) 678-5099

8
                                         Frank Scherkenbach (SBN 142549)
9                                        scherkenbach@fr.com
10                                       Kurt L. Glitzenstein (Admitted Pro Hac Vice)
                                         glitzenstein@fr.com
11                                       FISH & RICHARDSON P.C.
12                                       One Marina Park Drive
                                         Boston, MA 02210-1878
13                                       Tel:  (617) 542-5070, Fax: (617) 542-8906

14
                                         Olga I. May (SBN 232012)
15                                       omay@fr.com
16                                       Markus D. Weyde (SBN 285956) weyde@fr.com
                                         K. Nicole Williams (SBN 291900)
17                                       nwilliams@fr.com
18                                       Jared A. Smith (SBN 306576)
                                         jasmith@fr.com
19                                       Oliver J. Richards (SBN 310972)
20                                       orichards@fr.com
                                         FISH & RICHARDSON P.C.
21                                       12390 El Camino Real
22                                       San Diego, CA 92130
                                         Tel:  (858) 678-5070, Fax:   (858) 678-5099
23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Andrew R. Kopsidas (Admitted Pro Hac Vice)
kopsidas@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W., Ste. 1000
Washington, DC 20024
Tel: (202) 783-5070, Fax: (202) 783-2331

Attorneys for Plaintiffs, CARL ZEISS AG and
ASML NETHERLANDS B.V.

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR JMOL
Case No. 2:17-cv-03221-RGK (MRWx)

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on July 23, 2018, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

*/s/ Christopher S. Marchese*
Christopher S. Marchese
marchese@fr.com

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR JMOL
Case No. 2:17-cv-03221-RGK (MRWx)