Christopher S. Marchese (SBN 170239), marchese@fr.com
FISH & RICHARDSON P.C.
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Tel:  (213) 533-4240, Fax:   (858) 678-5099

Frank Scherkenbach (SBN 142549), scherkenbach@fr.com
Kurt L. Glitzenstein (Admitted Pro Hac Vice), glitzenstein@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210-1878
Tel:  (617) 542-5070, Fax:   (617) 542-8906

Olga I. May (SBN 232012), omay@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Tel:  (858) 678-5070, Fax:   (858) 678-5099

*[Additional Counsel listed on last page.]*

Attorneys for Plaintiffs, CARL ZEISS AG and ASML NETHERLANDS B.V.

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CARL ZEISS AG and ASML NETHERLANDS B.V., <br><br> Plaintiffs, <br><br> v. <br><br> NIKON CORPORATION and NIKON INC., <br> Defendants. | Case No. 2:17-cv-03221-RGK (MRWx) <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR A NEW TRIAL** <br><br> Hearing Date:  August 20, 2018 <br> Hearing Time:  9:00 a.m. <br> Courtroom: 850, 8th Floor <br><br> Judge: Hon. R. Gary Klausner |

1

## <u>TABLE OF CONTENTS</u>

2
<u>Page</u>

3  I.    INTRODUCTION ...................................................................................... 1

4  II.    LEGAL STANDARD .............................................................................. 1

5  III.    ARGUMENT ............................................................................................ 1

6
7      A.    The Jury's Verdict Was Tainted by Errors That Require a New Trial . 1

8          1.    The Jury's Determinations Regarding the '792 Patent
Necessitate a New Trial as to Both Validity and Infringement .. 2

9
10         2.    Because the Jury's Verdict Regarding Infringement of the '167
Patent by Motion Snapshot Fails as a Matter of Law, a New
11                 Trial Is Warranted for Movie Live View .................................... 4

12     B.    Plaintiffs Are Entitled to a New Trial as to the '792 Patent Because
the Jury's Findings of Noninfringement and Invalidity Are
13           Irreconcilably Inconsistent .................................................................. 5

14
15     C.    A New Trial Is Warranted on All Issues for All Patents Because
Nikon Improperly Argued Claim Construction to the Jury for Both
16           Patents ................................................................................................ 7

17     D.    A New Trial Is Warranted Because the Jury's Determinations Are
Against the Clear Weight of the Evidence ........................................... 8
18

19         1.    The Clear Weight of the Evidence Shows Nikon's Cameras
Infringe the Asserted Claims of the '792 Patent ........................ 9
20

21         2.    The Clear Weight of the Evidence Shows Nikon's Products
Infringe the Asserted Claims of the '167 Patent ...................... 11
22

23     E.    The Clear Weight of the Evidence Shows the Asserted Claims of the
'792 Patent Are Not Invalid .............................................................. 16

24 IV.    CONCLUSION ...................................................................................... 17

25
26

27

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 2:17-cv-03221-RGK (MRWx)

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

5

*Channell Commercial Corp. v. Pencell Plastics, Inc.*,
   2015 WL 12731926 (C.D. Cal. Aug. 28, 2015) ................................................ 7, 9

6

7

*Computer Access Tech. Corp. v. Catalyst Enters., Inc.*,
   273 F. Supp. 2d 1063 (N.D. Cal. 2003) ................................................ 12

8

9

*CytoLogix Corp. v. Ventana Med. Sys., Inc.*,
   424 F.3d 1168 (Fed. Cir. 2005) ................................................ 11, 12

10

11

*Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*,
   818 F. Supp. 2d 1193 (E.D. Cal. 2011) ................................................ 9

12

13

*Experience Hendrix v. Hendrixlicensing.com*,
   762 F.3d 829 (9th Cir. 2014) ................................................ 5

14

*Falcon Stainless, Inc. v. Rino Companies, Inc.*,
   2011 WL 13130896 (C.D. Cal. Aug. 2, 2011) ................................................ 9

15

16

*Gasoline Products v. Champlin Refining Co.*,
   283 U.S. 494 (1931) ................................................ 7

17

*Markman v. Westview Instruments, Inc.*,
   517 U.S. 370 (1996) ................................................ 11

18

19

*Maryland v. Baldwin*,
   112 U.S. 490 (1884) ................................................ 6

20

21

*Molski v. M .J. Cable*,
   481 F.3d 724 (9th Cir. 2007) ................................................ 5, 12

22

23

*Montgomery Ward v. Duncan*,
   311 U.S. 243 (1940) ................................................ 5

24

25

*NobelBiz, Inc. v. Glob. Connect, L.L.C.*,
   701 F. App'x 994 (Fed. Cir. 2017) ................................................ 11

26

27

*Sunkist Growers, Inc. v. Winckler & Smith Citrus Prods.*,
   370 U.S. 19 (1962) ................................................ 6

28

*Symantec Corp. v. Computer Assocs. Int'l, Inc.*,
  522 F.3d 1279 (Fed. Cir. 2008) ............................................................... 10

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
  135 S. Ct. 831 (2015) ............................................................................... 11

*United N.Y. & N.J. Sandy Hook Pilots v. Halecki*,
  358 U.S. 613 (1959) ................................................................................... 6

*Wilmington Star Mining v. Fulton*,
  205 U.S. 60 (1907) ......................................................................... 6, 7, 8, 9

*Witco Chem. v. Peachtree Doors*,
  787 F.2d 1545 (Fed. Cir. 1986) .............................................................. 7, 8

**Other Authorities**

Federal Rule of Civil Procedure 49(b)(4) ........................................................ 9

