UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03221-RGK-MRW | Date | September 04, 2018 |
|---|---|---|---|
| Title | *Carl Zeiss A.G. v. Nikon Corp.* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**  **(IN CHAMBERS) Order Re: Defendants' Renewed Motion for Judgment as Matter of Law (DE 519); Plaintiffs' Motion for Judgment as a Matter of Law (DE 520); Plaintiffs' Motion for a New Trial (DE 521)**

## I.      INTRODUCTION

In this patent infringement case, plaintiffs Carl Zeiss, A.G. and ASML Netherlands, B.V. (collectively, "Plaintiffs") alleged that defendants Nikon Corporation and Nikon, Inc. (collectively, "Defendants") infringed upon two patents: (1) Patent No. 6,972,792 (the "'792 Patent"); and (2) Patent No. 7,209,167 (the "'167 Patent").[1]

The case went to trial on July 11, 2018. At trial, Plaintiffs asserted claims 14 and 28 of the '792 Patent, and claims 15 and 23 of the '167 Patent. During trial, both Plaintiffs and Defendants moved for judgment as matter of law. (*See* ECF Nos. 497, 505). The Court reserved consideration of both motions. After a six-day trial, the jury returned a verdict in favor of Defendants and awarded Plaintiffs no damages. As to invalidity, the jury found that the claims of the '792 Patent were invalid, but that the claims of the '167 Patent were not proven invalid. As to infringement, the jury found that Defendants did not infringe the claims of either the '792 Patent or the '167 Patent.

Plaintiffs and Defendants now each move for judgment as a matter of law (JMOL) (DE 519, 520). Plaintiffs also now move for a new trial (DE 521). For the following reasons, the Court **DENIES** Plaintiffs' and Defendants' Motions (DE 519, 520, 521).

---

[1] Plaintiffs also initially alleged infringement of two other patents, but those patents were severed from the present action. (*See* ECF No. 438.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03221-RGK-MRW | Date | September 04, 2018 |
|---|---|---|---|
| Title | *Carl Zeiss A.G. v. Nikon Corp.* | | |

## II.   JUDGMENT AS A MATTER OF LAW

### A.   Judicial Standard

Under Federal Rule of Civil Procedure ("Rule") 50, a post-verdict judgment as a matter of law ("JMOL") is proper if the evidence presented at trial "permits only one reasonable conclusion, and that conclusion is contrary to" the jury's verdict. *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 604 (9th Cir. 2016). In other words, JMOL is not proper if "evidence [is] adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Guy v. City of San Diego*, 608 F.3d 582, 585 (9th Cir. 2010). The moving party must show there is no legally sufficient evidentiary basis for a reasonable jury to have found as it did on a given issue. *Winato v. Toshiba Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 135 (2000). The court must not weigh the evidence or assess the credibility of witnesses. *Id.*

### B.   Plaintiffs' Motion for Judgment as a Matter of Law

In its verdict, the jury made findings as to both invalidity and infringement. Plaintiffs now move for JMOL as to invalidity of the '792 Patent and as to infringement of both the '792 Patent and the '167 Patent. The Court addresses invalidity and infringement in turn.

#### 1.   *Invalidity: Claims 14 and 28 of the '792 Patent*

The Court first addresses invalidity of the '792 Patent. After trial, the jury found in a general verdict that claims 14 and 28 of the '792 Patent were invalid. Plaintiffs argue that the jury lacked a sufficient basis for this conclusion.

A patent is presumed valid. *NetAirus Techs., LLC v. Apple, Inc.*, No. LA CV-10-03257-JAK(Ex), 2014 WL 12558860, at *3 (C.D. Cal. Mar. 7, 2014). If a defendant seeks to prove that a patent or any claim thereof is invalid, the defendant must establish invalidity by clear and convincing evidence. *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 95 (2011). If a jury renders a general verdict of invalidity, the jury's verdict should be upheld as long as "there was sufficient evidence to support any of the alternative theories of invalidity." *Cordance Corp. v. Amazon.com, Inc.*, 658 F.3d 1330, 1339 (Fed. Cir. 2011). Thus, even if there is a "failure of proof" with respect to any one theory of invalidity, JMOL is not proper if the "evidence, taken as a whole, was sufficient to support the jury's verdict." *Id.*