Federal Rule of Civil Procedure 59 ................................................................. 5

Local Rule 5.4 ................................................................................................. 24

1

## TABLE OF EXHIBITS

2

| Exhibit No. | Trial Exhibit No. | Description |
|---|---|---|
| Exhibit A | n/a | Excerpts from Combined Trial Transcripts, Days 1 - 6 |
| Exhibit B | DDX-2.18 | Defendants' Demonstrative |
| Exhibit C | DDX-2.44 | Defendants' Demonstrative |
| Exhibit D | JTX-1480 | Excerpts from Sony DSC-F1 Digital Camera Operating Instructions |
| Exhibit E | JTX-0163 | Excerpts from English Translation and Certificate of 1 AW1 Product Specifications |
| Exhibit F | JTX-0171 | Excerpts from 1V3 Reference Manual |
| Exhibit G | JTX-0056 | Excerpts from Nikon D810 User's Manual |
| Exhibit H | JTX-0147 | Excerpts from D810 Feature Highlights |
| Exhibit I | JTX-0003 | Certified U.S. Patent No. 7,209,167 |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 2:17-cv-03221-RGK (MRWx)

## I.  INTRODUCTION

A new trial should be granted in order to cure the material errors that lead to the jury's verdict.  These errors start with Nikon's failure to present legally-adequate grounds to support the jury's verdict.  As laid out in Plaintiffs' concurrently-filed motion for JMOL, most of Nikon's invalidity case is legally defective as Nikon failed to provide **any** evidence as to certain key elements of invalidity.  As to noninfringement, Nikon invited the jury to disregard the plain and ordinary meaning of the disputed claim terms and base infringement on an improperly narrow scope.   Given that the issues concerning infringement and invalidity are so intertwined, and given that these errors infected the jury's decision on these issues, a new trial is warranted.  In addition, a new trial is warranted for the '792 patent, if JMOL is granted only on written description, because the jury could only have relied on different and conflicting claim construction in order to find noninfringement and invalidity.  The jury's verdict also goes against the clear weight of the evidence for the issues decided on both patents, meriting a new trial.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 59 authorizes this Court to grant a new trial "on all or some of the issues" "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." Fed.R.Civ.P. 59(a)(1). The grounds for a new trial include: (1) a verdict contrary to the weight of the evidence, (2) a verdict based on false or perjurious evidence, or (3) to prevent a miscarriage of justice. *Molski v. M .J. Cable*, 481 F.3d 724, 729 (9th Cir. 2007). Grounds for new trial also exist if "the verdict is against the weight of the evidence, ... the damages are excessive, or ... for other reasons, the trial was not fair to the party moving." *Montgomery Ward v. Duncan*, 311 U.S. 243, 251 (1940); *Molski*, 481 F.3d at 729. "The district court also is not limited to the grounds a party asserts to justify a new trial, but may sua sponte raise its own concerns about the verdict." *Experience Hendrix v. Hendrixlicensing.com*, 762 F.3d 829, 842 (9th Cir. 2014).

## III.  ARGUMENT

### A.  The Jury's Verdict Was Tainted by Errors That Require a New Trial

### 1.   The Jury's Determinations Regarding the '792 Patent Necessitate a New Trial as to Both Validity and Infringement

As detailed in Plaintiffs' concurrently-filed JMOL motion, many of the theories Nikon presented at trial rested on legally erroneous principles—both as to the validity and infringement of the '792 patent.  Specifically, as to validity, a new trial is required because the jury was asked only a single question regarding each asserted claim of the '792 patent.  However, Nikon did not present just a single theory of invalidity, but rather three theories for each of asserted claims 14 and 28: (1) written description; (2) anticipation by Toyofuku; and (3) obviousness over Sony DSC-F1.

As explained in Plaintiffs' JMOL motion, Nikon plainly failed to meet its burden to show that claim 28 is invalid, by clear and convincing evidence or otherwise.  The same is true for two of the three invalidity theories that Nikon advanced for claim 14.  As to written description, Plaintiffs' JMOL brief demonstrates that Nikon failed to carry its burden.  JMOL Motion, at 2-6.  As to Nikon's prior art-based theories of invalidity, Nikon failed to present any evidence to show that the structure of the means-plus-function elements of claim 28 is disclosed in any of the alleged prior art.  JMOL Motion, at 6-7.  As to Nikon's obviousness theory, Nikon failed to present any evidence as to why a person of ordinary skill in the art would have found the invention obvious.  *See* JMOL Motion, at 7-9.

As to claim 14, it is impossible to determine from the general verdict why the jury found as it did.  The generality of a verdict "prevents [a reviewing court] from perceiving upon which" determination the jury found, and if "upon any one issue error was committed, either in the admission of evidence or in the charge of the court, the verdict cannot be upheld." *Wilmington Star Mining v. Fulton*, 205 U.S. 60, 78-79 (1907); *see also Sunkist Growers, Inc. v. Winckler & Smith Citrus Prods.*, 370 U.S. 19, 29-30 (1962); *United N.Y. & N.J. Sandy Hook Pilots v. Halecki*, 358 U.S. 613, 618-19 (1959); *Maryland v. Baldwin*, 112 U.S. 490, 493 (1884). The *Wilmington Star* case exemplifies how the Supreme Court has applied the rule. The jury was presented with alternate theories, and the Court found

1  that some should not have been presented to the jury because there was "no evidence

2  whatever in the record tending to support" them. *Wilmington Star*, 205 U.S. at 79. The

3  Court ordered a new trial on the remaining theories, because "it is impossible from the

4  record to say" whether the verdict was based solely on the unsupported theories. *Id.*

5      As to infringement of the '792 patent, Plaintiffs' JMOL motion also explains that

6  Nikon invited the jury to improperly compare the accused feature to the figures and

7  embodiments in the specification, rather than the claims, counter to the Court's clear

8  instructions.  The verdict is only explainable if the jury accepted Nikon's improper

9  invitation, and disregarded the Court's instructions, thus warranting JMOL of

10 infringement.  JMOL Motion, at 9-20.