At trial, Defendants presented three alternative theories of invalidity as to claims 14 and 28: lack of written description, anticipation, and obviousness. Plaintiffs argue that Defendants failed to prove all three theories. The Court concludes, however, that the jury had a sufficient evidentiary basis to conclude that claims 14 and 28 were invalid for obviousness.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03221-RGK-MRW | | Date | September 04, 2018 |
|---|---|---|---|---|
| Title | ***Carl Zeiss A.G. v. Nikon Corp.*** | | | |

To succeed on an obviousness defense, a party must prove by clear and convincing evidence "that a person of ordinary skill in the art of the invention, who knew all about the prior art existing at the time the invention was made, would have come up with the invention at that time." (Jury Instruction No. 13, ECF No. 511.) Determining whether a patent claim is invalid for obviousness "requires consideration of the scope and content of the prior art, differences between the prior art and the patent claim, the level of ordinary skill in the art, and any relevant secondary considerations." *Soft Gel Techs., Inc. v. Jarrow Formulas, Inc.*, 864 F.3d 1334, 1340 (Fed. Cir. 2017).

Defendants provided evidence at trial on the scope and content of the prior art. Defendants' expert, Dr. Essa, explained that claims 14 and 28 were rendered obvious by a combination of a camera that was in existence at the time of the invention, the Sony DSC-F1, and that camera's manual. (*See* Irie Decl. Ex. L, Ex. M (Tr.) (Essa) 519:14–524:6, ECF No. 540.) Essa explained that the DSC-F1 flashed an error message on its LCD screen that said "NOT ENOUGH MEMORY" if the user tried to select "continuous mode" when there was not enough memory remaining. (Ex. M (Tr.) 521:8–522:6, ECF No. 540-13.) The user could then consult page 53 of the DSC-F1's manual to discover that deleting pictures would remedy the error. (Ex. L. at 53.) Essa then testified that it would have been obvious to a person of ordinary skill in the art to add two words—"delete pictures"—to the LCD screen after "NOT ENOUGH MEMORY" to provide information to the user on how to fix the error. (Tr. 851:2–11.)

Adding these two words, Essa opined, would essentially result in the same invention protected by claims 14 and 28. Claims 14 and 28 of the '792 Patent recite a "method" and a "digital camera," respectively, that perform the function of "displaying a textual dialog containing operational error information and method of correct operation information that is correlated with [the] erroneous operation." (Marchese Decl. Ex. D. cls. 14, 28, ECF No. 520-6.) Essa explained that combining the "operational error information" on the Sony DSC-F1 camera with the "method of correct operation information" in the manual would produce the invention of claims 14 and 28. This combination, he explained, would be obvious to a person of ordinary skill. Indeed, Essa testified that such a combination would be "trivial to somebody who knows the field," and that he would be "disappointed" if his students "could not come up with something like this." (Tr. 852:2–5.) Further, Dr. Essa testified as to secondary indicia of nonobviousness and concluded that no considerations favored a finding that the patent was not obvious. (Tr. 524:7–526:4.). Therefore, the jury was able to assess evidence regarding "the scope and content of the prior art," any differences between claims 14 and 28 and the prior art, and the "relevant secondary considerations." *See Soft Gel Techs.*, 864 F.3d at 1340. Based upon this evidence, a reasonable jury could have concluded that claims 14 and 28 of the '792 Patent were obvious. *See Guy*, 608 F.3d at 585.

Disagreeing, Plaintiffs argue that Defendants failed to adduce evidence showing that a person of ordinary skill would have been motivated to combine the DSC-F1 and its manual in this manner. Indeed, "a party seeking to invalidate a patent on obviousness grounds must demonstrate by clear and

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:17-cv-03221-RGK-MRW | Date | September 04, 2018 |
|----------|----------------------|------|--------------------|
| Title | ***Carl Zeiss A.G. v. Nikon Corp.*** | | |

convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention." *Ivera Med. Corp. v. Hospira, Inc.*, 801 F.3d 1336, 1344 (Fed. Cir. 2015). But determining whether a person of ordinary skill would have been so motivated is a "flexible" and "expansive" inquiry. *Id.*; *InTouch Techs., Inc. v. VGO Comm's, Inc.*, 751 F.3d 1327, 1347 (Fed. Cir. 2014). And "motivation to combine may be found explicitly or implicitly" in factors like "market forces," "design incentives," "the interrelated teachings of multiple patents," and "the background knowledge, creativity, and common sense of the person of ordinary skill." *Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1353–54 (Fed. Cir. 2013). Dr. Essa testified that a person of ordinary skill would have been motivated to combine the DSC-F1's error functionality with its manual's error correction information in order to improve ease of use, especially since "most people don't read manuals," which a designer "would take into consideration." (Tr. 851:5–9, 522:24–523:6.) Defendants therefore did in fact adduce evidence of motivation here.