11     Moreover, a new trial on infringement must be held if this Court orders a new trial

12 on invalidity (or vice versa).   As the Federal Circuit has explained, it may be

13 "inappropriate, in light of the evidence presented and arguments made at this trial, to

14 have one jury return a verdict on the validity [and other questions] while leaving the

15 infringement questions to a second jury." *Witco Chem. v. Peachtree Doors*, 787 F.2d 1545,

16 1549 (Fed. Cir. 1986). As the Supreme Court explained, "[w]here the practice permits a

17 partial new trial, it may not properly be resorted to unless it clearly appears that the issue

18 to be retried is so distinct and separable from the others that a trial of it alone may be

19 had without injustice." *Gasoline Products v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931).

20     Here, the issues raised relating to infringement of the '792 patent are intertwined

21 with the issues relating to validity, since the jury must apply the same claim scope for

22 both.  "A fundamental principle governing claim interpretations is that claims are to be

23 given the same scope with assessing validity as when infringement is the issue." *Channell*

24 *Commercial Corp. v. Pencell Plastics, Inc.*, 2015 WL 12731926, at *3 (C.D. Cal. Aug. 28, 2015).

25 Thus, the issues of validity and infringement must be tried together by the same jury so

26 that the jury will apply the same scope of the claims in order to determine infringement

27 and invalidity.  Allowing a retrial on one without the other would allow different juries to

28 base verdicts on different and even conflicting determinations as to the plain and ordinary

meaning of claim terms, and thus injustice may result from applying inconsistent meanings of the claims.  Thus, if a new trial is warranted as to either invalidity *or* infringement of the '792, a new trial is warranted for both.  *See Witco*, 787 F.2d at 1549.

> ### 2. Because the Jury's Verdict Regarding Infringement of the '167 Patent by Motion Snapshot Fails as a Matter of Law, a New Trial Is Warranted for Movie Live View.

The jury's verdict on infringement of the '167 patent by Motion Snap Shot cannot stand, and the record at trial warrants JMOL of infringement for all cameras that include this feature.  JMOL Motion, at 14-29.  The defects in the verdict regarding Motion Snapshot necessitate a new trial as to both features accused of infringement of the '167 patent: Motion Snapshot *and* Movie Live view.

As explained in Plaintiffs' JMOL motion, Nikon improperly sought to limit the plain and ordinary meaning of the term "viewfinder display."  JMOL Motion, at 14-17.  This was one of many errors that mandates the Court's granting JMOL as to Motion Snapshot, and Nikon's noninfringement theory regarding "viewfinder display" did not differentiate between the cameras with Motion Snapshot (the 1 Series mirrorless cameras) and those with Movie Live View (the DSLRs).  In both instances, Nikon argued to the jury that the LCD display on the back of these cameras is not a "viewfinder display."  Nikon's other flawed non-infringement theories were also not limited to Motion Snapshot.  For example, Nikon argued the following claim terms: (1) "generate the trigger signal in response to detection of a focus adjustment" / "capture of sensory data responsive to the trigger signal"; and (2) "select a subset of the sensory data" both in relation to Motion Snapshot and Movie Live View.

Each of Nikon's legally erroneous non-infringement arguments, which cut across Motion Snapshot and Movie Live View, infected both accused features, and for the same reasons discussed above, a new trial is thus warranted as to both features.  *See, e.g., Wilmington Star*, 205 U.S. at 78-79.  Specifically, because the same jury must apply the same claim scope to both Motion Snapshot and Movie Live View, a new trial should be granted

4

1   for infringement of the '167 patent by both accused features if this Court elects to either

2   grant JMOL or order a new trial as to either.  *See id.*

3   **B.  Plaintiffs Are Entitled to a New Trial as to the '792 Patent Because the Jury's Findings of Noninfringement and Invalidity Are Irreconcilably Inconsistent**

4

5   Plaintiffs are entitled to a new trial as to both invalidity and infringement of the

6   asserted claims of the '792 patent, <u>if</u> Court grants JMOL as to written description but not

7   anticipation and/or obviousness.  In this instance, the jury could not have found that the

8   asserted claims are both not infringed <u>and</u> that the claims are invalid on the record

9   presented at trial.  The jury was asked two questions about the asserted claims of the '792

10   patent: whether Nikon's accused products infringed the asserted claims, and whether the

11   asserted claims were invalid.  The jury returned a verdict in favor of Nikon on both issues.

12   However, these findings are irreconcilably inconsistent because Nikon presented two

13   different arguments for the scope of the disputed claim term: "textual dialog."

14   Federal Rule of Civil Procedure 49(b)(4) provides that where a jury returns answers

15   that "are inconsistent with each other and one or more is also inconsistent with the

16   general verdict, judgment must not be entered; instead, the court must direct the jury to

17   further consider its answers and verdict, or must order a new trial."  Fed. R. Civ. P.