Still, Plaintiffs contend that this motivation evidence is not enough. They hone in on Essa's statement that combining the camera and the manual would be easy "*if* the person would be motivated to provide this functionality of ease of use." (Tr. 521:19–21 (emphasis added).) The legal standard, Plaintiffs explain, is not whether it would be easy to combine the prior art *if* the artisan was motivated to, but rather whether the artisan *would have been* so motivated. Plaintiffs identify the correct legal standard. *See Ivera Med. Corp.*, 801 F.3d at 1344. But in the light most favorable to Defendants, Essa implied that a skilled person would as a matter of common sense be motivated to improve ease of use, if doing so would fit with the "design decisions" of the developer regarding how much text to put on the display. (Tr. 521:12–15.) "[T]he Supreme Court [has] observed that common sense can be a source of reasons to combine or modify prior art references to achieve the patented invention." *Plantronics*, 724 F.3d at 1354. Thus, a reasonable jury could have found Essa's testimony about motivation, combined with the evidence of obviousness as a whole, to be clear and convincing evidence that claims 14 and 28 were obvious.[2]

The jury therefore had sufficient evidence to conclude that claims 14 and 28 of the '792 patent were obvious and thus invalid. For this reason, JMOL as to invalidity of claims 14 and 28 is not proper.[3]

---

[2] Plaintiffs argue for the first time in the Reply that Defendants failed to prove that the Sony DSC-F1 camera was prior art. (Pls.' Reply 6:1–2, ECF No. 542.) The Court is not obligated to consider new arguments raised in a Reply. *See United States v. Gianelli*, 543 F.3d 1178, 1184 n.6 (9th Cir. 2008) ("[A]rguments raised for the first time in a reply brief are generally considered waived."). Accordingly, the Court declines to consider Plaintiffs' argument.

[3] Because the jury's invalidity conclusion was supported by sufficient evidence as to this theory, the Court declines to address Defendants' other theories of invalidity. *See Cordance Corp.*, 658 F.3d at 1339 ("A general jury verdict of invalidity should be upheld if there was sufficient evidence to support any of the alternative theories of invalidity.").

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:17-cv-03221-RGK-MRW | | Date | September 04, 2018 |
|---|---|---|---|---|
| Title | ***Carl Zeiss A.G. v. Nikon Corp.*** | | | |

2.      *Infringement: Claims 14 and 28 of the '792 Patent*

Turning to infringement, the jury also found in its general verdict that Defendants did not infringe claims 14 and 28 of the '792 Patent. Plaintiffs argue that this conclusion was not supported by the evidence, and that it was based on an improper claim construction. The Court first addresses the evidence, and then turns to Plaintiffs' argument regarding improper claim construction.

a.      *Evidence of Infringement*

"Literal infringement requires the patentee to prove that the accused device contains each limitation of the asserted claim(s)." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). At trial, Defendants argued that one limitation, present in both claim 14 and claim 28, is not present in Nikon's cameras with the "Easy Panorama" feature. The disputed claim limitation recites "a textual dialog containing operational error information and a method of correct operation." The Court instructed the jury that this claim limitation should be construed according to its plain and ordinary meaning as understood by a person of ordinary skill in the art. (*See* Jury Instruction No. 4, ECF No. 511.)

Both parties' experts appear to agree that under the claim limitation's plain meaning, the "text" in "textual dialog" requires text, and the "dialog" requires user interactivity—that is, the user must be able to respond to or somehow interact with the error message. (*See* Irie Decl. Ex. M (Tr.) (Goodin) 642:18–643:2; Marchese Decl. Ex. B (Tr.) (Kelly) 255:14–21, ECF No. 520-4; Pls.' Mot. JMOL 12:5–14, ECF No. 520-1.)

The parties disagree, however, on whether the limitation was present in the accused cameras. Arguing that the limitation was not present, Defendants' expert, Mr. Goodin, testified that the Nikon camera error messages do not involve any user interactivity because there is no "back and forth" between the error message and the user. (Ex. M (Tr.) (Goodin) 643:18–22, 644:13–15). Goodin explained that the accused cameras display an error message that simply pops-up on the screen, waits a set period of time for a timer to expire, and then disappears, without any user interactivity at all. (Tr. 643:3–7.). By contrast, Plaintiffs argue that the limitation is met because the accused cameras have "random buttons" that, when pressed while an error message is on the display, result in actions that will take the error message off the screen. (Tr. 644:8–12.) Plaintiffs also cite to Dr. Kelly's testimony that the user interacts with the error message because the user can take an action, like moving the camera more quickly, in response to an error message like a flashing arrow. (Ex. B (Tr.) (Kelly) 255:14–21.)