18   49(b)(4).  Rule 49(b)(4) applies to a jury's answers to issues subsidiary to a jury's ultimate

19   conclusion as to liability, such as a jury's answers on invalidity.  *Duhn Oil Tool, Inc. v. Cooper*

20   *Cameron Corp.*, 818 F. Supp. 2d 1193, 1220–21 (E.D. Cal. 2011), *on reconsideration in part*,

21   2012 WL 13040409 (E.D. Cal. May 7, 2012).  Unlike many bases for ordering a new trial,

22   granting a motion for a new trial is not a matter of discretion—"Rule 49(b)(4) ***mandates***

23   either further jury consideration or a new trial."  *Falcon Stainless, Inc. v. Rino Companies, Inc.*,

24   2011 WL 13130896, at *2 (C.D. Cal. Aug. 2, 2011) (emphasis added).

25   Here, the inconsistency in the jury verdict arises from the jury's determination as

26   to the scope of the asserted claims.  As discussed above, "[a] fundamental principle

27   governing claim interpretations is that claims are to be given the same scope with

28   assessing validity as when infringement is the issue."  *Channell Commercial Corp.*, 2015 WL

12731926, at *3; *see also, e.g., Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1298 (Fed. Cir. 2008).  To determine the claims were invalid, the jury must have used a different scope of the claims that was inconsistent with the scope to find infringement.

The only noninfringement argument Nikon presented for the '792 patent was that Easy Panorama does not satisfy the claimed "textual dialog."  As detailed in Plaintiffs' JMOL Motion, Nikon based its noninfringement position on an unduly narrow reading of the claims—that the term "textual dialog" required on-screen buttons to which a user can respond.  (Tr. (Goodin) at 698:23-699:15.)  Given that the parties did not dispute relevant operation of the cameras, and that this was Nikon's only argument as to noninfringement, the jury necessarily must have accepted the testimony of Mr. Goodin as to the scope of the "textual dialog" limitation in order to find noninfringement.

Mr. Goodin, though, presented a much narrower scope of "textual dialog" in analyzing infringement than did Nikon's invalidity expert, Dr. Essa, in analyzing the prior art.  According to Dr. Essa, "any error message that pops up on a camera qualifies as a dialogue because it is telling you something about the state of the camera that you need to address." (Tr. (Essa) at 581:12–18.)  Mr. Goodin admitted that he disagreed with Dr. Essa as to the scope of the claimed textual dialog.  (Tr. (Goodin) at 721:18–722:20.)

That Dr. Essa presented a different claim construction of "textual dialog" from Mr. Goodin is no mere happenstance.  Dr. Essa **had** to take a broader view to reach his invalidity conclusion. Toyofuku, however, does not teach using onscreen buttons with a dialog box—rather, Dr. Essa pointed to the teaching within Toyofuku that "a display representing that recording media must be exchanged" shown on "the liquid-crystal display unit 17 with the warning (not shown)." (Toyofuku) at col. 12 ll. 14–17; *see also* DDX-2.18. Dr. Essa offered a similar opinion concerning the Sony DSC-F1.  *See* JTX-1480 (Sony DSC-F1 Manual) at 53–54; *see also* DDX-2.44.

The problem, though, is that under Dr. Essa's construction of "textual dialog," the Nikon accused products infringe the asserted claims.  In fact, Dr. Essa acknowledged that he applied the same scope to render his invalidity opinions that Plaintiffs' expert Dr.

1   Kelly did in determining that the accused Nikon products infringe.  (Tr. (Essa) at 580:3-
2   8.)  Thus, in order for the jury to find invalidity based on Dr. Essa's testimony, the jury
3   would have to accept Dr. Kelly's position on the scope of "textual dialog"—under which
4   Easy Panorama would infringe.

5          Thus, the jury must have used Mr. Goodin's interpretation of "textual dialog" to
6   find the claims infringed, but Dr. Essa's interpretation to find the claims anticipated
7   and/or obvious.  As a result, assuming JMOL is granted on written description but not
8   anticipation or obviousness, the jury's verdict is irreconcilably inconsistent, and a new
9   trial should be ordered.

10         **C.     A New Trial Is Warranted on All Issues for All Patents Because Nikon**
11              **Improperly Argued Claim Construction to the Jury for Both Patents**

12         Plaintiffs are additionally entitled to a new trial as to both infringement and validity
13  of the '792 patent and as to infringement of the '167 patent because the jury's verdict was
14  influenced by prejudicial and improper testimony regarding claim construction—an issue
15  of law for the court. It is a fundamental principle of patent law that determining the scope
16  of patent claims is an issue solely for the Court.  *E.g., Markman v. Westview Instruments, Inc.*,
17  517 U.S. 370, 391 (1996); *see also Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837
18  (2015).  Thus, the Court—not the parties—explains the construction of claim terms to
19  the jury.  (*See, e.g.,* Tr. (Court) at 558:21-559:3; *id.* at 791:14-18.)

20         As the Federal Circuit has repeatedly held, it is legally improper for a witness to
21  offer testimony to the jury regarding claim construction.  *See, e.g., CytoLogix Corp. v.*
22  *Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005); *NobelBiz, Inc. v. Glob. Connect,*
23  *L.L.C.*, 701 F. App'x 994, 997 (Fed. Cir. 2017).  This is true regardless of whether the
24  Court has construed the term to have its plain and ordinary meaning, or whether the
25  parties have agreed that such evidence may be presented to the jury.

26         Here, the parties were certainly not in agreement that the experts could argue claim
27  construction to the jury, and yet Nikon's expert Mr. Goodin explicitly testified to the jury
28  about claim construction (and in many instances, Nikon's noninfringement arguments

were based on improper limitations placed on claim language, as detailed in Plaintiffs' JMOL Motion). *See, e.g.*, (Tr. (Goodin) at 642:12-643:2.)  Mr. Goodin is not testifying about how the accused products work—he is baldly opining on claim construction for the jury.  Similarly, as to the claim term "viewfinder display," Mr. Goodin testified that "one of ordinary skill would appreciate that" the function of the viewfinder that a user puts his eye up  "is significantly different than" the function of the LCD viewfinder on the back of the camera.  (Tr. (Goodin) at 664:22-665:3.)