But the Court cannot on this JMOL motion weigh the evidence or assess the credibility of competing experts; such an analysis is properly within the province of the jury, not the Court. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 135 (2000). The jury could reasonably have weighed the evidence and found that the user does not interact with the "text" when the user responds to the

---

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:17-cv-03221-RGK-MRW | Date | September 04, 2018 |
|---|---|---|---|
| Title | *Carl Zeiss A.G. v. Nikon Corp.* | | |

flashing arrow or presses random buttons on the camera. What's more, the jury could also reasonably have credited Goodin's testimony and rejected Kelly's. The jury's conclusion was therefore adequately supported by the evidence, even if the jury could also have reached a contrary conclusion.

> b.   *Plaintiffs' Argument Regarding Improper Claim Construction*

Plaintiffs also argue that Goodin improperly testified on the basis of a claim construction that was too narrow. Specifically, Plaintiffs argue that Goodin improperly narrowed the scope of the claims by testifying that a "textual dialog" requires a dedicated physical button just because Figure 4 of the '792 Patent shows a dedicated button.

Indeed, Goodin did make some statements that might arguably imply that a physical button is required. For instance, in explaining that a "dialog" requires user interactivity, he stated that "[t]he other thing that's required are some buttons as part of the dialogue that allow[] the user to interact with the dialogue," and pointed to Figure 4 of the '792 Patent as an example (Ex. M. (Tr.) (Goodin) 642:22–25). Goodin also analyzed Figure 4 in detail, pointed to its two buttons, and testified that unlike the error message in the '792 Patent, the error message in the accused cameras does not include either of those buttons. (Ex. B (Tr.) (Goodin) 697:1–17.)

But the Court must construe the evidence in the light most favorable to Defendants in this JMOL Motion. And Goodin's testimony as a whole makes clear that, while he was pointing to Figure 4's buttons as an example of user interactivity, the key element missing from the accused cameras was not the buttons per se, but rather any kind of user interaction. (*See* Tr. 642:25–643:2 ("So it's critical that the user interact with the dialogue, or then it would just become a textual monologue."); Tr. 643:18–22 ("Q: And is there any user interaction ability with the error message shown on the right? A: No."); Tr. 644:13–15 ("Q: Is there any back and forth between the error messages and the user? A: No, there isn't.")). Further, the Court's instruction made clear that the claims, and not the figures in the specification, govern the scope of the invention. (*See* Jury Instruction No. 3, ECF No. 511.)

The jury could therefore reasonably have concluded on the basis of the evidence provided by Mr. Goodin that Defendants did not infringe claims 14 and 28 of the '792 Patent. For this reason, the Court denies Plaintiffs' Motion for JMOL as to infringement of the '792 Patent.

> 3.   *Infringement: Claims 15 and 23 of the '167 Patent*

Finally, the jury also found in a general verdict that Defendants did not infringe claims 15 and 23 of the '167 Patent.

At trial, Defendants had argued that claims 15 and 23 were not infringed because three claim limitations were not present in the accused cameras: (1) "viewfinder display"; (2) "generate the trigger

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:17-cv-03221-RGK-MRW | Date | September 04, 2018 |
| Title | ***Carl Zeiss A.G. v. Nikon Corp.*** | | |

signal in response to detection of a focus adjustment" / "initiate capture of sensory data responsive to the trigger signal"; and (3) "select a subset of the sensory data." But the evidence shows, Plaintiffs argue, that these three limitations are in fact present in all of the accused cameras with the Motion Snapshot feature. Plaintiffs accordingly request JMOL as to infringement.

The Court, however, finds that a reasonable jury could have concluded that the accused cameras did not contain the "in response to detection of a focus adjustment" and "initiate capture of sensory data" limitations present in claims 15 and 23.