This testimony also is far from harmless.  As the Federal Circuit has noted, "[t]he risk of confusing the jury is high when experts opine on claim construction before the jury."  *CytoLogix*, 424 F.3d at 1172.   That risk resulted here in a verdict of noninfringement.  In fact, in its proposed jury instructions (Doc. No. 359 at 33), Nikon submitted a claim construction for the term "viewfinder display," but even though that construction was not adopted, Nikon argued its construction to the jury anyway.  In short, Nikon argued claim construction positions to the jury that were clearly harmful.

### D.    A New Trial Is Warranted Because the Jury's Determinations Are Against the Clear Weight of the Evidence

Plaintiffs are also entitled to a new trial because the jury's verdicts are against the clear weight of the evidence.  Courts apply a lower standard of proof to motions for a new trial than they do to motions for JMOL. A verdict may be supported by substantial evidence, and thus survive JMOL, yet still be against the clear weight of the evidence. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). Unlike motions for JMOL, "[t]he court may weigh the evidence, assess the credibility of witnesses, and need not view the evidence in the light most favorable to the prevailing party." *Computer Access Tech. Corp. v. Catalyst Enters., Inc.*, 273 F. Supp. 2d 1063, 1066 (N.D. Cal. 2003).  In ruling on a motion for new trial, the district court has the duty to set aside the jury's verdict when, "in the court's conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Molski*, 481 F.3d at 729.

### 1.   The Clear Weight of the Evidence Shows Nikon's Cameras Infringe the Asserted Claims of the '792 Patent

A new trial is warranted on the '792 patent because the clear weight of the evidence clearly demonstrates that Nikon's accused cameras infringe claims 14 and 28.  Plaintiffs' expert, Dr. Kelly, testified extensively about how Easy Panorama worked on the Nikon cameras. First, Dr. Kelly explained the evidence that he analyzed in determining infringement, and that he was able to conclude that Easy Panorama operated substantially the same in aspects relevant to the asserted claims.  (*See* Tr. (Kelly) at 249:13-24, 249:25-250:6, 249:13-24, 249:7-11; *see also, e.g.,* Tr. (Deposition) at 183:1-4; *id.* at 184:1-11; *id.* at 193:23-194:3; *id.* at 194:23-195:7.)

Second, Dr. Kelly provided a tutorial on Easy Panorama.  (Tr. (Kelly) at 244:8-12.)  Dr. Kelly then explained that if a user does not follow one of the panning direction arrows on the screen, the user "get[s] an error," one example of which would be an error message that says "Unable to create panorama.  Pan the camera in one direction only" (when a user tries to pan the camera in a direction that is not permitted).  (*See id.* at 244:17-23.)  Dr. Kelly also explained that the user receives error messaging in the form of blinking arrows—for example, if the user pans the camera too slowly, the arrows start blinking; "Speed up, the arrow becomes solid."  (*Id.* at 245:23-246:1.)  If the user persists in moving the camera at the wrong speed, a different error message pops up: "Unable to create panorama.  Pan the camera more slowly."  (*Id.*)  In addition to his testimony, Dr. Kelly presented videos of both of these error messages in practice.  (Tr. (Kelly) at 244:1246:9.)  In addition, Dr. Kelly explained that the error messages were responsive to user actions—for example, the user could stop the blinking arrows by moving the camera more quickly, or could cancel the display of the error message by pushing a button on the back of the camera.  (*See id.* at 245:25-246:5; *id.* at 255:17-21.)  All of this testimony stands unrebutted.

Dr. Kelly then walked through claims 14 and 28, and explained how each of the claim elements is met by Easy Panorama.  (*See* Tr. (Kelly) at 252:16-265:20.)  Dr. Kelly explained that he analyzed a file in the source code called "libpanorma.a."  (*Id.* at 249:13-

1  17; Tr. (Kelly) at 254:4-25.)  Notably, this is the same file that was identified by Nikon

2  engineers, whose deposition testimony was read into the transcript.  (*See, e.g.,* Tr.

3  (Deposition) at 185:24-186:19.)

4       Nikon disputed only two aspects of Dr. Kelly's analysis.  First, Nikon's Mr.

5  Goodin disagreed with Dr. Kelly's application of the plain and ordinary meaning of

6  "textual dialog."  As detailed in the JMOL Motion, Nikon argued to the jury for an unduly

7  narrow meaning of this term.  Even ignoring that Nikon's evidence on this term was

8  legally improper and unfounded, it was also not convincing.  Dr. Goodin did not even

9  analyze the correct claim language—he consistently talked about a "dialog box" even

10  though the claim refers to "textual dialog," not a "dialog box."  (*E.g.* Tr. (Goodin) at

11  499:2-8.(  Moreover, Dr. Goodin disagreed with Nikon's other expert, Dr. Essa, on this

12  term, where Dr. Essa had concurred with Dr. Kelly as to what this term means.  (Tr.

13  (Goodin) at 722:17-20.)

14       Second, Nikon disagreed with Dr. Kelly's conclusion that, in terms of what was

15  claimed, all of the products functioned in substantially the same way.  But none of

16  Nikon's testimony provided any basis for this disagreement, or reflected disagreement on

17  collateral issues and so was at best misdirection.  For example, although Nikon put Mr.