Both claims 15 and 23 recite in pertinent part a detection circuit configured to "generate the trigger signal in response to detection of a focus adjustment" and a processing unit configured to "initiate capture of sensory data responsive to the trigger signal."[4] (Marchese Decl. Ex. G, ECF No. 520-9.) At trial, Defendants argued that these claim limitations are not present in the accused Motion Snapshot cameras because the half-press of the shutter button, *not* detecting the focus adjustment, is what triggers Motion Snapshot and the capture of sensory data. Thus, Defendants argued, Motion Snapshot "responds" to the shutter button, not to the "trigger signal" generated in response to an autofocus. In support, Nikon's engineer, Mr. Kawai, testified that "if the user presses the shutter button halfway down, the camera performs a system check, and if the system check is ok, it then starts to buffer image data." (Ex. M (Tr.) (Kawai) 619:9–13.) Thus, Kawai explained, what "causes Motion Snapshot to commence" is the halfway depression of the button. (619:17–19). And another of Defendants' experts, Mr. Goodin, explained that while autofocus of the camera is one of the "system checks" that happen along the way to getting to the point of capturing sensory data, the capture of sensory data is responding to the button press, *not* to the autofocus. (Ex. M (Tr.) (Goodin) 680:2–681:4).

Disagreeing, Plaintiffs respond with several arguments. First, Plaintiffs argue that Defendants advanced an improper claim construction. Defendants, Plaintiffs argue, inappropriately narrowed the scope of the "responsive to" or "in response to" claim limitations by arguing that they mean "caused by" or "triggered by" rather than the plain and ordinary meaning of "responding to" or "reacting to." Motion Snapshot, Plaintiffs contend, plainly "responds to" detection of a focus adjustment under the plain and ordinary meaning of the term. Second, Plaintiffs argue that even under Defendants' improper construction, the autofocus trigger signal "causes" sensory data capture because Motion Snapshot cannot occur unless autofocus is achieved. In support, Plaintiffs cite trial testimony from their own experts and from Defendants' that the accused cameras do not begin capturing sensory data unless the autofocus is, in fact, focused and locked. (*See, e.g.*, Ex. B (Tr.) (Kelly) 273:6–20.)

---

[4] The Court instructed the jury that these claim limitations should be construed according to their plain and ordinary meaning as understood by a person of ordinary skill in the art. (*See* Jury Instruction No. 4, ECF No. 511.) In their final proposed claim constructions, neither Plaintiffs nor Defendants offered alternative constructions for these limitations. (*See* ECF No. 486-1 at 15 (Plaintiffs'), ECF No. 487-1 at 10 (Defendants')).

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:17-cv-03221-RGK-MRW | Date | September 04, 2018 |
|---|---|---|---|
| Title | *Carl Zeiss A.G. v. Nikon Corp.* | | |

But Plaintiffs invite the Court to engage in belated claim construction as well as to weigh competing evidence and assess the credibility of different experts. Doing so is improper on a JMOL motion. *See Reeves*, 530 U.S. at 150; *Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683, 694 (Fed. Cir. 2008) (concluding that a party "cannot be allowed to create new claim construction disputes following the close of the jury trial"). Under the plain and ordinary meaning of the claim limitations, a reasonable jury could have concluded based upon Defendants' expert testimony that Motion Snapshot (and the capture of sensory data) is "responsive to" the half-press of the button, not to a trigger signal generated in response to detection of a focus adjustment. Accordingly, the jury had sufficient evidentiary basis to conclude that Defendants did not infringe claims 15 and 23 of the '167 Patent.

In sum, a reasonable jury could have found that the '792 Patent claims were invalid and that the claims of both patents were not infringed. The Court therefore **denies** Plaintiffs' JMOL Motion.[5]

### C.     Defendants' Renewed Motion for Judgment as a Matter of Law

The Court now turns to Defendants' Renewed Motion for Judgment as a Matter of Law.

After trial, the jury found in a general verdict that Defendants had not shown by clear and convincing evidence that claims 15 and 23 of the '167 Patent were invalid. Defendants argue that because the evidence clearly showed that claims 15 and 23 were invalid for anticipation and for obviousness, the jury's conclusion was unreasonable.[6] But the Court disagrees.