18  Vannatter on to testify on this subject, he admitted that he had not even looked at the

19  patents in this case, and thus was incapable of providing any informed opinion as to

20  whether, with regard to the details that matter for the asserted claims of those patents,

21  the accused functionality operated materially differently in any of the accused cameras.

22  (Tr. (Vannatter) at 466:2-467:1. ( In any event, Mr. Vannatter admitted that he was a

23  "marketing person, now a lawyer or engineer," thus any testimony he provided on

24  technical subject matter is entitled to little weight.  (*Id.*)  Nikon also elicited testimony

25  from Mr. Goodin on the subject, but the best Mr. Goodin could put forward was that he

26  noticed some difference in line numbers between code on different cameras, and he was

27  unable to identify any substantive differences between the code that implemented the

28  error messages in Easy Panorama between the cameras.  (Tr. (Goodin) at 716:14-718:2.)

Mr. Goodin also confirmed that he could have, but chose not to, speak to Nikon engineers who actually implemented Easy Panorama on the Nikon cameras. (*Id.*)

In short, the evidence supporting infringement was overwhelming, and Nikon's rebuttal case was based on a re-writing of the claim language. Thus, the jury's verdict of non-infringement was against the clear weight of the evidence and cannot stand.

### 2. The Clear Weight of the Evidence Shows Nikon's Products Infringe the Asserted Claims of the '167 Patent

#### a. Motion Snapshot

It is undisputed that Motion Snapshot works as follows. When the user presses the shutter-release button halfway, the camera focuses and starts buffering (capturing) sensory data—a video. The buffering will continue until the user presses the button all the way, at which point the camera will take a still image and record 1.6s of the video. (See, e.g., JTX-0163 at 9; (Tr. (Kelly) at 278:3-279:23, 269:19-7, 267:8-24.) Motion Snapshot will store the video clip and still. The camera will display the video and still together and delete them together. (Tr. (Kelly) at 280:13-281:17.)

Nikon did not contest infringement on several elements of claim 15. (Tr. (Kelly) at 270:9-15.) As to the disputed terms, first, the evidence establishes that the accused cameras have a "detection circuit coupled to the processing unit, the detection circuit configured to generate a trigger signal when the camera is manipulated prior to image-capture." Dr. Kelly testified that the cameras have image sensors, shutter-release buttons, other switches, dials and buttons coupled to a processor. (Tr. (Kelly) at 270:19-271:21, JTX-0171 at ii, 210, 220, 228.) This testimony was not disputed.

The evidence establishes that the accused cameras have a "detection circuit is configured to sense focus adjustments by the camera while the camera is powered-up and in a wait state, sense activation of a viewfinder display of the digital camera, and generate the trigger signal in response to detection of a focus adjustment." Nikon did not dispute that the camera is powered-up and in a wait state. As explained in more detail in Plaintiffs' concurrently-filed JMOL, the cameras have a viewfinder. Dr. Kelly testified that, when

the camera is turned on, the display is activated and the view through the lens is displayed. Also, if the screen goes dark and the user selects Motion Snapshot mode, the display becomes activated and the view through the lens is displayed. (Tr. (Kelly) at 272:11-273:5.) The cameras generate a trigger signal in response to the focus adjustment. (Tr. (Kelly) at 271:24-272:8, 273:6-275:16; (Kawai) at 178:11-17, 176:11-15; (Kubota) at 192:10-193:2.) As explained in more detail in Plaintiffs' JMOL, the evidence is undisputed that without autofocus being achieved, Motion Snapshot will not proceed. (Tr. (Kawai) at 178:11-17, 176:11-15; (Kubota) at 192:10-193:2.) Under the plain and ordinary meaning of "generate the trigger signal in response to detection of a focus adjustment," this element is met.

The evidence establishes that the accused cameras have "an image-capture circuit arrangement coupled to the processing unit and configured to capture still image data in response to user control actions." The cameras have shutter-release buttons, lenses, and image sensors, coupled to the processing unit and capture image data. The arrangement captures a still image in response to the user pressing the shutter-release button. (Tr. (Kelly) at 275:21-276:17, JTX-0171 at 88.)

The evidence establishes that the accused cameras have a "processing unit [that] is configured to initiate capture of sensory data responsive to the trigger signal, temporarily store the sensory data, select a subset of the sensory data, and retentively store the subset of the sensory data in association with the still image data." Nikon did not dispute that the cameras have a processing unit configured to initiate capture of sensory data. As stated above and in more detail in Plaintiffs' JMOL, the cameras generate a trigger signal, capture sensory data responsive to the trigger signal, and buffer the data to temporary storage. As also stated in the JMOL, the cameras select a 1.6s subset of the video and store it retentively. Dr. Kelly also testified that different cameras can store Motion Snapshots in 2 formats: NMS or MOV. In both formats, the camera presents a Motion Snapshot as a single entity when playing back and deleting. (Tr. (Kelly) at 280:13-281:17.)

12

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 2:17-cv-03221-RGK (MRWx)

1    In the MOV format, the video and still are stored in a single .MOV file.  (Tr. (Kelly) at
2    281:11-17.)

3         Claim 23 is also met because Motion Snapshot captures and records video data.

4         Nikon also failed to offer any evidence to contradict Dr. Kelly's testimony that
5    Motion Snapshot operates substantially the same in all accused Nikon 1 Series cameras.
6    (Tr. (Kelly) at 268:8-269:4; (Kawai) at 178:11-17, 176:11-15; (Kubota) at 192:10-193:2.)