First, the jury had a sufficient evidentiary basis to conclude that claims 15 and 23 were not invalid for anticipation by prior art. "A patent is invalid for anticipation if a single prior art reference discloses each and every limitation of the claimed invention." *Schering Corp. v. Geneva Pharm.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003). At trial, Plaintiffs asserted that the Miyata[7] prior art reference does not anticipate claims 15 and 23 because it does not disclose the "sensory data" limitation in the claims. Plaintiffs' expert, Dr. Kelly, testified that Miyata discloses only capturing a series of still images at a rapid clip; it does not disclose capturing "sensory data." (*See* Marchese Decl. Ex. B (Tr.) (Kelly) 799:13–802:6, ECF No. 537-3.) Sensory data, Kelly explained, is distinct from still image data, because the '167 Patent itself distinguishes between sensory and still image data in the specification and the claim language. (Tr. 802:4–6, 803:1–3.) And even though the "sensory data" in the '167 Patent can be video data, Kelly clarified, the still image data disclosed in Miyata does not constitute video data. (Tr. 801:25–802:1) Defendants' expert, Dr. Essa, offered a contrary conclusion. He testified that the

---

[5] Because the jury could reasonably have concluded that these claim limitations were not present in the accused cameras, the jury could reasonably have found that there was no infringement. The Court therefore does not address the other claim limitations that Plaintiffs raise.

[6] Defendants in fact argue that "Plaintiffs" failed to show the claims were "not invalid." As Plaintiffs correctly point out, it is Defendants' burden to show invalidity, not Plaintiffs.

[7] Japanese Patent Application Publication No. 2000-83210 (Marchese Decl. Ex. D, ECF No. 537-5.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03221-RGK-MRW | | Date | September 04, 2018 |
|---|---|---|---|---|
| Title | *Carl Zeiss A.G. v. Nikon Corp.* | | | |

sequence of still images disclosed in Miyata is nothing more than a video. (Ex. B (Tr.) (Essa) 853:20–25.) But a reasonable jury could have credited Kelly's testimony and rejected Essa's. The jury therefore could reasonably have concluded that Defendants failed to show clear and convincing evidence of anticipation.

In a similar vein, the jury also had a reasonable basis to conclude that claims 15 and 23 were not invalid for obviousness based on a combination of the Miyata and Niikawa prior art references. A defendant can succeed on an obviousness defense only "if all the elements of an invention are found in a combination of prior art references." *PAR Pharm., Inc. v. TWI Pharm., Inc.*, 773 F.3d 1186, 1194 (Fed. Cir. 2014) (citing *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1164 (Fed. Cir. 2006)). The defendant must prove that "all claimed limitations are disclosed in the prior art." *Id.* As explained above, the jury could reasonably have concluded from the evidence that the "sensory data" limitation was not disclosed in the Miyata prior art reference. Accordingly, the jury could also reasonably have concluded that "all the elements" of the invention protected by the '167 Patent were not present in the prior art. Therefore, the jury had a reasonable basis to find that Defendants failed to prove obviousness by clear and convincing evidence.[8]

In sum, viewing the evidence in the light most favorable to Plaintiffs, the jury had sufficient evidentiary support for its conclusion that Defendants failed to prove that claims 15 and 23 of the '167 Patent were invalid. The Court therefore **denies** Defendants' JMOL Motion.

### III.   MOTION FOR NEW TRIAL

#### A.   Judicial Standard

Under Rule 59, a court may grant a new trial to a party after a jury trial "for any reason for which a new trial has . . . been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Rule 59 does not specify the grounds on which a court may grant a new trial. Thus, the court is "bound by those grounds that have been historically recognized." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). Those grounds include, but are not limited to, claims that the verdict is against the clear weight of the evidence or based on false evidence, that the damages are excessive, or that the trial was not fair to the moving party. *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940); *see also Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1087 (9th Cir. 2009).

---

[8] Because the Court finds that the jury's conclusion was justified on these grounds, the Court does not address secondary considerations of non-obviousness.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:17-cv-03221-RGK-MRW | Date | September 04, 2018 |
|---|---|---|---|
| Title | *Carl Zeiss A.G. v. Nikon Corp.* | | |

### B.     Discussion

Plaintiffs move for a new trial, arguing for the same reasons as in their JMOL Motion that the jury's verdict was against the clear weight of the evidence. Plaintiffs also appear to argue that the jury's verdict was tainted by Nikon's improperly arguing claim construction to the jury.

But after weighing the evidence and considering the parties' arguments, the Court finds that Plaintiffs' stated grounds do not warrant a new trial for the same reasons stated in the Court's order on the JMOL motions.

The Court therefore **denies** Plaintiffs' Motion for a New Trial (DE 521.)

### IV.     CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Renewed Motion for JMOL (DE 519), Plaintiffs' Motion for JMOL (DE 520), and Plaintiffs' Motion for a New Trial (DE 521).

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer

_____