7                        **b.    Movie Live View**

8         It is undisputed that Movie Live View works as follows.  When the user presses
9    the Live View button, the mirror flips up and the LCD display begins to display the view
10   through the lens.  (Tr. (Kelly) at 282:15-24, JTX-0056 at 49.)  The camera switches from
11   the phase detection autofocus to contrast detection.  (JTX-0147 at 47.)  The camera also
12   continuously autofocuses.  The LCD display shows sensory data captured by the camera.
13   Once the user presses the movie record button, the camera begins to record a movie.
14   (Tr. (Kelly) at 282:24, JTX-0056 at 52.)  When the user presses the shutter-release button,
15   the camera takes a still image.  (Tr. (Kelly) at 282:25-283:1, JTX-0056 at 60; *see also* Tr. at
16   284:23-285:16.)  The camera stores the movie and still in consecutively-numbered files,
17   movie first.  (Tr. (Kelly) at 292:14-5.)

18        Nikon did not contest infringement on the same elements of claim 15 as stated
19   above for Motion Snapshot.  (Tr. (Kelly) at 285:19-286:4.)

20        The evidence establishes that the accused cameras have a "detection circuit
21   coupled to the processing unit, the detection circuit configured to generate a trigger signal
22   when the camera is manipulated prior to image-capture." Dr. Kelly testified, and Nikon
23   did not dispute, that the cameras have image sensors, Lv buttons, shutter-release buttons,
24   other switches, dials and buttons, and processors.  (Tr. (Kelly) at 286:13-23, JTX-0056 at
25   35, 49, 97, 473.)

26        The evidence establishes that the accused cameras have a "detection circuit [is]
27   configured to sense focus adjustments by the camera while the camera is powered-up and
28   in a wait state, sense activation of a viewfinder display of the digital camera, and generate

the trigger signal in response to detection of a focus adjustment." Nikon did not dispute that the camera is powered-up and in a wait state. The viewfinder display limitation is met for the same reasons as explained for Motion Snapshot, i.e. the LCD display shows the view through the lens so the user can compose a shot. The viewfinder display is activated once the camera is put in the Live View mode. (Tr. (Kelly) at 287:1-8, JTX-0056 at 49.) Dr. Kelly testified, based on his analysis of the source code, how the trigger signal is generated. Once the user selects Live View, autofocus adjusts from phase detection to contrast detection. The camera also continuously autofocuses. Either constitutes a focus adjustment. Then the camera generates a trigger signal in response. (Tr. (Kelly) at 287:13-289:20, JTX-0147 at 47.)

Mr. Goodin's testimony that the trigger signal is generated and the sensory data is captured in response to the press of the Live View button (Tr. at 666:14-20) fails for the same reasons as detailed with respect to the elements "in response to/responsive to" for Motion Snapshot in Plaintiffs' JMOL.[1]   Unlike Dr. Kelly, Mr. Goodin did not analyze any source code on the issue and did not dispute Dr. Kelly's code analysis. (Tr. (Kelly) at 812:5-813:23.)

Mr. Goodin's testimony that changing the focus detection method from phase focus detection to contrast focus detection is not an adjustment of focus fails as conclusory. (Tr. (Goodin) at 669:24-670:16.) Mr. Goodin admits that the method is changed. As Dr. Kelly explained, the patent does not require any particular type of focus adjustment. (Tr. (Kelly) at 810:23-811:10.)

---

[1] Without disputing the operation of Movie Live View, Mr. Goodin also claimed that "the '167 patent is all about using a single button" but operation of Movie Live View involves more buttons. (Tr. (Goodin) at 651:16-19, citing JTX-0003 at 1:10-20 and 1:41-45.) Mr. Goodin ignores that the claim does not require using a single button. Further, nowhere in the portions of the '167 patent Mr. Goodin cited does the patent require using a single button.

14

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 2:17-cv-03221-RGK (MRWx)

1    Nikon did not dispute that the accused cameras have "an image-capture circuit
2 arrangement coupled to the processing unit and configured to capture still image data in
3 response to user control actions." (Tr. (Kelly) at 289:25-290:12, JTX-0056 at 60.)

4    The evidence establishes that the accused cameras also have a "processing unit [is]
5 configured to initiate capture of sensory data responsive to the trigger signal, temporarily
6 store the sensory data, select a subset of the sensory data, and retentively store the subset
7 of the sensory data in association with the still image data."  As explained above, the
8 cameras generate a trigger signal. (Tr. (Kelly) at 290:17-5.)  The cameras capture sensory
9 data responsive to the signal. (Tr. (Kelly) at 290:17-5.)  The cameras initialize buffers and
10 temporarily store sensory data in buffers. (Tr. (Kelly) at 291:6-21, 814:17-23.)  Once the
11 user presses the movie record button, the cameras record a subset of the sensory data
12 and store it retentively. (Tr. (Kelly) at 291:22-292:8.)  Mr. Goodin admitted the existence
13 of the buffer and did not dispute it temporarily stores the sensory data.  However, Mr.
14 Goodin then improperly applied Nikon's construction for "select a subset of sensory
15 data"—" choose some or all of the sensory data that is currently stored in temporary
16 storage"—and asserted that the limitation is met because the buffer holds only a small
17 amount of sensory data that is "flushed out." (Tr. (Goodin) at 671:12-672:24.) It was
18 improper for Nikon to argue a claim construction instead of a plain and ordinary meaning
19 for the same reasons as detailed in Plaintiffs' JMOL regarding Nikon's construction of
20 "viewfinder display."

21    When the user presses the shutter release button, the cameras take a still and store
22 it in association with the movie. (Tr. (Kelly) at 292:8-10, JTX-0056 at 59.)  The movie is
23 always stored first, the movie and still files are consecutively numbered, and the time
24 stamps for the end of the video and the still are mere seconds apart. (Tr. (Kelly) at
25 292:14-5.)

26    Claim 23 is also met because Movie Live View captures and records video data.
27 (Tr. (Kelly) at 293:9-15.)

28

Nikon also failed to offer any evidence to contradict Dr. Kelly's testimony that Movie Live View operates substantially the same in all accused Nikon DSLR cameras. (Tr. (Kelly) at 283:18-284:22; Tr. (Orii) at 212:16-213:17, 214:9-12, 214:18-23, 215:17-20.)

**E.     The Clear Weight of the Evidence Shows the Asserted Claims of the '792 Patent Are Not Invalid**

A new trial is necessary for invalidity of the asserted claims of the '792 patent because the evidence clearly demonstrates that the asserted claims are not invalid. Even if the Court concludes that the arguments presented by Plaintiffs do not warrant JMOL, the clear weight of the evidence is against the invalidly verdict, and a new trial on that patent warranted.

As to written description, even putting aside the deficiencies raised in Plaintiffs' concurrently filed JMOL brief, *see* Mot. for JMOL, at 2-6, Nikon failed to provide anything convincing at all on this issue. All of the testimony it elicited spanned only three pages of the transcript, and the only real evidence put forward was that the applicant amended the specification during prosecution. This does not come close to proving, by clear and convincing evidence, that the claims lacked sufficient written description, particularly when considered along with the contrary expert testimony of Dr. Kelly, who explained that even Nikon's infringement expert admitted that the specification of the '792 patent taught a digital camera. *See* Tr. (Kelly) at 798:1-10.

As to anticipation by Toyofuko, as explained in Plaintiffs' motion for JMOL, the analysis performed by Nikon's invalidity expert Dr. Essa with respect to claim 28 was fatally flawed because Dr. Essa failed to analyze either the structure or the function of means-plus-function elements. *See* Mot. for JMOL, at 6-7. Putting this to the side, the testimony and evidence put forward by Nikon was lacking. Specifically, Nikon asserted that running out of memory on a camera was a "user execution of an erroneous operation performed by the user of the digital camera." But filling up the memory on a camera is not "erroneous operation." If the user uses the camera correctly, photos will be stored in memory and the memory card will fill up. *See* Tr. (Kelly) at 793:9-17. Switching out

16

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 2:17-cv-03221-RGK (MRWx)

1   memory cards (i.e. switching recording medium) is not a fix for that circumstance. *See id.*
2   In any event, there is no "user" error—at most, it is a simply a message informing a user
3   "that the number of recordable remaining frames is zero. The camera memory card is
4   full." *Id.* at 793:3-8.  Lastly, Toyofuku provides no details concerning how that message
5   is conveyed—"[t]he most that's described in Toyofuku is actually removing information
6   from the display." *Id.* at 793:18-794:9.  Dr. Essa's testimony does not sufficiently address
7   any of these deficiencies.

8       As to the Sony DSC-F1, Nikon's theory should be rejected outright, because
9   Nikon failed to present evidence as to motivation to combine or a reasonable expectation
10  of success, as detailed in Plaintiffs JMOL motion. *See* JMOL Motion at 7-9.  Setting aside
11  this failure of proof, Nikon's evidence is unconvincing under any standard of proof.  As
12  with Toyofuku, the purported error messages have nothing to do with monitoring and
13  identifying "user" error—"the messages that you do see on the camera are simply not
14  enough memory or protected images remain. There's nothing here that explains what you
15  should do about that even if that was an error. It's not a user error." Tr. (Kelly) at 796:4-
16  14.  Here too, as with claim 28, Nikon failed to present any evidence concerning the
17  function or structure of the means plus function elements, and thus its obviousness
18  theory both fails as a matter of law and when weighing the clear weight of the evidence.

19      Accordingly, a new trial on invalidity of the asserted claims of the '792 patent
20  should be granted, to the extent that JMOL is not granted on these issues.

21  **IV.   CONCLUSION**

22      Accordingly, Plaintiffs' motion should be granted in its entirety.

Dated:  July 24, 2018                FISH & RICHARDSON P.C.

By:   */s/ Christopher S. Marchese*
_____

Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Tel:  (213) 533-4240, Fax: (858) 678-5099

Frank Scherkenbach (SBN 142549)
scherkenbach@fr.com
Kurt L. Glitzenstein (Admitted Pro Hac Vice)
glitzenstein@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210-1878
Tel:  (617) 542-5070, Fax: (617) 542-8906

Olga I. May (SBN 232012)
omay@fr.com
Markus D. Weyde (SBN 285956) weyde@fr.com
K. Nicole Williams (SBN 291900)
nwilliams@fr.com
Jared A. Smith (SBN 306576)
jasmith@fr.com
Oliver J. Richards (SBN 310972)
orichards@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Tel:  (858) 678-5070, Fax:   (858) 678-5099

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 2:17-cv-03221-RGK (MRWx)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Andrew R. Kopsidas (Admitted Pro Hac Vice)
kopsidas@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W., Ste. 1000
Washington, DC 20024
Tel:  (202) 783-5070, Fax: (202) 783-2331

Attorneys for Plaintiffs, CARL ZEISS AG and
ASML NETHERLANDS B.V.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 2:17-cv-03221-RGK (MRWx)

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on July 24, 2018, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

*/s/ Christopher S. Marchese*

Christopher S. Marchese
marchese@fr.com

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 2:17-cv-03221-RGK (MRWx)